1

**POLSINELLI LLP**
Todd M. Malynn (CA Bar No. 181595)
Adam P. Daniels (CA Bar No. 296466)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:  310.556.1801
Facsimile:  310.556.1802
Email:        tmalynn@polsinelli.com

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC.,
NAIL ALLIANCE, LLC

FILED
CLERK, U.S. DISTRICT COURT
5/27/16
CENTRAL DISTRICT OF CALIFORNIA
BY:   D. Golez      DEPUTY

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SA CV16 - 00969 DOC(JEMx)

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, NAIL ALLIANCE, LLC, a Delaware corporation, | Case No. |
| Plaintiffs, | **DECLARATION OF GARIDAWN TINGLER IN SUPPORT OF EX PARTE APPLICATION FOR (A) A TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER, (B) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, (C) SUBSTITUTE CUSTODIAN ORDER AND (D) EXPEDITED DISCOVERY** |

v.

ABC NAIL AND SPA PRODUCTS, a California business; GEL NAIL SUPPLY, a California business; VAL USA MANUFACTURER, INC. (a.k.a., Val Gel Polish Manufacture), a California corporation; VIP NAIL PRODUCT, INC., a California corporation; V&V BEAUTY SUPPLIES, a California business; NAIL LOUNGE LLC, a Nevada business; TODAY NAIL (a.k.a., Nails Today), a Nevada business; HOLLYWOOD BEAUTY SUPPLY, a Nevada business; MT BEAUTY SUPPLY, a South Carolina business; NAIL MARK'S, a Florida business; A&A NAIL SUPPLY, a Nebraska business; XUAN THI LAM; CHAU THI NGOC LE; ANH Q. LE; IRIS ZHEN; FELIX TSENG; CINDY TRINH; LINDSIDE PHAM; BRYAN TRAN; HAI T. NGUYEN; BAO TOAN LE; and DOES 1 through 100, inclusive,

Defendants.

**FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116 (d)(8)**



LODGED
CLERK, U.S. DISTRICT COURT
MAY 26 2016
CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

*(left margin)* Polsinelli LLP  2049 Century Park East, Suite 2300  Los Angeles, CA 90067  310.556.1801

53219086.3

1    I, GariDawn Tingler, declare:

2    1.    I am the Vice President of Hand & Nail Harmony, Inc. ("Harmony")

3    and the managing member of Nail Alliance LLC ("Nail Alliance") (collectively,

4    "Plaintiffs"). I submit this declaration in support of Plaintiffs' effort to obtain a

5    temporary restraining order and seizure order and an order to show cause re:

6    preliminary injunction against counterfeiting activity that is causing Plaintiffs'

7    irreparable harm. I have personal knowledge of the facts in this declaration and/or

8    have prepared or reviewed business records kept in the ordinary course of business

9    disclosing and further supporting the facts contained herein. If called as a witness, I

10    could and would testify competently to these facts.

11    ## THE GELISH BRAND AND TRADEMARKS

12    2.    The founder and President of Harmony and Nail Alliance, Danny

13    Haile, invented GELISH®, the first brush-on soak-off gel polish in the nail

14    products industry. A gel polish is a non-perishable nail care product that has the

15    color and look of a traditional nail polish but, unlike nail polish, which chips or

16    cracks within days of application, will not chip or crack for three or four weeks.

17    GELISH brand products are known throughout the industry for their high quality,

18    range of colors, durability, ease-of-use, consistency, and beauty. Patents covering

19    Mr. Haile's gel polish formula have issued and others are pending.

20    3.    GELISH brand products revolutionized the nail industry. Prior to the

21    introduction of GELISH brand products, consumers generally frequented salons on

22    select occasions. They did not need to go to a salon for application of nail polish,

23    as nail polish could be safely and effectively applied at home. Further, because nail

24    polish only lasted a few days before chipping or cracking, it was relatively

25    expensive for consumers to frequent a salon just for nail polish. Moreover,

26    although salons offered alternative and longer lasting products such as acrylics or

27    hard-gels, consumers generally preferred the natural look of such conventional nail

28    polish. This practical reality was an impediment to salon business.

4.      GELISH brand products provided nail technicians a new product to sell as part of their service.  By frequenting salons, consumers could now obtain the natural, nail-polish look but in a finish that would last up to four weeks.  GELISH substantially increased salon business and it has been a tremendous commercial success.   Plaintiffs have sold millions of bottles of GELISH band gel polish, foundation and top coat in the United States and around the world.   Consumers recognize GELISH brand products by their distinctive trademarks and trade dress of their bottles, and routinely ask for the products by name.

5.      Nail Alliance owns multiple federal trademark registrations covering GELISH, including United States Trademark Registration Nos. 3,857,946, 4,096,115, 4,473,55, and 4,473,558 for use on nail care preparations (the "GELISH marks").  Nail Alliance has an exclusive license agreement with Harmony, under which Harmony has exclusive worldwide rights to the GELISH marks.  Harmony manufactures, distributes and sells high-quality gel polish, foundation, top coat and other products under the GELISH brand (the "GELISH products").

6.      Harmony sells GELISH products to professional boutiques and salons in this Judicial District, throughout the United States, and around the world through a network of qualified distributors.   Harmony does not sell directly to retail consumers or over the Internet.   Harmony also prohibits authorized distributors from selling nail products over the Internet, and for good reason.  Nail products, if used improperly, can be harmful to consumers.   State law requires licenses or certifications to become a nail technician, which requires a significant amount of education and training, including on how to avoid harmful bacteria infections and other injuries to the nail and cuticle through the proper application of product.

7.      GELISH products are for professional use only.  Quality nail products and professional application are important to avoid the risk of infection and other injuries to consumers, which frequently result from cheap, low-quality products.

DECLARATION OF GARIDAWN TINGLER

53219086.3

8.     GELISH products are known throughout the industry for their high quality, durability, ease of use, consistency and beauty.

9.     GELISH brand gel polish is sold in a distinctive, ornately adorned and patented bottle as illustrated in Figure 1 below.  Mr. Haile is the inventor of U.S. Design Patent Number D 656,824, issued on April 3, 2012 (the '824 patent).

**FIGURE 1:  GELISH (COLOR)**



10.     A utility patent, United States Patent Number 8,528,739, covering the GELISH bottle in Figure 1 issued on September 10, 2013.

11.     Harmony also sells GELISH brand foundation and top coat, which are designed for use in connection with GELISH gel polish.  Typically, GELISH brand foundation is used before a polish is applied, and GELISH brand top coat is used after a polish is applied on a consumer's nails for a desired look.  Depictions of the GELISH trade dress and bottles used for GELISH foundation and top coat are set forth in Figure 2:

DECLARATION OF GARIDAWN TINGLER

53219086.3

## FIGURE 2: FOUNDATION AND TOP IT OFF



12.     The high quality nature of GELISH products along with the distinctive GELISH trademarks and bottles has help make the GELISH brand a great commercial success.  Harmony is the largest privately held manufacturer of nail products in the United States mainly because of this flagship brand.

13.     Harmony's GELISH brand gel polish has won numerous awards, including as of 2014: (a) *Nails Magazine's* Readers' Choice: Favorite New Product (2010); (b) *Pro Esthetic's* Product of the Year (2010); (c) *Professional Beauty & Wellness'* Innovative Product of the Year (2011); (d) *Elle Beauty's* IT List (2011); (e) *Nail's* Readers' Choice Awards (2011 to 2014); and (f) *Nail Pro's* Readers' Choice Award (2011, 2013, 2014).

14.     The GELISH trademarks and bottles for more than five years have been used in interstate commerce to identify and distinguish Harmony's high quality GELISH products from the goods of others.  GELISH products bear the ® symbol next to the GELISH marks to notify others that these are trademarks registered with the U.S. Patent & Trademark Office.  The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned.  Indeed, the GELISH marks are instantly recognizable and associated exclusively with Plaintiffs throughout the world by consumers.

DECLARATION OF GARIDAWN TINGLER

53219086.3

15.     Harmony has spent millions of dollars advertising GELISH brand goods in a wide variety of media.  Harmony advertises GELISH products over the Internet, and in numerous trade publications as well as at trade shows and conventions.  Harmony emphasizes the GELISH brand name in its advertisement.

16.     Harmony has developed a highly visited website (www.nailharmony.com) and corporate pages on social media sites, such as Facebook, which link to popular online advertisements, including one video that has been viewed more than 2.5 million visitors.

