**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                Date:  May 31, 2016

Title: HAND & NAIL HARMONY, INC., ET AL. V. ABC NAIL AND SPA PRODUCTS, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**  ORDER DENYING *EX PARTE* APPLICATION FOR: (A) ENTRY OF TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER; (B) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; (C) A SUBSTITUTE CUSTODIAN ORDER; AND (D) AN ORDER FOR EXPEDITED DISCOVERY [5]

  Before the Court is Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC's ("Nail Alliance") (collectively, "Plaintiffs") *Ex Parte* Application for: (a) Entry of Temporary Restraining Order and Seizure Order; (b) Order to Show Cause Re: Preliminary Injunction; (c) A Substitute Custodian Order; and (d) An Order for Expedited Discovery ("Application") (Dkt. 5). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered Plaintiffs' arguments, the Court DENIES Plaintiffs' Application WITHOUT PREJUDICE.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                                   Date: May 31, 2016
                                                                                                                             Page 2

## I.     Background

Plaintiff Harmony manufactures, distributes, and sells high-quality, soak-off gel polishes and other nail products, accessories, and preparations under the brand name GELISH. Complaint ("Compl.") (Dkt. 1) ¶ 6. Through its qualified distributors, Harmony sells GELISH brand goods to boutiques and salons in Southern California and throughout the world. *Id.* Plaintiff Nail Alliance owns and holds certain intellectual property rights used in connection with the GELISH goods, including federal trademarks for the GELISH brand. *Id.* ¶¶ 7, 34–35. Pursuant to an exclusive license agreement with Nail Alliance, Harmony has the exclusive, worldwide right to use the GELISH marks and GELISH brand nail polish bottles. *Id.* ¶ 39.

This case centers upon allegations that Defendants are "actively engaged in manufacturing, distributing, selling, promoting, and/or attempting to pass off counterfeit products and spurious imitations of Plaintiffs' GELISH® brand nail products." *Id.* ¶¶ 5; *see also id.* at 48, 50–53. Plaintiffs contend Defendants' counterfeit products are cheap, low-quality masquerades that disparage Plaintiffs' registered trademarks and inherently distinctive trade dress. *Id.* ¶¶ 5, 55, 57. Plaintiffs allege Defendants' counterfeiting activities originate from Garden Grove, Westminster, and the City of Industry and that such activities have "manifested [themselves] in cities and states across the nation," including in Orlando, Florida; Las Vegas, Nevada; Taylor, South Carolina; and Omaha, Nebraska. *Id.* ¶ 5.

Plaintiffs bring three claims: (1) trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d), *id.* ¶¶ 61–72; (2) false designation of origin, false descriptions, unfair competition and dilution under 15 U.S.C. § 1125, *id.* ¶¶ 73–88; and (3) unfair competition in violation of California Business & Professions Code § 17200, *id.* ¶¶ 89–95.

Plaintiffs filed the instant Application on May 26, 2016. In the Application, Plaintiffs seek: (a) a temporary restraining order and seizure order, (b) an order to show cause why a preliminary injunction should not issue, (c) a substitute custodian order, and (d) an order for expedited discovery. Plaintiffs argue this relief sought is necessary to (1) stop the sale of counterfeit GELISH products, (2) seize evidence of the counterfeiting activity, including the source of the counterfeit goods and identities of those palming it off on customers, and (3) prevent Defendants from disposing of evidence of their wrongdoing and ill-gotten gains. App. at 1.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)   Date: May 31, 2016
Page 3

## II. Legal Standard

The standards for issuing a temporary restraining order ("TRO") and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As explained by the Ninth Circuit in *Winter*, a plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotations marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

## III. Discussion

Plaintiffs seek *ex parte* issuance of a TRO. Therefore, before proceeding to the merits of the Application, the Court must first determine whether Plaintiffs have justified excusal of the notice requirement outlined in Federal Rule of Civil Procedure 65.

