

ORIGINAL

1  **POLSINELLI LLP**
   Todd M. Malynn (CA Bar No. 181595)
2  Adam P. Daniels (CA Bar No. 296466)
   2049 Century Park East, Suite 2900
3  Los Angeles, CA 90067
   Telephone:  310.556.1801
4  Facsimile:  310.556.1802
   Email:      tmalynn@polsinelli.com
5
   *Attorneys for Plaintiffs*
6  HAND & NAIL HARMONY, INC.,
   NAIL ALLIANCE, LLC
7
8          **IN THE UNITED STATES DISTRICT COURT**

9       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  HAND & NAIL HARMONY, INC., a        | Case No. SACV 16-00969 DOC (JEMx)
    California corporation, NAIL
12  ALLIANCE, LLC, a Delaware
    corporation,
13                                       **PLAINTIFFS' RENEWED *EX***
                                         ***PARTE* APPLICATION FOR (A)**
14            Plaintiffs,                **ENTRY OF A TEMPORARY**
                                         **RESTRAINING ORDER; (B) AN**
15        v.                             **ORDER TO SHOW CAUSE RE**
                                         **PRELIMINARY INJUNCTION;**
    ABC NAIL AND SPA PRODUCTS, a         **AND (C) EXPEDITED**
16  California business; GEL NAIL        **DISCOVERY**
    SUPPLY, a California business; VAL
17  USA MANUFACTURER, INC. (a.k.a.,      **FILED UNDER SEAL**
    Val Gel Polish Manufacture), a       **PURSUANT TO 15 U.S.C. § 1116**
18  California corporation; VIP NAIL     **(d)(8)**
    PRODUCT, INC., a California
19  corporation; V&V BEAUTY SUPPLIES,    [Filed concurrently with
    a California business; NAIL LOUNGE   Memorandum of Points and
20  LLC, a Nevada business; TODAY NAIL   Authorities; Supplemental
    (a.k.a., Nails Today), a Nevada business;  Declaration of GariDawn Tingler;
21  HOLLYWOOD BEAUTY SUPPLY, a           Declaration of Sunil Sirdesai;
    Nevada business; MT BEAUTY           Declaration of Todd M. Malynn; and
22  SUPPLY, a South Carolina business;   Proposed Order]
    NAIL MARK'S, a Florida business;
23  A&A NAIL SUPPLY, a Nebraska
    business; XUAN THI LAM; CHAU THI
24  NGOC LE; ANH Q. LE; IRIS ZHEN;
    FELIX TSENG; CINDY TRINH;
25  LINDSIDE PHAM; BRYAN TRAN;
    HAI T. NGUYEN; BAO TOAN LE; and
26  DOES 1 through 100, inclusive,

27            Defendants.

28

---

53307320.2

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

2016 JUN -8 PM 3:30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CA.
SANTA ANA

FILED

Lodged
Proposed
Order

Pursuant to Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65(b)(1) and Local Rules 7-19.1 and 65-1, plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively "Plaintiffs") renew their *ex parte* application for a Temporary Restraining Order ("TRO"), an Order to Show Cause ("OSC") re Preliminary Injunction, and an Order Expediting Discovery against Defendants ABC Nail & Spa Products, Gel Nail Supply, Val USA Manufacturer, Inc., VIP Nail Products, Inc., V & V Beauty Supplies, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, Bao Toan Le, Does 1 to 100, and all other persons with actual notice of this proceeding who are in active concert or participation with them (collectively, "Defendants").[1]

## I.   RELIEF SOUGHT

Plaintiffs' renewed application seeks the following relief against Defendants, in the form of a TRO, a preliminary injunction and order expediting discovery, in lieu of or in addition to the relief sought in Plaintiffs' initial application (Dkt. 5):

1.    An injunction enjoining the promotion, acquisition, sales, returns, shipping and disposal of all counterfeit GELISH brand products, including Foundation and Top it Off, and requiring the preservation of all evidence related to the promotion, acquisition, inventory, sales, returns, shipping, handling and disposal of all GELISH products, including but not limited to counterfeit GELISH brand foundation and top coat;

2.    An injunction requiring Defendants within five days of service of the order to turn over to Plaintiffs all counterfeit GELISH brand products and all documents, including electronic records, related to the promotion, acquisition, inventory, sales, returns, shipping, handling and disposal in the last year of all

---

[1]    Pursuant to the Court's order dated May 31, 2016 (Dkt. 14), Plaintiffs are in the process of amending their complaint to support the exercise of personal jurisdiction over defendants Nail Lounge LLC, Today Nail, Hollywood Beauty Supply, MT Beauty Supply, Nail Mark's III, Inc., and A&A Nail Supply, among others.