17.     In short, GELISH is a famous mark in the nail industry.

## PRIOR ENFORCEMENT ACTIVITIES

18.     Harmony carefully monitors and polices the use of its intellectual property, including the GELISH marks, both here in the United States and around the world.  It devotes substantial resources to its enforcement activities.

19.     The continuing and growing success of the GELISH brand has attracted numerous counterfeit, knock-off, and other spurious products attempting to tradeoff the goodwill and reputation of Harmony's products.

20.     In 2015 alone, Harmony filed under seal and obtained an *ex parte* temporary restraining order ("TRO") and seizure order in three different matters involving counterfeit, knock-off, and other spurious products:

- Exhibit "1" is a copy of the TRO and seizure order obtained in *Hand & Nail Harmony, Inc., et al. v. GNC Nail Supply, LLC, et al.*, CIV-15-467-C (W.D. Okl.);
- Exhibit "2" is a copy of the TRO and seizure order obtained in *Hand & Nail Harmony, Inc., et al. v. International Nail Co., d/b/a Rockstar Nails,* CV 15-02718 SJO (AJWx) (C.D. Cal.); and
- Exhibit "3" is a copy of the TRO and seizure order obtained in *Hand & Nail Harmony, Inc., et al. v. Guangzhou Cocome Cosmetics Co., Ltd.,* 2:15-cv-01191-GMN-PAL (D. Nev.).

DECLARATION OF GARIDAWN TINGLER

53219086.3

## COUNTERFEITING ACTIVITIES BY DEFENDANTS

21.    In late April 2016, I learned from a Harmony distributor in Florida that there were jobbers selling counterfeit foundation and top coat, which we later found at NailMark's in Orlando.  I reviewed pictures of counterfeit product (*see* Figure 3) and confirmed that the "Foundation" and "Top if Off" products were counterfeit by reviewing the label and identification codes on the bottom of the bottles.

### FIGURE 3:  SIDE-BY-SIDE COMPARISON

 

22.    I also received reports that counterfeit GELISH Foundation and Top It Off was being sold in New York, Texas and elsewhere.  It is apparent to us that we are being attacked by a widespread and sophisticated counterfeit operation.

23.    Our initial investigation pointed to California as a possible source.

24.    On April 29, 2016, Harmony retained the services of Jim Phan, a private investigator, to investigate whether counterfeit product bearing the GELISH brand name was being manufactured, distributed and/or sold in Garden Grove, Westminster and City of Industry.  Mr. Phan was able to confirm that distributors in Orange County (ABC Nail & Spa Products, Gel Nail Supply, and V&V Beauty Suppliers), none of whom are Harmony distributors, are selling counterfeit product.  Mr. Phan purchased and/or was solicited to purchase counterfeit products at significantly reduced prices.  Mr. Phan was also able to identify a manufacturer of counterfeit product (Val Gel Polish Manufacturer) and another larger supplier (VIP Nail Products) trafficking in counterfeit product.

DECLARATION OF GARIDAWN TINGLER

53219086.3

25.    Harmony continued to conduct its own investigation into the sales of counterfeit product in other cities.  On May 13, 2016, we received a complaint from a nail technician who purchased 10 bottles of counterfeit GELISH Foundation from MT Beauty Supply, 3245 B Wade Blvd., Taylor, South Carolina 29687, at a deeply discounted price of $10.20 per bottle.  The nail technician wrote:

> Hi we bought 10 bottles of Gelish base and top coat at MT Beauty Supply in Taylor, SC, work on customer they came back said all fall off so we test the base coat it was so thin running try on one finger and clean with alcohol it came off it not cure so we take it back to the store demand an exchange but he wont take it back he sale 10 bottles with the wholesale price which is $10. Below is our receipt and pictures we compare the one we bought at LA Nail Supply in Atlanta and we notice that the barcode ink look lighter than before.

26.    Attached as Exhibit "4" is a copy of the MT Beauty Supply April 17, 2016 receipt.

27.    The nail technician attached videos to her complaint demonstrating the cheap, low-quality nature of the counterfeit product, which ruined her client's nails.  We have tested the performance of the counterfeit GELISH product we have obtained and confirmed the cheap, low-quality nature of the product.

28.    I am familiar with the cost of GELISH gel polish, foundation and top coat; the price Harmony sales GELISH products to its master distributors; and the suggested wholesale price to salons and nail technicians.

29.    The price point of $10.20 per bottle of GELISH Foundation is evidence of counterfeit product.  No authorized distributor would sell GELISH Foundation at that price and no diverter, distributor or other supplier would make any money selling GELISH Foundation at that price.

30.    On May 19, 2016, Harmony was able to acquire a counterfeit GELISH Foundation and Top it Off (*see* Figure 4 below) at Hollywood Beauty Supply, 4725 Spring Mountain Rd., Suite A, Las Vegas, Nevada 89102 for $21.63 ($10 per bottle plus tax).  I confirmed it was counterfeit product again by looking at the labels and

DECLARATION OF GARIDAWN TINGLER

53219086.3

1  identification codes on the bottom of the bottles.  A copy of the receipt and business

2  card from Hollywood Beauty and Supply is attached as Exhibit "5."

**FIGURE 4:  COUNTERFEIT BASE AND TOP COAT**



10  31.     I have witnessed the promotion and sale of spurious GELISH goods by

11  counterfeiters at trade shows, including at Cosmoprof North America in Las Vegas,

12  Nevada.  In 2012, 2014, and 2015, Harmony filed actions under the Lanham Act,

13  such as this one, to obtain *ex pate* seizure and temporary restraining orders (a copy

14  of the 2015 TRO and seizure order is attached as Exhibit 3).  U.S. Marshals and

15  Constables seized counterfeit products at these Cosmoprof trade shows.  In 2012

16  and 2014, I walked the floor of the trade show and witnessed the seizure of spurious

17  GELISH goods by counterfeiters at the trade show.  None of the subject defendants

18  challenged the seizure of the spurious GELISH goods by U.S. Marshals or

19  Constable either at the trade show or in court.

20  32.     Counterfeiters continue to promote and sell spurious GELISH goods,

21  infringing upon the GELISH trademarks and bottle.   GNC Nail Supply in

22  Oklahoma was one such example.  U.S. Marshalls raided this counterfeiter and shut

23  down its website pursuant to the TRO and seizure order attached as Exhibit 1.  This

24  defendant likewise failed to appear and a default judgment was entered.

25  33.     In our experience, a counterfeiter will often relocate or change the

26  name of the business after receiving notice of a lawsuit.  For example, in response

27  to a prior lawsuit, defendant Gel Nail Supply changed its name from Door to Door

28  Nail Supply and relocated its business and continued counterfeit activities.

## IRREPARABLE HARM

34.   I have been in the nail industry for over thirty years.

35.   Counterfeit nail products are commonly manufactured by persons or entities that, not only violate federal labeling laws, but also have little or no concern about the potentially harmful contents of their counterfeit products, such as fertilizers and other "nasties" outlawed by California and other jurisdiction.

36.   Harmony spends significant amounts of time, effort, and money policing and enforcing its intellectual property rights to protect itself from the irreparable harm caused by such counterfeiters.  For example, Harmony received an order from the United States District Court, Central District of California against TNT USA, Inc. for transporting counterfeit GELISH goods from Guangzhou Cocome Cosmetics Co. into the United State, but counterfeit goods continue to find their way into the United States and continue to appear in the market.

37.   Such activity is increasingly harming the goodwill associated with the GELISH marks, as disappointed consumers (such as the one described above), who only see the GELISH bottle and do not know that cheap, low-quality, mislabeled and potentially harmful counterfeit product is being applied on their nails.  They undoubtedly will remember and share poor and less than adequate experiences with family or friends and avoid GELISH in the future after suffering an allergic reaction or infection or simply poor experience with the counterfeit product, whether or not they actually complain to the salon or a nail technician.

38.   I have also received complaints from salons and distributors that are confused about the source or origin of spurious GELISH goods purchased from counterfeiters, which diminish the value of the brand and drives down demand in ways that cannot be readily calculated.  Harmony has to compete for business from qualified and reputable distributors, as well as from reputable and desirable salons, which becomes increasingly difficult when a brand is disparaged and the target of counterfeiter, which drives down margins.  Indeed, the widespread nature of the

subject counterfeiting activity is harming Harmony's relationships with its distributors, who are now competing against distributors of counterfeit product, which diminishes the value of their distributorships, and encourages Plaintiffs' network of distributors to carry and distribute other branded products.