### A. Federal Rule of Civil Procedure 65's Notice Requirement

In general, courts may issue a TRO without notice to the opposing party only if: "(1) specific facts show that 'immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition'; and (2) 'the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required.'" *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (EX), 2015 WL 6680807, at *3 (C.D. Cal. Oct. 19, 2015) (quoting Fed. R. Civ. P. 65(b)(1)).[1] The Supreme Court has held *ex parte* TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer." *Granny Goose Foods,*

---

[1] The Court also notes Local Rule 7-19.1 provides, "[i]f the judge to whom the application is made finds that the interest of justice requires that the ex parte application be heard without notice (which in the instance of a TRO means that the requisite showing under F.R.Civ.P. 65(b) has been made), the judge may waive the notice requirement of L.R. 7-19.1."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SA CV 16-0969-DOC (JEMx) | Date: May 31, 2016 |
| | Page 4 |

*Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438–39 (1974) (citation omitted).

"Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An *ex parte* TRO is generally only appropriate where: (1) notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing, or (2) notice would render further prosecution of the action fruitless. *Id.*; *see also SATA*, 2015 WL 6680807, at *4. *Ex parte* issuance of a TRO may be appropriate in a trademark infringement action where "an alleged infringer is likely to dispose of the infringing goods before the hearing." *SATA*, 2015 WL 6680807, at *4 (quoting *Reno Air*, 452 F.3d at 1131) (internal quotation marks omitted). "This exception to the notice requirement loosely corresponds to the requirement for seizure under [15 U.S.C.] § 1116(d) that the defendant 'would destroy, move, hide, or otherwise make [the goods] inaccessible to the court' if the applicant gave notice to the defendant." *Id.*

To show notice would render further prosecution of the action fruitless, "the application must do more than assert that the adverse party would dispose of the evidence if given notice." *Reno Air*, 452 F.3d at 1131 (citation and internal quotation marks omitted). Rather, the applicant must

> show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that such persons similar to the adverse party have such a history.

*Id.* (citation and internal quotation marks omitted). "Conclusory statements by the applicant's counsel that the defendant will destroy goods will not justify ex parte issuance." *SATA*, 2015 WL 6680807, at *4. If such bare allegations were sufficient, "ex parte orders without notice would be the norm and this practice would essentially gut Rule 65's notice requirements." *Reno Air*, 452 F.3d at 1132.

Although this is a close call, the Court concludes Plaintiffs have not sufficiently demonstrated why notice should be excused in this matter. First, although Plaintiffs have submitted declarations from a private investigator and the Vice President of Harmony, Plaintiffs' *counsel* has not certified in writing the reasons why notice should not be required, as mandated by Rule 65(b)(1)(B). Second, for the reasons set forth below, Plaintiffs have not satisfied Rule 65(b)(1)(A).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                      Date: May 31, 2016
                                                                                                                                  Page 5

       In discussing the standard set forth under 15 U.S.C. § 1116(d), Plaintiffs argue an *ex parte* TRO and seizure order is necessary because "[i]t is highly probabl[e] from the nature of Defendants' activities that their counterfeit inventory, shipping invoices, purchase orders and electronic records will vanish after Defendants are served," and Defendants will close shop and resurface under another business name at a new location in the same community. App. at 9. Although the portion of the Application addressing why Plaintiffs should not be required to give notice does not cite to the record, the Court has reviewed the Declaration of Garidawn Tingler ("Tingler Decl.") (Dkt. 8), and the Declaration of Jim Phan ("Phan Decl.") (Dkt. 9). Relevant here, Garidawn Tingler ("Tingler"), the Vice President of Harmony and managing member of Nail Alliance, declares, "[i]n our experience, a counterfeiter will often relocate or change the name of the business after receiving notice of a lawsuit." Tingler Decl. ¶ 33. Tinger offers one example: "in response to a prior lawsuit, defendant gel Nail Supply changed its name from Door to Door Nail Supply and relocated its business and continued counterfeit activities." *Id.* Plaintiffs also retained Jim Phan ("Phan"), a private investigator, to investigate whether counterfeit products bearing the GELISH brand name were being manufactured, distributed, and/or sold in Garden Grove, Westminster, and the City of Industry. *Id.* ¶ 24; *see also* Phan Decl. ¶ 5. Phan is a member of the Vietnamese community, speaks Vietnamese, is often retained to investigate persons and business in the Vietnamese community in Orange County, and has experience and connections in the nail products industry. Phan Decl. ¶ 3. Phan declares:

> Based on my experience, the Vietnamese community in general, and the nail products industry in particular, includes a network of unregistered and side businesses working outside traditional avenues of commerce, which hinders investigations into such businesses. It has been my experience in investigating businesses in this community and in the nail industry that when targets receive prior notice of a lawsuit or law enforcement activity, evidence of wrongdoing becomes particularly difficult to obtain by means other than search warrants or seizure order. Business records and communications that would normally exist, showing the operations of the business, disappear or cannot be located. Word travels fast within the community, which works to protect the businesses and residents therein.

*Id.* ¶ 4.

       The Court finds these statements, without additional specific facts, insufficient to justify the issuance of a TRO without notice. Plaintiffs appear to point to one instance in

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx) Date: May 31, 2016
Page 6

which a Defendant in this case – Gel Nail Supply – changed its, name, relocated its business, and continued counterfeit activities "in response to a prior lawsuit." *See* Tingler Decl. ¶ 33. However, Tingler merely notes this occurred; she does not provide the Court with any details about the "prior lawsuit." The Court is left guessing as to whether Gel Nail Supply disobeyed court orders in the prior case or destroyed evidence, or whether the entity changed its name after the conclusion of the lawsuit.[2] Based on Tingler's statements alone, the Court cannot conclude Gel Nail Supply and the other Defendants "would disregard a Court order and dispose of or hide the allegedly infringing goods within the time it would take for a hearing." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1096–97 (N.D. Cal. 2012).

Plaintiffs also seek to show that other individuals or entities similar to Defendants have a history of destroying evidence or disobeying Court orders. However, the statements cited above lack sufficient detail. For example, although Phan declares that, based on his experience, when businesses in the Vietnamese community and in the nail industry receive notice of a lawsuit, evidence of wrongdoing disappears, Phan does not provide specific reasons as to why this may be the case here or point to specific instances in which this has occurred in the past. *Cf. SATA*, 2015 WL 6680807, at *4 (finding *ex parte* TRO justified where private investigator provided specific reasons for his belief defendant would be especially likely to destroy or move the counterfeit goods, and plaintiff provided evidence that similarly situated California defendants in trademark infringement cases ignored orders to preserve evidence when the court denied *ex parte* TRO request). Tingler also provides only general statements concerning her experience with counterfeiters relocating after receiving notice of a lawsuit. *See* Tingler Decl. ¶ 33 ("In our experience, a counterfeiter will often relocate or change the name of the business after receiving notice of a lawsuit."); *cf. Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 2–4 (2d Cir. 1979) (finding company's explanation for an *ex parte* TRO sufficient where company pointed to its experience in eighty-four previous actions against counterfeiters and stated that "in several of the earliest filed cases" its litigation efforts were foiled because a counterfeiter, after receiving notice of an impending injunction, and before the court could hold a hearing, transferred its inventories to other members of "closely-knit distribution networks").

Other courts have found similar statements, without more, insufficient to justify an *ex parte* TRO. For example, in *Reno Air*, counsel supported his application for an *ex parte* TRO with the statement that, in his experience, it was a common occurrence for infringers to leave the area and destroy or conceal infringing merchandise at one time famous events such as the "Reno Air Races," and "it is well-recognized in the case law."