GELISH products, including all counterfeit GELISH products, in their possession, custody or control; and

3.      An order under Fed. R. Civ. Proc. 26(d)(1) authorizing expedited discovery, including the immediate service of deposition notices and ten requests for the production of documents, which noticed depositions, in accordance with the Federal Rules of Civil Procedure, may take place within three weeks of service of this order, and which verified responses and document production to take place within ten days of service of the order.

## II.     GROUNDS FOR EMERGENCY RELIEF

This Application is made and based on the following grounds in addition to those set forth in Plaintiffs' initial application (Dkt. 5):

1.      Plaintiffs have a substantially high likelihood of success on the merits of their causes of action for trademark infringement, counterfeiting and unfair competition.   Plaintiffs have shown that the following Defendants have sold counterfeit product imported from China and/or offered to sell counterfeit product to Plaintiffs, Plaintiffs' private investigator, or customers of Plaintiffs who complained about such incidents: ABC Nail, Gel Nail, Val USA, VIP Nail, V&V Beauty, Hollywood Beauty, MT Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris, Zhen, Felix Tseng, Cindy Trinh, and Lindside Pham. *See* Declaration of GariDawn Tingler ("Tingler Decl.") ¶¶ 21-33, Exhibits ("Ex.") 4-5 (Dkt. 8); Declaration of Jim Phan ("Phan Decl.") ¶¶ 7-11, Ex. 1-6 (Dkt. 9).   Based on their investigation, Plaintiffs have demonstrated good cause to believe that the other Defendants are selling the same, mislabeled and low-quality product from China. Tingler Decl. ¶ 38 (Dkt. 8); Supplemental Declaration of GariDawn Tingler ("Supp. Tingler Decl.") ¶¶ 7-10; Declaration of Sunil Sirdesai ("Sirdesai Decl.") ¶¶ 5, 7.

2.      Counterfeiting is the most pernicious and detrimental form of trademark infringement and constitutes criminal activity. *See* 15 U.S.C. § 1116(d). Unlike knock-off products, which may give rise to a likelihood of confusion and

53307320.2

thereby trade off the goodwill and reputation of a leading brand, counterfeit products (a) are intended to cause, and cause, actual confusion, (b) necessarily usurp the goodwill and reputation of a leading brand, and (c) divert sales and profits of the leading brand to each perpetrator in the distribution chain. *See Starbucks Corp. v. Heller,* 2014 WL 6685662, at *4 (C.D. Cal. Nov. 26, 2014); *Chanel, Inc. v. Puka Creations, et al.,* Case No. 14-cv-08405-ODQ (C.D. Cal. Nov. 3, 2014).

3.     Plaintiffs' evidentiary burden to obtain a TRO and preliminary injunction against counterfeiting activity, which results in deception (not just a likelihood of confusion), is relatively low on the sliding scale, the continuing validity of which was reaffirmed in *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).   Indeed, where, as here, the plaintiffs have a substantially high likelihood of success on the merits, only the required minimal showing of irreparable harm is necessary to obtain relief. *Id.*

4.     Moreover, Plaintiffs do not have to *suffer* irreparable harm to *prevent* irreparable harm from occurring with a TRO and preliminary injunction.[2]   *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008).   Rather, Plaintiffs only have to show a *likelihood* of irreparable harm if an injunction does not issue. *Id.; Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.,* 240 F. 3d 832, 841 (9th Cir. 2001) ("evidence of *threatened* loss of prospective customers or goodwill certainly supports a finding of . . . irreparable harm") (emphasis added).

5.     Plaintiffs have met even an onerous standard of irreparable harm at the TRO stage in this case for four basic reasons:

a.     The widespread proliferation of inferior counterfeit products imported from China in no less than seven reported states (California, Nevada,

---

[2]   *E.g.,* Tingler Decl. ¶ 38 & Supp. Tingler Decl. ¶¶ 12-14 (attesting to harm to Plaintiffs' business relationships with their authorized distributors and grounded fear and threat that their authorized distributors might drop or purchase fewer GELISH brand products and/or agree to carry or push other brands from other manufacturers because of a lack of exclusivity or the diminished nature or reduced demand for the product resulting from the counterfeiting activity).