39.     I have reviewed Harmony's sales of GELISH brand foundation and top coat for the last three years.  In 2016, Harmony has seen an unexpected drop in sales of foundation and top coat of over $2 million, evidencing not only lost sales due to the counterfeiting activity, but also a corresponding amount of disappointed customers.  GELISH brand gel polish, like other high performance gel polishes, is designed to work with GELISH foundation.   The application of a shoddy foundation risks poor product performance, and lost gel polish sales as well.

40.     There is no adequate remedy at law for the widespread counterfeiting activity attacking and trading off Plaintiffs' flagship brand.

I declared under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this _24_ day of May, 2016, in Gladstone, Missouri.

GariDawn Tingler

DECLARATION OF GARIDAWN TINGLER

53219086.3

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | HAND & NAIL HARMONY, INC.; and | ) |
| (2) | NAIL ALLIANCE, LLC, | ) |
| | | ) |
| | Plaintiffs, | ) |
| | | ) |
| v. | | ) CIV-15-467-C |
| | | ) |
| (1) | GNC NAIL SUPPLY, LLC; | ) |
| (2) | DONNY PHAM; and | ) |
| (3) | DOES 1-100, inclusive, | ) |
| | | ) |
| | Defendants. | ) |

## ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION
## FOR A TEMPORARY RESTRAINING AND SEIZURE ORDER;
## ORDER TO SHOW CAUSE; AND CUSTODIAL ORDER

THIS CAUSE is before the Court on the Emergency *Ex Parte* Motion [Doc. No. 8 ] by Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively "Plaintiffs"), in this matter against Defendants GNC Nail Supply, LLC, Donny Pham and John Does 1-100 (collectively, "Defendants"), for:

    (A)  Temporary Restraining and Seizure Order;

    (B)  Order to Show Cause Why a Preliminary Injunction Should Not Issue; and

    (C)  Substitute Custodian Order;

For the reasons set forth herein, and pursuant to the Lanham Act (15 U.S.C. §§ 1114, 1116(d) and Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs' *Ex Parte* Motion is GRANTED.

# I. FACTUAL BACKGROUND

The Court bases this Order on the following facts from Plaintiffs' Complaint, Motion, and supporting evidentiary submissions.*   Any finding of fact, to the extent appropriate, can be deemed a conclusion of law as well.

Harmony manufactures, promotes, distributes and sells a successful line of soak-off gel polishes under the brand name GELISH ("GELISH goods"). GELISH goods are made in America and are of high quality, durability, consistency and beauty. (Affidavit of Gari-Dawn Tingler ("Tingler Affidavit") ¶¶ 9-10.)  They are sold in an elegantly adorned, distinctive bottle as illustrated in Figure 1 below. (*Id.* ¶ 11.)



**FIGURE 1: GENUINE GELISH BRAND SOAK-OFF NAIL POLISH**

---

*The Court has consulted the Office of the U.S. Attorney, who does not wish to be heard on the issue of the relief granted herein.

Harmony invests millions of dollars in promoting its GELISH goods in the United States and throughout the world. (Tingler Affidavit ¶ 18.) Among other things, Harmony promotes GELISH goods at trade shows around the world, as well as in an expansive number of print and online trade publications. (*Id.*) Online, Harmony developed a highly visited website (www.nailharmony.com) and corporate pages on social media sites, such as Facebook. Harmony has also produced popular online advertisements, including one video that has been viewed more than 2.5 million visitors. (*Id.* ¶ 19.)

Nail Alliance is a holding company that owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark), 3,857,946 (GELISH design plus words), 4,473,557 (design mark), 4,473,558 (design mark), along with all common law trademark and trade dress rights associated with the GELISH goods (collectively, "GELISH marks"). (Tingler Affidavit ¶ 5; Exhibit 2.) Harmony is the exclusive, worldwide licensee of Nail Alliance as relates to the GELISH goods and the GELISH marks. (Tingler Affidavit ¶ 5.)

The GELISH standard character mark, GELISH design plus words, and GELISH bottle design marks are valid and registered in class 3 for use in connection with nail care preparations. Each of the GELISH goods incorporates the ® symbol to notify others that the mark GELISH is the subject of federal trademark registrations.

The GELISH marks are symbols of Harmony's quality, reputation and goodwill and have never been abandoned. (Tingler Affidavit ¶ 16.) Moreover, the GELISH marks are instantly recognizable and associated exclusively with Harmony throughout the world by

consumers. (*Id.*) Accordingly, the GELISH marks are substantial marks protectable under the Lanham Act, including 15 U.S.C. § 1125 (c).

The GELISH bottle also is unique and entitled to protection, both in terms of its trade dress as well as its design and utility. The adorned, distinctive bottle with a translucent hole illustrated in Figure 1 is the subject of U.S. Design Patent Number D 656,824, which issued on April 3, 2012 (the '824 patent), and United States Patent Number 8,528,739, issued on September 10, 2013. (Tingler Aff. ¶¶ 11, 12.)

The commercial success of Harmony's GELISH goods has attracted counterfeiters intent on syphoning Harmony's profits at the expense of Harmony and unwary consumers. In this case, Harmony has shown that Defendants openly promote and sell spurious, counterfeit and/or colorable imitations of GELISH goods ("Counterfeit Merchandise") from their website www.gncnailsupply.com. (Tingler Affidavit ¶ 22.) As the demand for GELISH goods has increased, so too, it appears, has the presence of Counterfeit Merchandise. (*Id.* ¶ 25.)

Defendants' Counterfeit Merchandise is presented in bottles nearly identical in every material aspect to genuine GELISH goods. (Tingler Affidavit ¶ 23.) Defendants have even copied the "patent pending" notification, found on Plaintiffs' older bottle, below the color window. Figure 2 below illustrates an example of the Counterfeit Merchandise manufactured in China and imported into the United States:

4



**FIGURE 2: EXAMPLES OF COUNTERFEIT MERCHANDISE**

Given the similarity between genuine GELISH goods (on the left) and the Counterfeit Merchandise (on the right), the unavoidable conclusion is that consumers presented with the Counterfeit Merchandise will be confused regarding its source.

The Counterfeit Merchandise is of inferior quality. (Tingler Affidavit ¶ 26.) The Counterfeit Merchandise is commonly manufactured by large-scale manufacturing shops located in counterfeiting safe havens, such as the People's Republic of China. (*See, e.g.,* exhibits 4, 5.) Such facilities are reportedly known for using the inferior quality, and sometimes hazardous, ingredients of questionable origin. Defendants generally sell Counterfeit GELISH goods at a per-unit price range between approximately $2 and $20, depending on how demand they can generate for the Counterfeit Merchandise and how much product they are trying to move (Tingler Affidavit ¶ 28.)

## II. CONCLUSIONS OF LAW

The affidavit and accompanying exhibits submitted in support of Plaintiffs' motion amply support the following conclusions of law. Any conclusion of law, to the extent

appropriate, can be deemed a finding of fact as well.

     A.    Plaintiffs have a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of the Counterfeit Merchandise, including nail care preparations bearing counterfeits, reproductions, and/or colorable imitations of the GELISH marks. Plaintiffs have shown that they are the owners of valid trademarks and patents and that the products Defendants are selling and offering for sale mimic Plaintiffs' bottle and bear copies of Plaintiffs' trademarks and trade dress for nail care preparations;

     B.    Because of the infringement of the GELISH marks and bottle, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiffs' complaint, motion and accompanying affidavit, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

     1.    Defendants appear to be operating a wholesale distribution business which is offering for sale and selling nail care preparations bearing counterfeit and infringing trademarks in a counterfeit bottle in violation of Plaintiffs' rights;

     2.    Plaintiffs have well-founded fears that more counterfeit and infringing products bearing its trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products, resulting in irreparable injury to Plaintiffs' reputation and goodwill; and that Plaintiffs may suffer loss of sales for their genuine products;

3.      Plaintiffs have well-founded fears that if they proceed on notice to Defendants on this motion, Defendants will secret, conceal, destroy, sell off, or otherwise dispose of their counterfeit and infringing goods, as well as the computers and business records relating thereto, and/or inform their suppliers and others of Plaintiffs' claims with the result that those suppliers and others may also secret, conceal, sell off, or otherwise dispose of counterfeit or infringing goods and records relating thereto in their possession and control;