---

[2] Further, Tingler has not pointed to any evidence supporting the statement that Gel Nail Supply and Door to Door Nail Supply are the same entity or counterfeiter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-0969-DOC (JEMx)　　　　　　　　　　　　　　　　Date: May 31, 2016
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 7

*Reno Air*, 452 F.3d at 1132 (internal quotation marks omitted). The Ninth Circuit found this inadequate, concluding the "conclusory statement from counsel hardly qualified as evidence and certainly did not link the TRO application to [the defendant]." *Id.* Similarly, the court in *Rovio* found counsel's averment that the plaintiff sought "extraordinary relief *ex parte* because [his] experience in investigating the Defendants and in other piracy cases . . . has confirmed [his] suspicions that infringing parties often secrete or destroy records revealing the true identify of their upstream supplier(s) if any and the volume of product manufactured or sold" insufficient to justify *ex parte* relief. *Rovio*, 907 F. Supp. 2d at 1096.

　　　　Based on the foregoing, and taking into account the "special nature of an Ex parte order," and the need to "observe scrupulously the requirements of Rule 65(b),"*Vuitton*, 606 F.2d at 4, Plaintiffs' request for an *ex parte* TRO must be denied. *See Mesde v. Am. Brokers Conduit*, No. C09-2418 JF (RS), 2009 WL 1636928, at *1 (N.D. Cal. June 5, 2009) ("[T]he request for a TRO will be denied because Plaintiffs did not provide notice to the other side or provide a Rule 65(b)(1)(B) affidavit.").[3]

　　　　Along with the failure to satisfy Rule 65(b)(1)(B), Plaintiffs' Application and supporting materials contain additional defects. The Court will briefly address those issues below.

### B.　　Personal Jurisdiction

　　　　"Although lack of personal jurisdiction is a defense that may be waived by a party, the Court has an obligation to consider this issue *sua sponte* before entering an order against an absent defendant." *U.S. Olympic Comm. v. Does 1-10*, No. C 08-03514 JSW, 2008 WL 2948280, at *1 (N.D. Cal. July 25, 2008); *see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 n.1 (1982) ("A district court must have personal jurisdiction over a party before it can enjoin its actions.") (citation omitted). "As the party bringing this action, Plaintiffs 'bear[ ] the burden of demonstrating that jurisdiction is appropriate.'" *U.S. Olympic Comm.*, 2008 WL 2948280, at *2 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

---

[3] Plaintiffs also request a seizure order. A court may issue a seizure order only if all of the seven elements set forth in 15 U.S.C. § 1116(d)(4)(B) are satisfied. *See SATA*, 2015 WL 6680807, at 3 (listing seven elements). In other words, "a failure to satisfy any of the seven elements prohibits immediate seizure." *Id.* Thus, a court may not issue a seizure order unless it "clearly appears from specific facts that the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 15 U.S.C. § 1116(d)(4)(B)(vii). For the same reasons as set forth above, the Court finds Plaintiffs have not satisfied this element. *Id.* Accordingly, Plaintiffs' Application for a seizure order is DENIED WITHOUT PREJUDICE.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                          Date: May 31, 2016
                                                                                                                                                             Page 8

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *Id.* (citation omitted). Because California's long-arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 801.

Courts may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (citation omitted). Under the Ninth Circuit's three-prong "purposeful direction" test,[4] a court may exercise specific personal jurisdiction over a non-resident defendant when: (1) the non-resident defendant purposefully directs his activities or consummates some transaction with the forum or resident thereof; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and (3) the forum's exercise of jurisdiction comports with fair play and substantial justice (the exercise of jurisdiction must be reasonable). *Schwarzenegger*, 374 F.3d at 802.[5]