Nebraska, Missouri, South Carolina, Florida and Texas), which has significantly contributed (in some amount) to an unexpected and substantial first quarter loss of sales,[3] manifestly evidences the "loss of control over business reputation," which is the very function of a trademark and constitutes irreparable harm.  *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("*Herb Reed*"); *Fitspot Ventures v. Bier,* 2015 WL 5145513, at *4 (C.D. Cal. Sep. 1, 2015).  Had Plaintiffs granted a naked license to Defendants to use the GELISH brand to promote their counterfeit product from China, Plaintiffs would have *lost* their trademark and have *no trademark rights or protection. FreecycleSunnyvale v. Freecycle Network,* 626 F. 3d 509, 519 (9th Cir. 2010).  Injunctive relief is the *only way* Plaintiffs can control their business reputation and use of their trademark by non-licensed third parties engaged in deception (as opposed to a mere likelihood of confusion).  Absent such control Plaintiffs have no trademark rights in the United States.  An after-the-fact award of damages is not an adequate remedy at law because it does not exert control over the trademark pending trial, and cannot remedy the loss of customers or goodwill and business reputation.

b.     Plaintiffs have proffered direct evidence of damage to their goodwill in the form of customer complaints about the cheap, low-quality nature of the counterfeit product at issue, which constitutes irreparable harm.  *Herb Reed,* 736 F.3d at 1249; *Starbucks Corp. v. Heller,* 2014 WL 6685662, at *4 (C.D. Cal. Nov. 26, 2014).  While there is no requirement of proof of actual confusion from customer complaints to warrant a TRO, particularly where (a) time is off the essence to prevent irreparable harm from occurring,[4] and (b) the subject product is mislabeled and poses a health risk to consumer,[5] there have now been multiple

---

[3]   *E.g.,* Tingler Decl. ¶ 39 & Supp. Tingler Decl. ¶ 13.

[4]   *Chanel, Inc.,* Case No. 14-cv-08405-ODQ (C.D. Cal. Nov. 3, 2014) (finding irreparable harm without any reported instance of actual confusion because "an average consumer down the distribution line may be unable to detect the counterfeit nature of the goods.").

[5]   *Kerr Corp. v. Tri Dental, Inc.,* 2013 WL 990532, *8 (C.D. Cal. Mar. 11, 2013).

53307320.2

1  complaints of the cheap, low-quality counterfeit product, which has a foul gasoline,
2  burnt plastic smell (Supp. Tingler Decl. ¶ 15) and which is typical for nail products
3  imported from China (Sirdesai Decl. ¶ 7).   Actually confused consumers have
4  complained to nail technicians and/or salon owners that the "GELISH" product
5  applied to their nails was "brittle," "fell off," or "cracked" within days, destroying
6  their nails, and in one instance caused "burning" due to a reaction to the mislabeled
7  product, harming the customer.  Tingler Decl. ¶ 25; Supp. Tingler Decl. ¶ 15.  Even
8  absent any reported complaints, Plaintiffs are necessarily exposed to a substantial
9  risk of irreparable harm due to the inferior nature of the counterfeit product
10 compared to authentic GELISH brand product.  Sirdesai Decl. ¶¶ 4-7.

11          c.      Plaintiffs have demonstrated that customer complaints are
12 extremely detrimental to their goodwill and reputation as a manufacturer of high-
13 quality gel polish, foundation, and top coat that are "Made in USA" and do not
14 have the harmful ingredients found in nail products imported from China.  *See*
15 Supp. Tingler Decl. ¶¶ 7, 14; Sirdesai Decl. ¶¶ 5-8 & Ex. 2 (Sweden taking extreme
16 step of banning product from China).  The GELISH brand, which has won multiple
17 awards for *Product of the Year* from established magazines, is recognized brand
18 leader.    Tingler Decl. ¶ 13 (Dkt. 8).    The nail products industry is highly
19 competitive and, while it takes years to develop a strong reputation and goodwill in
20 a product line, not to mention brand loyalty, demand for a product line can quickly
21 dissipate, especially when there is a product recall or repeated complaints about
22 product quality, which stifle business.  Supp. Tingler Decl. ¶ 14.

23          d.      The nail industry is driven by independent distributors who
24 carry or have access to multiple brands and who negotiate exclusive relationships
25 and territories.  Manufactures compete for their patronage.  Counterfeiting activity
26 threatens and harms a manufacturer's business relationships with independent
27 distributors as it reduces and diminishes the value of a brand, separate and apart
28 from any lost sales.  *Id.* ¶ 38; Tingler Decl. ¶ 12-14.

6.     A wooden application of the holding in *Herb Reed*, which is derived from patent case law involving "trolls" who did not sell a product, and therefore had no basis upon which to presume irreparable harm from an infringing product, undermines and is contrary to previously settled law under the Lanham Act.

a.     Patent law grants an exclusive right to practice an invention; patent infringement is not based on deception or a likelihood of confusion, but on an infringement of a holder's monopoly to practice an invention.  Thus damages normally are an adequate remedy at law, which is presumably the case when the plaintiff is a patent "troll" and does not manufacture a product—which were the facts of *Winter*.  It would be against public policy to deprive consumers of a product practicing an invention in contrast to providing the patent holder a reasonable royalty. *See* 555 U.S. at 24.