C.      The balance of potential harm to Defendants in restraining their trading in counterfeit goods if a temporary restraining and seizure order and a substitute custodian order are issued is far outweighed by the potential harm to Plaintiffs, their reputation and goodwill as a manufacturer of high quality products if such relief is not issued;

D.      The public interest favors issuance of the temporary restraining and seizure order to protect Plaintiffs' trademark interests and the public from being defrauded by the palming off of counterfeit goods as the Plaintiffs' genuine goods; and

E.      An order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114.

Upon review of Plaintiffs' Complaint, Motion, and supporting evidentiary submissions, it is hereby ORDERED the Plaintiffs' Ex Parte Motion is GRANTED, along with the following Orders:

## TEMPORARY RESTRAINING ORDER

(1)      Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants

7

are hereby temporarily restrained:

    (a) From manufacturing, purchasing, importing, advertising, promoting, offering to sell, selling, distributing, transferring or disposing of any products bearing any of the GELISH marks identified in Section I, the trade dress associated with the GELISH goods or the design of the GELISH bottle, above, or any confusingly similar mark or bottle, other than those actually manufactured or distributed by Plaintiffs;

    (b) From communicating, directly or indirectly, with any person(s) about this action, Plaintiffs' motion for this Order or this Order, except for Defendants' attorney or attorneys, who shall be notified of and bound by this temporary gag order concerning the seizure of goods;

    (c) From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH marks, or any confusingly similar marks, trade dress or bottle design; or (ii) any evidence relating to the manufacture, purchasing, importation, advertising, promotion, distribution, sale, offer for sale, or transfer of any products bearing any GELISH mark or any confusingly similar mark or bottle design; and

    (d) Knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (c) above.

(2)    Unless extended by the Court, this Temporary Restraining Order shall expire in fourteen (14) days after its issuance; however, unless Plaintiffs show good cause as to why it should not be extended and/or a preliminary injunction should not issue, at the preliminary injunction hearing, the Court may convert said order into a Preliminary Injunction and it may thereby remain in full force and effect pending trial.

## SEIZURE ORDER

(3)    Pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshals or other Federal or law enforcement officials (such as officers or agents of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or State

or local law enforcement officers, together with Plaintiffs' representatives, are hereby authorized to use the reasonable force necessary to carry out the seizure as provided herein and Defendants shall surrender for seizure:

    (a) all counterfeit products bearing any of the GELISH marks, or any other marks substantially indistinguishable from the GELISH marks, trade dress or bottle; and

    (b) all documents, things, and records of any kind relating to the importation, purchase, acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale, distribution, and transfer of such products, including, but not limited to, computer disks, CD ROMs, computer hardware, and other magnetically or electronically stored information, as provided by 15 U.S.C. § 1116(d)(i)(A).

The United States Marshals or other Federal, State, or local law enforcement officers executing this Order may look for the documents and things to be seized and may appoint any other persons, including Plaintiffs' counsel, investigators and other representatives, to assist in the identification of goods, manufacturing equipment, and relevant records and the execution of this Seizure Order;

    (4)    Plaintiffs, through their counsel, investigators and other representatives, are authorized under the supervision and with the assistance of the United States Marshals or other Federal, State, or local law enforcement officers, to take all necessary steps to secure and remove all property and documents identified in Paragraph (3) above which are located at the following address:

    2306 NW 46th Street
    Lawton, OK, 73505

Should Plaintiffs learn of any other warehouse, storage facility, or office where Defendants are manufacturing, warehousing, holding or storing counterfeit nail care

preparations bearing any of the GELISH marks or any confusingly similar marks, Plaintiffs shall notify the Court prior to seizing any goods therein;

(5)     Plaintiffs and/or their designees may videotape and take photographs and notes of the seizure. However, such videotape and photographs are not to be published to anyone other than the Court, Defendants and their legal representatives, and Plaintiffs and their agents and legal representatives without further order of the Court;

(6)     Only the property listed in this Order shall be seized and impounded, and due care shall be taken by the U.S. Marshals or other law enforcement officers, their appointed assistants, and Plaintiffs' representatives to preserve and keep in good order Defendants' property and assets which are not related to the manufacture, packaging, importation, sale, or distribution of the alleged counterfeit products referred to above;

(7)     Anyone interfering with the execution of this Order is subject to arrest by the United States Marshals or other Federal, State, or local law enforcement officers executing this Seizure Order;

(8)     The seizure shall take place  not later than seven (7) days after the issuance of this Order occurring in the United States pursuant to 15 U.S.C. § 1116(d)(5)(C).

(9)     Per 15 U.S.C. § 1116(d)(10), a hearing shall take place  on May 14, 2015, at 1:00 p.m. unless Plaintiffs show good cause for another date, or unless Defendants consent to another date.  The hearing shall address (1) execution of the seizure of the allegedly counterfeit goods from Defendants; (2) Plaintiffs' requested entry of a preliminary injunction; and (3) the amount of the bond Plaintiffs should be required to post;

(10)   If after the seizure of goods outlined above takes place, Defendants obtain

additional counterfeit goods as described above, whether by manufacturing, importation, delivery, or otherwise, Defendants shall immediately notify the Court and deliver same into the custody of Plaintiffs' counsel or to the United States Marshal to deliver to Plaintiffs' counsel.

## BOND TO BE POSTED

(11)  Prior to the execution of the Seizure Order above, per 15 U.S.C. § 1116(d)(5)(D), Plaintiffs shall post a bond in the amount of $2000, as payment of damages to which Defendants may be entitled for a wrongful attempted seizure, and shall file proof of the bond.  Any issue as to the adequacy of the bond must be raised at the hearing on May 14, 2015.

## SUBSTITUTE CUSTODIAN ORDER

(12)  Plaintiffs, through their counsel, investigators and/or representatives, will account completely for all property seized pursuant to this Order and shall compile a written inventory of all such property and shall provide a copy to the United States Marshal, who shall include a copy with his Return to the Court;

(13)  Plaintiffs' Oklahoma counsel, Edmonds Cole Law Firm, PC, and Plaintiffs' counsel, Feldman Gale, P.A., will act as substitute custodians of any and all property seized pursuant to this Order and shall hold harmless the U.S. Marshals Service or other Federal, State, or local law enforcement officers executing this Seizure Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of the Defendants' property, including any third-party claims.  Any and all products seized

pursuant to this Order shall be maintained at a secured storage facility. Defendants' counsel shall have supervised access to the stored goods and the seized business records.

## COMPLIANCE REPORT

(14)    Defendants shall file with the Court and serve on counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with this Order. Specifically, the report shall include a Certification that:

   (a) Defendants have identified and surrendered to law enforcement officials and the Substitute Custodian all documents and property subject to seizure pursuant to Paragraph (3) above;

   (b) Defendants have not discussed the Plaintiffs' motion, this Seizure Order or any aspects of the above-captioned case with any persons or entities other than those identified in subparagraph (1)(b) above; and

   (c) Defendants have not knowingly instructed, aided or abetted any other person or business entity engaging in any of the activities referred to in subparagraphs (1)(a) through (1)(d) above.

## ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND ORDER OF NOTICE

(15)    Upon the Complaint herein and Motion for Order to Show Cause Why a Preliminary Injunction Should Not Issue, Defendants are hereby ORDERED to show cause before this Court in the United States Courthouse located at 200 NW 4th Street, Oklahoma City, Oklahoma on May 14, 2015, at 1:00 p.m. or at such other time that this Court deems appropriate, why an order should not issue pursuant to FED. R. CIV. P. 65(a), granting the injunctive relief in Plaintiffs' Motion for Order to Show Cause Why a Preliminary Injunction Should Not Issue;

(16)    Service or delivery of copies of this Order and the papers in support thereof on Defendants or their attorneys at the time of the seizure or within two (2) business days after the seizure if there is no party present at the seizure that is authorized to accept service, shall be given and as so given shall be deemed good and sufficient service thereof. All seized business records shall be copied and returned to the Defendants or their counsel within three (3) business days from the date of the seizure ordered herein.

(17)    Opposing papers, if any, shall be filed with the Court and served by hand on Plaintiffs' counsel forty-eight (48) hour prior to the hearing set for May 14, 2015. Plaintiffs shall file and personally serve any Reply Memorandum on or before noon, May 13, 2015. The above dates may be revised upon stipulation by all parties to a continuance or upon agreement to maintain the status quo.

(18)    Defendants are hereby on notice that failure to appear at the show cause hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C.§ 1116(d) and FED. R. CIV. P. 65.