Based on the Complaint as currently pleaded, the Court concludes Plaintiffs have failed to make a prima facie showing that personal jurisdiction exists over Defendants Nail Lounge LLC ("Nail Lounge"), Nail Today, Hollywood Beauty, A&A Nail, MT Beauty, and Nail Mark. Looking to the allegations in the Complaint, it appears these Defendants are not residents of California. *See* Compl. ¶¶ 14–19. Plaintiffs allege, upon information and belief, Defendants Nail Lounge, Hollywood Beauty A&A Nail, MT Beauty, and Nail Mark "knowingly purchase[], promote[], distribute[], advertise[], offer[] to sell, and or/sell[] the counterfeit GELISH brand products." Compl. ¶¶ 14, 16–19. Plaintiffs contend, also upon information and belief, Nail Lounge and Nail Today "knowingly purchase[], solicit[], offer[] to sell or sell[] counterfeit GELISH brand products to and from persons and/or entitles in Orange County California." *Id.* ¶¶ 14–15. Further, Plaintiffs allege all these Defendants are "knowingly participating in

---

[4] Because the claims against Defendants are akin to torts, the Court concludes the "purposeful direction test" outlined by the Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984), is appropriate. *See Schwarzenegger*, 374 F.3d at 802; *Stormwater Sys., Inc. v. Reitmeyer*, No. 2:14-CV-02472-MCE, 2015 WL 966279, at *9 (E.D. Cal. Mar. 4, 2015), *appeal dismissed* (Dec. 1, 2015) (applying "purposeful direction test" where plaintiff brought trademark infringement claim against defendant).
[5] The Court notes a "lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum," and that the Ninth Circuit follows a "but for" test in determining whether an action arises out of the defendant's contacts with the forum state. *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1090 (C.D. Cal. 2012) (citations omitted).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                      Date: May 31, 2016
                                                                                                                  Page 9

counterfeiting activity that is having or which is designed to have substantial impact on business in California." *Id.* ¶¶ 14–19.[6] These conclusory allegations are insufficient to establish the first two prongs of the purposeful direction test. Thus, the Court finds Plaintiffs have not established the Court has personal jurisdiction over these Defendants.

Plaintiffs may file an amended complaint correcting these pleading deficiencies on or before June 17, 2016.

     **C.**     **TRO Analysis**

Because the Court has concluded Plaintiffs' Application fails for the reasons set forth above, the Court will only engage in a brief analysis of whether Plaintiffs satisfy the TRO standard. As set forth above, to obtain a TRO, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

Although this is a close case, the Court finds Plaintiffs have not established a likelihood of irreparable harm. In the Ninth Circuit, a plaintiff in a trademark infringement context must establish irreparable injury; in other words, irreparable injury is not presumed by the Court upon a showing of a likelihood of success on the merits. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Conclusory or speculative allegations are not enough to establish a likelihood of irreparable harm. *Id.* at 1250. While "[e]vidence of a loss of control over business reputation and damage to good will" may be sufficient to show irreparable harm, preliminary relief may not be based on "pronouncements [that] are grounded in platitudes rather than evidence." *Id.*

In their Application, Plaintiffs argue "irreparable harm is manifest from Plaintiffs' loss of control over the reputation of their GELISH brand products, and from Defendants' proliferation of low-quality counterfeit products, which directly harms the goodwill associated with the GELISH marks." App. at 23–24. The evidence supporting this argument comes from Tingler's Declaration. Tingler generally asserts she has "received complaints from salons and distributors that are confused about the source or origin of spurious GELISH goods purchased from counterfeiter," and that the "widespread nature of the subject counterfeiting activity is harming Harmon's relationships with its distributors." Tingler Decl. ¶ 38. She also contends customers "will undoubtedly remember and share poor and less than adequate experiences . . . and avoid GELISH in