b.     In contrast, trademark law does not exist to financially reward inventors, but to protect consumers from deception and a likelihood of confusion as to the source or origin of a product.  Consumer deception is inherently wrongful and contrary to public policy. *Softman Products Co, LLC v. Adobe Systems, Inc.,* 171 F. Supp. 2d 1075, 1090 (C.D. Cal. 2001) ("We recognize that the public interest is one of the traditional equitable criteria which a court should consider in granting injunctive relief"); *Seed Services, Inc. v. Winsor Grain, Inc.,* 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012).  While a weak showing of a likelihood of confusion in connection with marginally related goods might not warrant an injunction, let alone a presumption of irreparable injury, it does not follow that over fifty years of case law presuming irreparable harm in cases, such as this case, where there is a strong showing of intended and actual consumer deception and confusion on directly competitive products, were erroneously decided.  The judiciary needs, and under the Ninth Circuit's sliding scale has, the flexibility to issue TROs, without delay, to protect consumers from deception and actual confusion and to prevent

RENEWED *EX PARTE* APPLICATION FOR TRO, ETC.
53307320.2

irreparable harm to a trademark holder based on the minimal required showing, as the trademark holder marshals the resources to protect it business.

7.     The balance of equities tips heavily in Plaintiffs' favor.   Any inconvenience to Defendants will be merely economic, consisting of the loss of ill-gotten gains from the sales of counterfeit product.  The potential for any other type of harm, moreover, is ameliorated by the posting of a bond by Plaintiffs.

8.     The public interest heavily favors the issuance of an injunction to protect against consumer confusion as well as to protect consumers from mislabeled and potentially harmful products.  Indeed, the essential purpose of the Lanham Act is to protect consumers from being misled as to the source of goods. *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1530 (9th Cir. 1992), *as amended* (Jan. 6, 1993).  Moreover, enjoining conduct that is expressly proscribed by statute by definition is in the public interest. *See* 15 U.S.C. § 1116.

9.     There is good cause to order expedited discovery in advance of a  Rule 26(f) conference.   Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.  *In Re Countrywide Fin. Corp Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. Mar. 28, 2008); *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal. 2008).   There is good cause to expedite discovery, so as to enable Plaintiffs to present to this Court at the preliminary injunction hearing a full record regarding both Plaintiffs' claims and the Court's jurisdiction relating to the nature and scope of the counterfeiting activity, including the involvement of each named defendant and other persons and entities conspiring to counterfeit GELISH brand products.  Specifically, Plaintiffs request that this Court allow Plaintiffs to immediately conduct depositions of Defendants pursuant to Fed. R. Civ. P. 30, and to immediately propound ten (10) Requests for Production of Documents with a command that verified responses and documents, including electronic information, be produced within five (5) days.  Accelerated

RENEWED *EX PARTE* APPLICATION FOR TRO, ETC.

53307320.2

1    discovery will not unduly prejudice Defendants, but will serve the interests of
2    justice in assuring that counterfeit goods are not left on the marketplace.

3    **III.    NOTICE**

4         Plaintiffs are serving a summons, complaint and these TRO papers on each of
5    the California defendants and will promptly file proofs of service. *See* Declaration
6    of Todd M. Malynn ¶ 3. In the interim, the Court has authority and good reasons to
7    issue the requested TRO without delay. *Id.* ¶ 2. Defendants are being sent a cover
8    letter informing them of the Court's options and procedure. *Id.* ¶ 3.

9    **IV.    SUPPORTING DOCUMENTS**

10        Plaintiffs' request for equitable relief is made and based on this Application,
11   the attached Memorandum of Points and Authorities, the concurrently filed
12   Supplemental Declaration of GariDawn Tingler, Declaration of Sunil Sirdesai and
13   Declaration of Todd M. Malynn, the previously filed Application (Dkt. 5) and
14   supporting Memorandum (Dkt. 6), Declaration of GariDawn Tingler (Dkt. 8) and
15   Declaration of Jim Phan (Dkt. 9), all the pleadings on file in this action, and any
16   and all such other matter as may be presented to the Court.

17   Dated: 6/8/16                                      Respectfully submitted,

18                                                      **POLSINELLI LLP**

19

20                                          By:   Todd M. Malynn, Esq.

21                                                2049 Century Park East, Suite 2900
22                                                Los Angeles, CA 90067
                                                  Telephone:  (310) 556-1801
23                                                Facsimile:   (310) 556-1802
                                                  tmalynn@polsinelli.com

24                                                *Attorneys for Plaintiffs*
25                                                HAND & NAIL HARMONY, INC.,
                                                  NAIL ALLIANCE, LLC
26

27

28

RENEWED *EX PARTE* APPLICATION FOR TRO, ETC.
53307320.2