IT IS SO ORDERED this 4th day of May, 2015.


ROBIN J. CAUTHRON
United States District Judge

13

EXHIBIT 2

1 | TODD M. MALYNN (State Bar No.: 181595)
Email: tmalynn@feldmangale.com
2 | ALEJANDRO J. FERNANDEZ (Florida Bar No.: 32221)
Email: afernandez@feldmangale.com
3 | A. ROBERT WEAVER (Florida Bar No.: 92132)
Email: rweaver@feldmangale.com
4 | FELDMAN GALE, P.A.
880 West First Street, Suite 315
5 | Los Angeles, California 90012
Telephone: (213) 625-5992
6 | Facsimile: (213) 625-5993

7

8 | Attorneys for Plaintiffs
HAND & NAIL HARMONY, INC., and
9 | NAIL ALLIANCE, LLC

FILED
CLERK, U.S. DISTRICT COURT

May 6, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY:   VRV          DEPUTY

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 | HAND & NAIL HARMONY, INC., and NAIL ALLIANCE, LLC,

13 | Plaintiffs

14 | vs.

15

16 | INTERNATIONAL NAIL CO. d/b/a ROCKSTAR NAILS, and DOES 1-10, inclusive,

17

18 | Defendants

19

CASE NO. CV 15-02718 SJO (AJWx)

**TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE REGARDING PRELIMINARY ORDER, AND ORDER FOR LEAVE FOR ALTERNATIVE SERVICE**

**FILED UNDER SEAL**

20

21 | Having considered all papers submitted in connection therewith, and good

22 | cause appearing therefore:

23 | IT IS HEREBY ORDERED THAT the *Ex Parte* Application for a Temporary

24 | Restraining Order, Order to Show Cause Regarding Entry of Preliminary Injunction,

25 | and Leave for Alternative Service filed by plaintiff Hand & Nail Harmony, Inc.

26 | ("Harmony") and Nail Alliance, LLC (collectively, "Plaintiffs") is GRANTED.

27 | At **10:00 am on Monday, May 18, 2015,** or as soon thereafter as counsel

28 | may be heard in Courtroom 1 of the U.S. District Court for the Central District of

Los Angeles, located at 312 N. Spring Street, Los Angeles, CA 90012 (the "Preliminary Injunction Hearing"), DEFENDANTS INTERNATIONAL NAIL CO., D/B/A ROCKSTAR NAILS ("ROCKSTAR"), AND ANY SERVED DOE DEFENDANT ("DOE") (collectively, "Defendants") ARE HEREBY ORDERED TO SHOW CAUSE why Defendants, their officers, agents, servants, employees, attorneys, and any other person or entity who is in active concert or participation with any of Defendants, including but not limited to Paypal, Inc. ("PayPal") and Stamps.com, Inc. ("Stamps.com") (collectively, the "Enjoined Parties"), should not be restrained and enjoined pending trial of this action from:

1.   Operating any website at or with the domain name www.harmonygelish.co.uk or any other domain name which is confusingly similar or likely to lead consumers to believe that Defendants are affiliated with Plaintiffs or licensed to use their trademarks, including Hand & Nail Harmony® and/or Gelish® (the "Infringing Websites");

2.   Reproducing, publishing or displaying any of Plaintiffs' copyrighted works, including those identified by U.S. Copyright Registration Nos. VA-1-880-732, VA 1-880-751, VA 1-880-769, VA 1-880-736, VA 1-880-744, VA 1-874-516, VA 1-880-735, VA 1-880-747, VA 1-874-655, VA 1-880-730, VA 1-880-109, 1-880-731, VA 1-880-748, VA 1-880-728, VA 1-880-668, VA 1-880-742, VA 1-880-745, VA 1-880-698, and VA 1-880-740 (the "Harmony Works"), or any artwork substantially similar to the Harmony Works;

3.   Selling or offering for sale any goods manufactured, promoted and/or sold by Harmony (the "Harmony Goods") that have been altered through the removal or obstruction of serial codes on a container or bottle otherwise visible upon inspection;

4.   Transporting or shipping any Harmony Goods in violation of the Hazardous Materials Transportation Act of 1975;

5.   Transferring, selling, relocating or otherwise hypothecating any assets in any accounts, including any accounts with PayPal or Stamps.com, related to the Infringing Websites; and

6.   Transferring, selling, relocating or otherwise hypothecating the Infringing Websites and/or any related domain name, or registering or purchasing any other domain name which is confusingly similar with the Harmony Marks, except to transfer the domain name to Plaintiffs.

IT IS FURTHER ORDERED that the Enjoined Parties, including but not limited to Defendants, are immediately enjoined pending the Court's ruling at the Preliminary Injunction Hearing from:

1.   Operating any website at or with the domain name www.harmonygelish.co.uk or any other domain name which is confusingly similar or likely to lead consumers to believe that Defendants are affiliated with Plaintiffs or licensed to use their trademarks, including Hand & Nail Harmony® and/or Gelish®;

2.   Reproducing, publishing or displaying any of the Harmony Works, or any artwork substantially similar to the Harmony Works;

3.   Selling or offering for sale any Harmony Goods that have been altered through the removal, obliteration, or obstruction of serial codes on a container or bottle otherwise visible upon inspection;

4.   Transporting or shipping any Harmony Goods in violation of the Hazardous Materials Transportation Act of 1975;

5.   Transferring, selling, relocating or otherwise hypothecating any assets in any accounts, including any accounts with PayPal or Stamps.com, related to the Infringing Websites; and

6.  Transferring, selling, relocating or otherwise hypothecating the Infringing Websites and/or any related domain name, or registering or purchasing any other domain name which is confusingly similar with the Harmony Marks, except to transfer the domain name to Plaintiffs.

IT IS FURTHER ORDERED that any and all third-party vendors, such as PayPal, Stamps.com and any affiliated business or entity with notice of this Order, pending further order of the Court, shall immediately:

1.  Freeze any and all funds in, or which hereafter are transmitted into, any account related to the Infringing Website or Defendants, as well as any and all funds in, or which are transmitted into, any other related accounts of Defendants;

2.  **Hold the frozen funds in trust** for the parties in this action until further order of the Court;

3.  Within five (5) days of receiving this Order, provide Plaintiffs, through their counsel of record, with all data which details (i) an accounting of the total funds frozen; (ii) the account(s) to which the frozen funds are related, (iii) all account transactions related to the funds transmitted into the respective account(s) which have been frozen or otherwise restrained, and (iv) all identifying information of the customers associated with those accounts; and

4.  Receive and maintain this Order and its contents as confidential until further order of this Court. No funds restrained by this Order shall be transferred or surrendered by PayPal or Stamps.com for any purpose (other than pursuant to a chargeback made pursuant to either PayPal's or Stamps.com's security interest in the funds) without the express authorization of this Court.

IT IS FURTHER ORDERED that Plaintiffs are hereby GRANTED leave to make the following service on Defendants under Federal Rule of Civil Procedure 4(e) and 15 U.S.C. § 1125(d)(2)(A)(ii): Plaintiffs shall serve a copy of the Court's Orders, the Complaint, the Summons, the Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction, and all supporting papers which have been filed in this action (collectively, the "Documents") on Defendants by (1) electronically sending a copy of the Documents to the following e-mail address, DevAntMarketing@gmail.com, which has been shown to be associated with Defendants; (2) mailing a copy of the Documents to the following physical address, 2118 Wilshire Blvd Unit 743, Santa Monica CA 90403-5704, which has been shown to be associated with Defendants; and (3) mailing a copy of the Documents to the following physical address, 1223 S. 12th Street, Bismarck ND 58501, which has also been shown to be associated with Defendants.

The above Temporary Restraining Order is effective upon Plaintiffs' filing a **bond in the sum of $20,000.00.**

Any declarations, affidavits, points and authorities, or other submissions in support of, or in opposition to, the issuance of an Order to Show Cause shall be filed with the Court **no later than six (6) days prior to the Preliminary Injunction Hearing.** Any reply papers shall be filed with the Court and delivered to opposing counsel **no later than three (3) days prior to the Preliminary Injunction Hearing.**

EXHIBIT 3

1     This Order was entered at <u>1:50</u> pm on <u>May 6, 2015</u>, and is binding on the

2  parties, their officers, agents, servants, employees, attorneys, and all persons or

3  entities who are in active concert or participation with any of them who receives

4  actual notice of this order by personal service or otherwise.