---

[6] With respect to Defendant Today Nail, Plaintiff also alleges, "[u]pon information and belief, counterfeit GELISH brand product was offered for sale by Today Nail." Compl. ¶ 15.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                                 Date: May 31, 2016
                                                                                                                                  Page 10

the future . . . whether or not they actually complain to the salon or a nail technician." *Id.* ¶ 37. The Court recognizes customer complaints may support a finding of irreparable injury in some cases. *See, e.g.*, *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 Fed. Appx. 469, 473–74 (9th Cir. 2015) (finding declaration of Life Alert employee reporting "numerous and persistent complaints from would-be customers," along with emails and social media posts from consumers, sufficient to demonstrate irreparable injury to reputation and goodwill). However, aside from describing in detail one customer complaint Harmony received from a nail technician, *see* Tingler Decl. ¶¶ 25–27, Plaintiffs have failed to provide sufficient context or supporting documentation concerning the other "complaints from salons and distributors." Tingler does not explain the specific contents of those complaints, how many complaints Harmony received, or when Harmony received those complaints.[7] Thus, the Court finds Tingler's statements, without more, insufficient to establish a likelihood of irreparable injury. *See Gatsinaris v. ART Corp. Sols., Inc.*, No. SACV 15-0741-DOC, 2015 WL 3453454, at *8 (C.D. Cal. May 29, 2015) ("[C]ourts should be wary of granting a preliminary injunction based solely on allegations and conclusory affidavits submitted by plaintiff.") (citation and internal quotation marks omitted); *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, No. SACV 12-572 JVS EX, 2014 WL 1246497, at *2 (C.D. Cal. Mar. 21, 2014) ("[T]he existence of intangible harms such as a loss of goodwill must be shown by evidence.").

       Further, although Tingler states Harmony's relationships with its distributors are suffering because competition with distributors of counterfeit product "encourages Plaintiffs' network of distributors to carry and distribute other branded products," *see id.* ¶ 38, Plaintiffs provide no evidence or specific facts indicating distributors actually have carried and distributed (or threatened to do so) other products instead of GELISH brand products. These broad assertions are inadequate to establish irreparable injury.

       The Court also finds Tingler's statements concerning a drop in sales insufficient. Tingler declares she "has reviewed Harmony's sales of GELISH brand foundation and top coat for the last three years," and that, "[i]n 2016, Harmony has seen an unexpected drop in sales of foundation and top coat [the specific types nail polish at issue here] of over $2 million, evidencing not only lost sales due to the counterfeiting activity, but also a corresponding amount of disappointed customers." Tingler Decl. ¶ 39. From what the Court can glean, the causal link between the drop in sales and Defendants' alleged conduct is speculative. *See A.C.T. 898 Products, Inc. v. W.S. Industries, Inc., et al.*, SA CV 16-0476-DOC (JCGx) (C.D. Cal. May 6, 2016) (Dkt. 23). It is unclear whether a

---

[7] The timing of such phone calls matters because it speaks to the immediacy of the harm. *See Winwin Logistics, Inc. v. Su*, No. 2:15-CV-04624-CAS, 2015 WL 4163363, at *4 (C.D. Cal. July 8, 2015) ("It is not enough that the claimed harm be irreparable—it must also be imminent.") (citing *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-0969-DOC (JEMx)                                               Date: May 31, 2016
                                                                                                                                     Page 11

causal link exists between the loss of business in 2016 and the alleged conduct of the Defendants in *this* suit. Indeed, Plaintiffs emphasize the problems they have had with counterfeiters in the past; Plaintiffs specifically point to court orders they obtained against other entities in 2015 to stop the proliferation of counterfeit, knock-off, and other spurious products. *See* Tingler Decl. ¶¶ 20, 31, 36.

Based on the foregoing, the Court concludes Plaintiff has not presented sufficient evidence of irreparable injury. Accordingly, a TRO is not warranted.

**IV.**    **Disposition**

For the foregoing reasons, Plaintiff's Application is hereby DENIED WITHOUT PREJUDICE. Plaintiffs may file an amended complaint correcting the pleading deficiencies identified above **on or before June 17, 2016.**

This case shall remain sealed.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                              Initials of Deputy Clerk: djg
CIVIL-GEN