5

*S. Jame Otero*

6  DATED: <u>May 6, 2015</u>

                                     The Hon. S. James Otero

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16  cc: Fiscal Section

17

18

19

20

21

22

23

24

25

26

27

28

## Order Plus Utilities

2:15-cv-01191-GMN-PAL *SEALED* Hand and Nail Harmony, Inc. et al v. Guangzhou Cocome Cosmetics, Co. et al

SEALED,AO-120/121

### United States District Court

### District of Nevada

#### Notice of Electronic Filing

The following transaction was entered on 7/10/2015 at 11:10 PM PDT and filed on 7/10/2015
**Case Name:**      Hand and Nail Harmony, Inc. et al v. Guangzhou Cocome Cosmetics, Co. et al
**Case Number:**     2:15-cv-01191-GMN-PAL *SEALED*
**Filer:**
**Document Number:** 29

**Docket Text:**
**SEALED ORDER.**

**The following motions are GRANTED:**

**[10] Ex Parte Motion for a Temporary Restraining Order, [11] Ex Parte Motion for an Order to Show Cause why a Preliminary Injunction and Seizure Order Should Not Issue, [12] Ex Parte Motion for Substitute Custodian Order, [14] Ex Parte Motion for Alternate Service, [15] Ex Parte Motion to Temporarily Seal the Court File, and [27] Motion to Amend Complaint.**

**This Temporary Restraining Order shall expire 10 days after its issuance. Show Cause Hearing set for 7/20/2015 at 2:00 PM in LV Courtroom 7D before Chief Judge Gloria M. Navarro. Plaintiffs shall post a bond in the amount of $5,000.00. Compliance report by defendants due within 5 days after service of this Order. Service of this order and supporting papers due within 2 days after the seizure. Amended Complaint deadline: 7/13/2015. Opposing papers due by 7/16/2015. Reply memorandums due by 7/17/2015. The Clerk shall issue sequentially numbered summonses naming DOE Defendant 1, DOE Defendant 2, etc. up to DOE Defendant 10. The filings in this action shall be temporarily sealed.**

**Signed by Chief Judge Gloria M. Navarro on 7/10/15. (Copies have been distributed pursuant to the NEF - ASB)**

**2:15-cv-01191-GMN-PAL *SEALED* No electronic public notice will be sent because the case/entry is sealed.**

The following document(s) are associated with this transaction:

**Document description:** Main Document

**Original filename:** n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1101333072 [Date=7/10/2015] [FileNumber=7188935-0
] [2cdeb3c4f32832f0bc4165312a70fe26c422e3517adcbfcb5500a210bddd13d61c5
e59fd56915f8c8526d00c7be626cd7b79377df8734611b57da03b7fdb6878]]

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Hand and Nail Harmony, Inc.; Nail Alliance, )
LLC, )
             )      Case No.: 2:15-cv-1191-GMN-PAL
         Plaintiffs, )
    vs. )         **SEALED ORDER**
             )
Guangzhou Cocome Cosmetics, Co.; )
Guangzhou Bluesky Chemical Technology Co, )
LTD, )
             )
         Defendants. )

Pending before the Court are the Amended Motion for a Temporary Restraining Order ("TRO"), (ECF No. 10), Amended Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, (ECF No. 11), Amended Motion for Substitute Custodian Order, (ECF No. 12), Amended Motion for Alternate Service, (ECF No. 14), and Amended Motion to Seal, (ECF No. 15), filed by Plaintiffs Hand and Nail Harmony, Inc. and Nail Alliance, LLC. An *ex parte* hearing was held regarding the Amended Motion for a TRO on July 10, 2015, which concluded with the Court taking the issue under advisement. (ECF No. 23). For the reasons set forth below, the Court will grant these Motions.[1]

///

///

---

[1] Also before the Court is Plaintiffs' Motion to Amend the Complaint, in order to name Guangzhou I.C.E. Cosmetic Co., Ltd. as an additional Defendant. (ECF No. 27). Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading as a matter of course at any time prior to 21 days after the date of service. Therefore, the Court finds good cause to grant this Motion.

## I. BACKGROUND

This case centers upon allegations that Defendants have violated Plaintiffs' trademarks and sold counterfeit goods in violation of several provisions of the Lanham Act. (Compl., ECF No. 1). Plaintiffs purport to own marks used in connection with Gelish nail polishes and 18G nail polish curing lamps. (*Id.* ¶¶ 15, 27). In their Complaint, Plaintiffs allege that Defendants have promoted, distributed, and sold infringing merchandise at trade shows throughout the world. (*Id.* ¶ 42). Plaintiffs claim that Defendants intend to sell counterfeit merchandise at the upcoming Cosmoprof Convention, which is set to take place in Las Vegas, Nevada on July 12-14, 2015. (*Id.* ¶ 48). Plaintiffs have presented evidence showing that Defendant Guangzhou I.C.E. Cosmetic Co., Ltd. has sent at least two emails advertising counterfeit products to its distributors since June 16, 2015. (July 3, 2015 Email, Ex. 1 to Decl. of Steve Malynn, ECF No. 26); (June 16, 2015 Email, Ex. 1 to Notice of Errata to Affidavit of Steve Malynn, ECF No. 25).

The Court previously denied Plaintiffs' original Motion for a TRO, (ECF No. 3), after finding that Plaintiffs failed to sufficiently show a likelihood of irreparable harm in accordance with the standard set forth in *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 57 (2014). In their Amended Motion for a TRO, Plaintiffs request that the Court issue an order preventing Defendants from, *inter alia*, advertising or selling products bearing Plaintiffs' marks or other marks that are confusingly similar thereto. (Am. Mot. for TRO, ECF No. 10). Plaintiffs also request that the Court order the seizure of all counterfeit products or products bearing marks that are substantially indistinguishable from Plaintiffs' marks.

## II. LEGAL STANDARD

"The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held." *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). "Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Quiroga v. Chen*, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010).

A temporary restraining order may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## III. DISCUSSION

After reviewing the instant Motion, the Court finds that Plaintiffs have sufficiently shown: (1) that they are likely to succeed on the merits of their claim for trademark infringement; (2) that irreparable harm is likely in the absence of preliminary relief; (3) that the balance of hardships tips sharply in Plaintiffs' favor; and (4) that the public interest favors the issuance of a TRO. The Court will assess each of these elements in turn.

### (A)   Likelihood of Success

To succeed on a claim of trademark infringement, "a plaintiff must prove (1) the existence of a trademark and (2) the subsequent use of that mark by another in a manner likely to create consumer confusion." *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000).

In this case, the evidence on the record demonstrates that Plaintiffs are the owners of the trademarks identified by United States Trademark Registration Numbers 4,096,115, 3,857,946, 4,473,557, 4,473,558, and 4,206,100, which include: a standard character mark for GELISH as used in nail care preparations; a design which incorporates the word GELISH with a specific wavy-line pattern; two three-dimensional designs associated with nail-care packaging; and a standard character mark for 18G as associated with an apparatus for drying nail finishes, polishes, and varnishes.

As to consumer confusion, Plaintiffs have provided numerous examples of reviews posted on various internet sites by consumers who are unable to discern the differences between actual Gelish products and products made by other manufacturers. *See, e.g.*, (July 2, 2013 Blog Post, Ex. 3 to Decl. of Steve Malynn, ECF No. 26) ("While being totally bummed out to find I had infiltrators among my legit Gelish collection, I was actually surprised that I'd never noticed anything different about these polishes. . . . With one I realized that the neck of the bottle, on the inside, had turned into a thick, jelly layer of polish that I had to pick out and throw away, I haven't seen this with my real Gelish polishes."). Furthermore, many consumers have expressed confusion regarding products manufactured by Defendants. *See, e.g.*, (June 16, 2012 Online Forum Post by User Sylkaai, Ex. 4 to Decl. of Steve Malynn, ECF No. 26) ("I

1  have a question on the internet you find fakes like gelish bluesky . . . what is the difference with

2  the actual proper brands except the price and if they are dangerous what is in it that makes it

3  dangerous? And how come they can put this on the market with the same name? Is there not a

4  rule for these things? :sad:").

5      Accordingly, the Court finds that the evidence on the record demonstrates that Plaintiffs

6  are likely to show that they own the trademarks at issue and that Defendants have used those

7  marks in a manner that has created consumer confusion.

8      **(B)    Likelihood of Irreparable Harm**

9      In the Ninth Circuit, "actual irreparable harm must be demonstrated to obtain a

10  permanent injunction in a trademark infringement action." *Herb Reed*, 736 F.3d at 1249.

11  "[T]he irreparable harm requirement for a permanent injunction in a trademark case applies

12  with equal force in the preliminary injunction context." *Id.*; *see also Titaness Light Shop, LLC*

13  *v. Sunlight Supply, Inc.*, No. 13-16959, 2014 WL 5017851, at *1 (9th Cir. Oct. 8, 2014) ("The

14  fact that [the plaintiff's] reputation *might* be harmed by the marketing of [the defendant's]

15  products did not establish that irreparable harm to [the plaintiff's] reputation is *likely*.").

16  Accordingly, while "loss of control over business reputation and damage to goodwill could

17  constitute irreparable harm," a court's finding of such harm cannot be "grounded in platitudes

18  rather than evidence." *Herb Reed*, 736 F.3d at 1250.

19      Here, Plaintiffs have provided evidence of irreparable harm sufficient to satisfy the

20  standard set forth in *Herb Reed*. In *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, the

21  Ninth Circuit upheld a district court's finding of a likelihood of irreparable harm that was based

22  upon "a declaration reporting numerous and consistent complaints" as well as "emails and

23

24

25

Page 5 of 16

social media posts" from consumers who mistakenly thought the defendant's products were associated with the plaintiff. 601 F. App'x 469, 473-74 (9th Cir. 2015).

Here, Plaintiffs have provided evidence strikingly similar in character to that which was found to be sufficient in *Life Alert*. The online comments submitted by Plaintiffs demonstrate that Defendants' products are similar enough in appearance to make consumers believe that they were manufactured by Plaintiffs, yet are appreciably inferior in quality. (May 2, 2015 Amazon.com Customer Review, Ex. 2 to Decl. of Steve Malynn, ECF No. 26) (recounting that a nail polish that had been advertised online as a true Gelish product "ate through" the consumer's nail bed); (Affidavit of Sunil Sirdesai ¶ 3, ECF No. 20) (stating that, counterfeit products, such as those manufactured by Defendants, do not contain certain solvents found in Plaintiffs' genuine products, resulting in "poor performing nail treatments"). Therefore, Plaintiffs have demonstrated that their business reputation has already been harmed by the presence of Defendants' products in the marketplace. This evidence is sufficient to warrant a finding that Plaintiffs will continue to suffer a loss of goodwill in the absence of injunctive relief.

Furthermore, Plaintiffs have sufficiently demonstrated that Defendants' counterfeiting activities threaten the business relationships they have established with their distributors. The Declaration of Steve Malynn, Plaintiffs' chief operating officer, makes clear that confusion in the marketplace arising from counterfeit products "hurt[s] and erode[s] demand for authentic Gelish products" so much that one distributor has threatened to cease its relationship with Plaintiff Harmony "unless it can control and protect its Gelish brand." (Decl. of Steve Malynn ¶ 5, ECF No. 26). Similarly, two of Plaintiffs' other distributors have stated that they "will

1   consider not renewing their contracts with [Plaintiff Harmony] or will require less favorable

2   terms, if [Plaintiff Harmony] is not able to . . . prevent the distribution of the counterfeit Gelish

3   products." (*Id.* at ¶ 8).  The Ninth Circuit has previously found that evidence of a substantial

4   threat to an established business relationship is sufficient to demonstrate a likelihood of

5   irreparable harm in a trademark infringement action. *See OTR Wheel Eng'g, Inc. v. W.*

6   *Worldwide Servs., Inc.*, 602 F. App'x 669, 672 (9th Cir. 2015).

7         Accordingly, the Court finds that Plaintiffs have satisfied the standard set forth in *Herb*

8   *Reed*, and have demonstrated that irreparable harm is likely in the absence of a TRO.

9         **(C)   Balance of the Hardships**

10        The evidence in the record reflects the substantial resources that Plaintiffs have invested

11   into fostering business relationships and manufacturing a product that is highly regarded in the

12   marketplace.  It is also apparent that Plaintiffs' reputation and status in the marketplace are put

13   at risk by the actions of counterfeiters seeking to unfairly benefit from the positive association

14   consumers have with Plaintiffs' products.  As Plaintiffs suffer great hardship from the

15   continuing presence of Defendants' counterfeit goods in the marketplace, and the imposition of

16   a TRO will merely force Defendants to stop misrepresenting the origin of their products, the

17   Court finds that the balance of the hardships tips sharply in Plaintiffs' favor.

18        **(D)   Public Interest**

19        Plaintiffs have demonstrated that a TRO is in the public interest.  Plaintiffs have shown

20   that they have spent considerable time, energy, and money to have the public associate its

21   products with their registered marks.  By copying Plaintiffs' marks and using marks that are

22   confusingly similar, Defendants are depriving consumers of the ability to distinguish among the

23

24

25

Page 7 of 16

goods of different manufacturers.  As the public has a right not to be deceived or confused, the public interest and goals of the Lanham Act favor the issuance of a TRO in this case. *See, e.g., Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008).

**IV. CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiffs' Amended Motion for a Temporary Restraining Order, (ECF No. 10), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend the Complaint, (ECF No. 27), is **GRANTED**.  Plaintiffs shall have until Monday, July 13, 2015, to file an Amended Complaint reflecting that Guangzhou I.C.E. Cosmetic Co, Ltd. has been named as a Defendant in this action.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Seal, (ECF No. 15), Amended Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, (ECF No. 11), Amended Motion for Substitute Custodian Order, (ECF No. 12), and Amended Motion for Alternate Service, (ECF No. 14), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants are hereby temporarily restrained:

(a)     From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the GELISH marks identified herein or the trade dress associated with GELISH goods, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

(b)     From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing any of the 18G marks identified herein or the trade dress associated with 18G goods, or any confusingly similar mark, other than those actually manufactured or distributed by Plaintiffs;

(c)     From communicating, directly or indirectly, with any person or persons (i) from whom Defendants purchased or obtained products bearing any of the GELISH or 18G marks identified herein; (ii) to whom Defendants sold or offered to sell these products; or (iii) whom Defendants know or reasonably believe to possess, control, or have access to any these products;

(d)     From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiffs' Motion for this Order, except for Defendants' attorney or attorneys;

(e)     From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH or 18G marks, or any confusingly similar marks, or trade dress; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing any of the GELISH or 18G Marks, or any confusingly similar marks;

(f)     Knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (a) through (e) above.

1    **IT IS FURTHER ORDERED** that this TRO shall expire 10 days after its issuance

2  unless Plaintiffs show good cause as to why it should be extended or Defendants consent to its

3  extension.

4    **IT IS FURTHER ORDERED** that pursuant to 15 U.S.C. § 1116(d)(9), the United

5  States Marshals or other Federal or law enforcement officials (such as officers or agents of the

6  United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office)

7  or State or local law enforcement officers, together with Plaintiffs' representatives, are hereby

8  authorized to use the reasonable force necessary to carry out the seizure as provided herein and

9  Defendants shall surrender for seizure:

10      (a) all counterfeit products bearing any of the GELISH or 18G marks, or any other

11         marks substantially indistinguishable from the GELISH or 18G marks; and

12      (b) all documents, things, and records of any kind relating to the importation, purchase,

13         acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale,

14         distribution, and transfer of such products, including, but not limited to, computer

15         disks, CD ROMs, computer hardware, and other magnetically or electronically stored

16         information, as provided by 15 U.S.C. § 1116(d)(i)(A).

17    The United States Marshals or other Federal, State, or local law enforcement officers

18  executing this Order may look for the documents and things to be seized and may appoint any

19  other persons, including Plaintiffs' counsel, investigators and other representatives, to assist in

20  the identification of goods, manufacturing equipment, and relevant records, as well as the

21  execution of this Order.

22

23                    Page 10 of 16

24

25

**IT IS FURTHER ORDERED** that Plaintiffs, through their counsel, investigators and other representatives, are authorized under the supervision and with the assistance of the United States Marshals or other Federal, State, or local law enforcement officers, to take all necessary steps to secure and remove all property and documents identified above which are located at the following address:

> Cosmoprof North America 2015 Trade Show
>
> Mandalay Bay Hotel Convention Center
>
> 3950 South Las Vegas Boulevard, Las Vegas, NV 89119

Should Plaintiffs learn of any other warehouse, storage facility, or office where Defendants are manufacturing, warehousing, holding or storing counterfeit nail care preparations bearing any of the GELISH or 18G marks or any confusingly similar marks, Plaintiffs shall notify the Court prior to seizing any goods therein.

**IT IS FURTHER ORDERED** that Plaintiffs and/or their designees may videotape and take photographs and notes of the seizure. However, such videotape and photographs are not to be published to anyone other than the Court, Defendants and their legal representatives, and Plaintiffs and their agents and legal representatives without further order of the Court.

**IT IS FURTHER ORDERED** that only the property listed in this Order shall be seized and impounded, and due care shall be taken by the United States Marshals or other law enforcement officers, their appointed assistants, and Plaintiffs' representatives to preserve and keep in good order Defendants' property and assets which are not related to the manufacture, packaging, importation, sale, or distribution of the alleged counterfeit products referred to above.

**IT IS FURTHER ORDERED** that anyone interfering with the execution of this Order is subject to arrest by the United States Marshals or other Federal, State, or local law enforcement officers executing this Order.

**IT IS FURTHER ORDERED** that the seizure shall take place on or about July 12-14, 2015 at Cosmoprof North America 2015, but not later than ten (10) days after the issuance of this Order occurring in the United States pursuant to 15 U.S.C. § 1116(d)(5)(C).

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1116(d)(10), a hearing shall take place on Monday, July 20, 2015, at 2:00 pm unless Plaintiffs show good cause for another date, or unless Defendants consent to another date. The hearing shall address (1) execution of the seizure of the allegedly counterfeit goods from Defendants; (2) Plaintiffs' requested entry of a preliminary injunction; and (3) the amount of the bond Plaintiffs should be required to post. A description and/or images and/or exemplars of the products seized shall be available to the court, though the entirety of the contents of the seizure need not be brought to the hearing.

**IT IS FURTHER ORDERED** that, if after the seizure of goods outlined above takes place, Defendants obtain additional counterfeit goods as described above, whether by manufacturing, importation, delivery, or otherwise, Defendants shall immediately notify the Court and deliver same into the custody of Plaintiff's counsel or to the United States Marshal to deliver to Plaintiff's counsel.

**IT IS FURTHER ORDERED** that, prior to the execution of the Seizure Order above, per 15 U.S.C. § 1116(d)(5)(D), Plaintiffs shall post a bond in the amount of five thousand dollars ($5,000.00), as payment of damages to which Defendants may be entitled for a

1  wrongful attempted seizure, and shall file proof of the bond. Any issue as to the adequacy of

2  the bond must be raised at the hearing on Monday, July 20, 2015.

3       **IT IS FURTHER ORDERED** that Plaintiffs, through their counsel, investigators

4  and/or representatives, will account completely for all property seized pursuant to this Order

5  and shall compile a written inventory of all such property and shall provide a copy to the

6  United States Marshal, who shall include a copy with his Return to the Court.

7       **IT IS FURTHER ORDERED** that Plaintiffs' counsel, Wheeler Hudgins Gunn & Dial,

8  LLC, and Feldman Gale, P.A. will act as substitute custodians of any and all property seized

9  pursuant to this Order and shall hold harmless the United States Marshals Service or other

10  Federal, State, or local law enforcement officers executing this Order and their employees from

11  any and all claims asserted in any court or tribunal arising from any acts, incidents, or

12  occurrences in connection with the seizure and possession of any of the Defendants' property,

13  including any third-party claims. Any and all products seized pursuant to this Order shall be

14  maintained at a secured storage facility or at the office of counsel. Defendants' counsel shall

15  have supervised access to the stored goods and the seized business records. Absent any

16  appearance in this case or claim in this case made by Defendants or DOE Defendants, all seized

17  materials may be destroyed after one (1) year from seizure.

18       **IT IS FURTHER ORDERED** that Plaintiffs may utilize 2-5 bottles of any type of

19  seized nail polish, nail gel, or other liquid or chemical materials for scientific or other testing.

20       **IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on

21  counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and

22

23

24

25

under oath, setting forth in detail the manner and form in which Defendants have complied with this Order. Specifically, the report shall include a Certification that:

    (a)   Defendants have identified and surrendered to law enforcement officials and the Substitute Custodian all documents and property subject to seizure as identified above.

    (b)   Defendants have not discussed the Plaintiffs' Application, this Order or any aspects of the above-captioned case with any persons or entities other than those identified above;

    (c)   Defendants have not knowingly instructed, aided or abetted any other person or business entity engaging in any of the infringing activities identified above.

**IT IS FURTHER ORDERED,** upon the Complaint herein and Motion for Order to Show Cause Why a Preliminary Injunction Should Not Issue, Defendants are hereby **ORDERED** to show cause before this Court in Courtroom 7D of the United States courthouse located at 333 S. Las Vegas Blvd., Las Vegas, Nevada 89101, on Monday, July 20, 2015, at 2:00 pm, why an order should not issue pursuant to Fed. R. Civ. P. 65(a), granting the injunctive relief in Plaintiffs' Application for Order to Show Cause Why a Preliminary Injunction Should Not Issue.

**IT IS FURTHER ORDERED** that service or delivery of copies of this Order and the papers in support thereof on Defendants or their attorneys at the time of the seizure or within two (2) days after the seizure if there is no party present at the seizure that is authorized to accept service, shall be given and as so given shall be deemed good and sufficient service thereof. All seized business records shall be copied and returned to the Defendants or their counsel within three (3) business days from the date of the seizure ordered herein.

Page 14 of 16

**IT IS FURTHER ORDERED** that opposing papers, if any, shall be filed with the Court and served upon Plaintiffs' counsel no later than Thursday, July 16, 2015. Plaintiffs shall file any Reply Memorandum on or before Friday, July 17, 2015. The above dates may be revised upon stipulation by all parties to this action.

**IT IS FURTHER ORDERED** that Defendants are hereby on notice that failure to appear at the show cause hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65, and that failure to appear in this action may result in the eventual destruction of any seized materials.

**IT IS FURTHER ORDERED** that Plaintiffs are hereby granted leave to personally serve representatives of the named foreign defendants attending the 2015 Cosmoprof convention. Additionally, the Clerk shall issue sequentially numbered summonses naming "DOE Defendant 1," "DOE Defendant 2," etc. up to "DOE Defendant 10." Plaintiffs are hereby granted leave to personally serve individuals attending the Cosmoprof 2015 convention as a representative of foreign DOE defendants with a DOE Defendant summons, along with copies of the Complaint and this Order. Pursuant to Fed. R. Civ. P.(c)(3), personal service of representatives of foreign defendants may be effectuated by the Marshal or Deputy Marshals conducting seizures pursuant to the Seizure Order herein. Upon service of any DOE Defendant, Plaintiffs shall file an Amended Complaint no later than ten (10) days after service naming the DOE Defendants identified at the Cosmoprof 2015 convention. Plaintiffs are granted leave for alternative service only with respect to foreign defendants having representatives attending, or otherwise present at, the Cosmoprof 2015 convention. Plaintiffs must serve a domestic DOE Defendant as provided by Fed. R. Civ. P. 4.

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1116(d)(8), the filings in this action, including all Orders and supporting documents, shall be temporarily sealed until Defendants have had an opportunity to contest this Court's Order Granting Plaintiffs' Amended Emergency Ex Parte Motion, except that Defendants shall have access to the instant Order and supporting documents after the seizure has been carried out.

**DATED** this 10th day of July, 2015.

Gloria M. Navarro, Chief Judge
United States District Court

EXHIBIT 4

**MT Beauty Supply**
3245 B Wade Hampton Blvd
Taylor, SC. 29687
864-292-6217

04 | 13 | 16

| description | qty | amount |
|---|---|---|
| Carbide | 12 | 12 |
| # 4 brush | 20 | 20 |
| Glaze n go | 8 | 16 |
| Gelish | 10.20 | 102 |
| Acetone / case | 25 | 25 |
| Alcohol / case | 28 | 28 |
| | | 203 |

EXHIBIT 5



YOUR RECEIPT
THANK YOU

05/19/2016 12:49PM
000000#8130      CLERK02    02

                 2 @ $10.00
DEPT.01        1 $20.00
MDSE ST          $20.00
TAX1              $1.63

ITEMS       20
CASH      $21.63

*Hollywood Beauty Supply*

4725 Spring Mountain Rd. Suite A
Las Vegas, Nevada 89102

**Business Hours**
Mon - Sun 10:00am - 8:pm    Sat: Close

Phone:  702-272-1154
Cell: