O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| HAND & NAIL HARMONY, INC., ET AL., | Case No.: SA CV 16-0969-DOC (JEMx) |
|      Plaintiffs, | |
| v. | AMENDED ORDER GRANTING PLAINITFFS' APPLICATION FOR (A) TEMPORARY RESTRAINING ORDER; (B) ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; AND (C) EXPEDITED DISCOVERY [15] |
| ABC NAIL AND SPA PRODUCTS, ET AL., | |
|      Defendants. | |

Before the Court is Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC's ("Nail Alliance") (collectively, "Plaintiffs") renewed Application for: (a) Entry of Temporary Restraining Order; (b) An Order to Show Cause Re: Preliminary Injunction; and (c) Expedited Discovery ("Renewed Application") (Dkts. 15, 16).[1] Plaintiffs seek a temporary restraining order ("TRO") against Defendants ABC Nail and Spa Products ("ABC Nail"), Gel Nail Supply ("Gel Nail"), Val USA Manufacturer, Inc. (a.k.a., Val Gel Polish Manufacture) ("Val USA"), VIP Nail Products, Inc. ("VIP Nail"), V & V Beauty Supplies ("V & V Beauty"), Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le (collectively, "Defendants").[2]

Having considered the Complaint ("Compl.") (Dkt. 1), Renewed Application, as well as the accompanying Memorandum of Points and Authorities, declarations, and exhibits,[3] and all other pleadings and proceedings of record before the Court, the Court GRANTS the Renewed Application as set forth below.

## I.    Factual Background

Plaintiff Harmony manufactures, distributes, and sells high-quality, soak-off gel polishes and other nail products, accessories, and preparations under the brand name GELISH. Compl. ¶ 6. Through its qualified distributors, Harmony sells GELISH brand goods to boutiques and salons in Southern California and throughout the world. *Id.* GELISH brand foundation, gel polish, and top coat are sold in elegantly adorned and distinctive bottles. Declaration of Garidawn Tingler ("Tingler Decl.") (Dkt. 8) ¶ 9.

Plaintiff Nail Alliance owns and holds certain intellectual property rights used in connection with GELISH goods, including federal trademarks for the GELISH brand. Compl.

---

[1] The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] In response to Court's conclusion Plaintiffs had not established personal jurisdiction over the out-of-state Defendants, *see* Order Denying Original Application (Dkt. 14) at 7–9, Plaintiffs indicated that, at the time they filed the Renewed Application, they were in the process of amending the Complaint "to support the exercise of personal jurisdiction over defendants Nail Lounge LLC, Today Nail, Hollywood Beauty Supply, MT Beauty Supply, Nail Mark's III, Inc., and A&A Nail Supply, among others." Renewed App. at 1 n.1. Given this outstanding jurisdictional issue, Plaintiffs' Renewed Application only seeks immediate relief against the Defendants listed above – ABC Nail, Gel Nail Supply, Val USA, VIP Nail, V & V Beauty Supplies, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le.

[3] The Court has considered the declarations and exhibits filed with the Original Application, including the Declaration of Garidawn Tingler and the Declaration of Jim Phan (Dkts. 8, 9).

¶¶ 7, 34–35. In particular, Nail Alliance owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark), 3,857,946 (GELISH design plus words), as well as the unique three-dimensional configuration and scrollwork pattern, which is protected by United States Trademark Registration Numbers 4,473,557 and 4,473,558 (collectively, "GELISH marks"). Tingler Decl. ¶ 5; *see* Compl. Exs. 1–2. Harmony is the exclusive, worldwide licensee of Nail Alliance as it relates to the GELISH goods, marks, and bottle. Tingler Decl. ¶ 5.

This case centers upon allegations that Defendants are "actively engaged in manufacturing, distributing, selling, promoting, and/or attempting to pass off counterfeit products and spurious imitations of Plaintiffs' GELISH® brand nail products." Compl. ¶ 5; *see also id.* ¶¶ 48, 50–53. Plaintiffs contend Defendants' counterfeit products are cheap, low-quality masquerades that disparage Plaintiffs' registered trademarks and inherently distinctive trade dress. *Id.* ¶¶ 5, 55, 57. Plaintiffs allege Defendants' counterfeiting activities originate from Garden Grove, Westminster, and the City of Industry and that such activities have "manifested [themselves] in cities and states across the nation," including in Orlando, Florida; Las Vegas, Nevada; Taylor, South Carolina; and Omaha, Nebraska. *Id.* ¶ 5.

Harmony has invested millions of dollars in promoting its GELISH goods, marks, and bottles in the United States and throughout the world. Tingler Decl. ¶ 15. In particular, Harmony has spent millions of dollars promoting GELISH brand goods at trade shows and over the internet. *Id.* Harmony has developed and maintains a highly visited website (www.nailharmony.com), and corporate pages on social media sites such as Facebook. *Id.* ¶ 16. Harmony has also produced online advertisements, including a video that has been viewed by more than 2.5 million visitors. *Id.*

The GELISH goods incorporate the ® symbol to notify others the mark "GELISH" is subject to federal trademark registrations. *Id.* ¶ 14. The GELISH marks, trade dress, and bottle are symbols of Harmony's quality, reputation, and goodwill and have never been abandoned. *Id.* Moreover, the GELISH marks are instantly recognizable and associated exclusively with Plaintiffs in the United States and throughout the world by consumers. *Id.* Indeed, consumers

routinely ask for the products by name. *Id.* ¶ 4. Plaintiffs state GELISH is a famous mark in the nail industry. *Id.* ¶ 17.

Harmony carefully monitors and polices the use of its intellectual property, including the GELISH marks, both in the United States and around the world. *Id.* ¶¶ 18–20; *see also* Supplemental Declaration of Garidawn Tingler ("Supp. Tingler Decl.") (Dkt. 17) ¶ 6. The "continuing and growing success of the GELISH brand has attracted numerous counterfeit, knock-off, and other spurious products attempting to tradeoff the goodwill and reputation of Harmony's Products." Tingler Decl. ¶ 19; Supp. Tingler Decl. ¶ 7. In this case, Harmony states Defendants sell cheap, low-quality foundation and top coat that are mislabeled and sold as GELISH brand foundation and top coat (the "counterfeit product"). *See* Tingler Decl. ¶ 24; Declaration of Jim Phan ("Phan Decl.") (Dkt. 9) ¶¶ 6–8, *Id.* Exs. 1–2. Defendants' counterfeit product is sold or offered for sale in bottles with nearly identical labels. *See* Tingler Decl. ¶ 11, Fig. 2; Phan Decl. Exs. 3–6; Renewed App. at 5. Given the similarity between the genuine GELISH goods and the counterfeit product, the unavoidable conclusion is that consumers presented with the counterfeit product will be confused about its source.

The counterfeit product is of inferior quality. *See* Tingler Decl. ¶¶ 37–38; Supp. Tingler Decl. ¶ 4. The counterfeit product originates from sources in China. *See* Supp. Tingler Decl. ¶¶ 4, 7–10. The Chinese government does not follow or enforce the standards imposed on companies in the United States. *See* Declaration of Sunil Sirdesai ("Sirdesai Decl.") (Dkt. 18) ¶¶ 4, 7. Defendants generally sell the products at steeply discounted prices. *See* Tingler Decl. ¶ 29, Phan Decl. Exs. 1–2.

None of the Defendants are direct distributors of Harmony's GELISH brand products, and none of them have a license to use the mark GELISH to promote any product not manufactured by Harmony. *See* Tingler Decl. ¶¶ 5–6.

In their Complaint, Plaintiffs allege the following claims: (1) trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d), *id.* ¶¶ 61–72; (2) false designation of origin, false descriptions, unfair competition and dilution under 15 U.S.C.

1 § 1125, *id.* ¶¶ 73–88; and (3) unfair competition in violation of California Business &
2 Professions Code § 17200, *id.* ¶¶ 89–95.

3 **II.    Procedural History**

4 Plaintiffs commenced this action on May 27, 2016. *See generally* Compl. Also on May
5 27, 2016, Plaintiffs filed their original *Ex Parte* Application for: (a) Entry of Temporary
6 Restraining Order and Seizure Order; (b) Order to Show Cause Re: Preliminary Injunction; (c)
7 A Substitute Custodian Order; and (d) An Order for Expedited Discovery ("Original
8 Application") (Dkt. 7). On May 31, 2016, the Court denied without prejudice Plaintiffs'
9 Original Application ("Order Denying Original Application") (Dkt. 14).

10 Plaintiffs filed their Renewed Application on June 8, 2016, requesting the Court issue a
11 TRO, an order to show cause, and grant Plaintiffs' request for expedited discovery. Although
12 Plaintiffs previously sought a TRO without notice, Plaintiffs have provided Defendants ABC
13 Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, An Q.
14 Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao
15 Toan Le, against whom they seek a TRO, with notice of the Renewed Application. *See* Proof of
16 Service (Dkt. 21) at 1–3; Proof of Service (Dkt. 22) at 1–2; Proof of Service (Dkt. 24) at 1–2.
17 Despite receiving notice, as of the date of this Order, none of the Defendants have filed a
18 response or Opposition to the Renewed Application.

19 **III.   Legal Standards**

20 **A.  Temporary Restraining Order**

21 The standards for issuing a temporary restraining order ("TRO") and a preliminary
22 injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.,* 240
23 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy."
24 *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As explained by the Ninth
25 Circuit in *Winter*, a plaintiff seeking preliminary injunctive relief "must establish that he is
26 likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of
27 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the
28 public interest." *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.

2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotations marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

### B. Bond Amount

A TRO must be accompanied by payment of a bond "in such a sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although there is 'no steadfast rule as to the amount of a bond as a result of the issuance of a preliminary injunction,' the Ninth Circuit 'gives wide discretion to the issuance of preliminary injunction bonds, holding that' '[s]o long as a district court does not set such a high bond that it serves to thwart citizen actions, it does not abuse its discretion.'" *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (EX), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (quoting *Garrett v. City of Escondido*, 465 F. Supp. 2d. 1043, 1059 (S.D. Cal. 2006)).

### C. Expedited Discovery

"Because the Parties could not have already conferred as required by Federal Rule of Civil Procedure 26(f), Plaintiff[s] 'may not seek discovery . . . except . . . when authorized by . . . a court order.'" *SATA*, 2015 WL 6680807, at *11 (quoting Fed. R. Civ. P. 26(d)(1)). Courts employ the "good cause" standard to determine whether expedited discovery is warranted. *Id.* (citation omitted). Courts may consider the following factors when determining whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (citation and internal quotation marks omitted).

IV.     Discussion

    **A. Temporary Restraining Order**

After reviewing the Renewed Application and supporting documents, the Court finds a TRO is warranted here.

    **1.     Likelihood of Success on the Merits**

Plaintiffs' Complaint alleges trademark infringement in violation of 15 U.S.C. § 1114 (also referred to as Section 32 of the Lanham Act). This section of the Lanham Act "provides the registered owner of a trademark with an action against anyone who without consent uses a 'reproduction, counterfeit, copy, or colorable imitation' of the mark in such a way that 'is likely to cause confusion or to cause mistake, or to deceive.'" *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998) (quoting 15 U.S.C. § 1114(1)). To establish a trademark infringement claim, the plaintiff "must establish that [the defendant] is using the mark confusingly similar to a valid, protectable trademark of [the plaintiff's]." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Plaintiffs have provided sufficient evidence to show they have a valid, protectable interest in the registered marks at issue here. *See* Compl. Exs. 1–2.[4] Thus, the Court must next examine whether Defendants have used the GELISH marks in a way that is likely to cause confusion, or to deceive.

"Courts generally consider eight factors in determining whether a likelihood of confusion exists between products bearing and original trademark and allegedly infringing products." *SATA*, 2015 WL 6680807, at *6.[5] The eight factors are: "(1) strength of the mark; (2)

---

[4] The exhibits containing the trademark registrations were inadvertently omitted from the Complaint that appears in docket entry number one. Plaintiffs filed a Notice of Errata Re: Exhibits to Complaint on June 10, 2016 ("Notice of Errata") (Dkt. 20) stating a conformed copy of the Complaint, stamped on May 26, 2016, properly included the exhibits. Nonetheless, to ensure the Court received the exhibits, Plaintiffs attached them to the Notice of Errata. *See* Notice of Errata Exs. 1–2.

[5] Plaintiffs state that, in cases involving counterfeit marks, it is unnecessary to utilize the eight-factor test because "counterfeit marks are inherently confusing." Renewed App. at 9 (citing *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d

proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Id.* (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1990, 1209 (9th Cir. 2012)) (internal quotation marks omitted). These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Id.* (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011)) (internal quotation marks omitted). "[S]ome factors – such as the similarity of the marks and whether the two companies are direct competitors – will always be important." *Id.* (citation and internal quotation marks omitted). Nevertheless, "it is often possible to reach a conclusion . . . after considering only a subset of the factors." *Id.* (citation and internal quotation marks omitted).

With respect to the first factor, Plaintiffs assert the GELISH marks are "classified amongst the strongest marks because they are comprised of a fanciful, coined term." Renewed App. at 11. Further, Plaintiffs assert that, because of the extensive use by Harmony, consumers see the GELISH marks as an indicator of source and quality. Based on the evidence in the record, the Court finds this factor suggests a likelihood of confusion. *See Network Automation*, 638 F.3d at 1149.

The proximity of the goods – the second factor – depends on whether the goods are "(1) complementary, (2) sold to the same class of purchasers, and (3) similar in use and function." *Id.* at 1150. Although Defendants' counterfeit gel polish foundation and top coat are not of the same quality as the genuine GELISH products, "the goods are complementary and have the same use and function." *SATA*, 2015 WL 6680807, at *7. The gel nail polishes are also sold to the same class of purchasers. The Court also finds this factor suggests a likelihood of confusion.

With respect to the third factor, "[t]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054. Here, Defendants' counterfeit marks are almost identical to the GELISH marks – the script,

1067, 1073 (C.D. Cal. 2004)). Nonetheless, out of an abundance of caution, the Court has performed the step-by-step examination.

color, and placement of the marks on the bottles of nail polish is strikingly similar. *See* Phan Decl. Exs. 1–6; Tingler Decl. ¶ 24. "In light of virtual identity of marks, if they were used with identical products . . . likelihood of confusion would follow as a matter of course." *Brookfield*, 174 F.3d at 1056 (citation omitted). This factor therefore strongly suggest a likelihood of confusion.

Evidence of actual confusion is not necessary to finding a likelihood of confusion. *SATA*, 2015 WL 6680807, at *7.[6] "A likelihood of confusion "will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks." *Id.* (citation and internal quotation marks omitted). Plaintiffs have received complaints about the poor quality of counterfeit GELISH products. *See, e.g.*, Tingler Decl. ¶¶ 25–27, Supp. Tingler Decl. ¶ 15. However, it does not appear these complaints – which show there are consumers who are unable to discern the difference between actual GELISH products and counterfeit products – were about counterfeit products sold or manufactured by Defendants. Thus, the Court finds this factor weighs slightly against Plaintiffs.

"Convergent marketing channels increase the likelihood of confusion." *SATA*, 2015 WL 6680807, at *7 (citation and internal quotation marks omitted). It appears the markets are convergent; Plaintiffs assert "Defendants are targeting consumers of GELISH brand products with counterfeits." Renewed App. at 12.  Based on the evidence in the record, the Court finds this factor suggests a likelihood of confusion. *See, e.g.*, Tingler Decl. ¶ 38; Supp. Tingler Decl. ¶¶ 10, 13, 15.

With respect to the sixth factor – type of goods and degree of care – Plaintiffs note the goods at issue here are relatively inexpensive items, which suggests consumers will generally use a low degree of care and rely more on the brand name in purchasing the product. Renewed App. at 12; *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is assumed that buyers will exercise greater care in their purchasers."). In addition, the nearly identical labels on the nail polish bottles "would likely

---

[6] Indeed, the importance of this factor "is diminished at the preliminary injunction stage of the proceedings." *Network Automation*, 638 F.3d at 1151.

confuse even purchasers using a high degree of care." *SATA*, 2015 WL 6680807, at *8. Based on the foregoing, the Court finds this factor weighs in Plaintiffs' favor.

"A defendant's intent in selecting the mark seeks to determine whether the junior user adopted its mark to capitalize on the senior user's reputation and goodwill." *Id.* (citation omitted). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* (citation and internal quotation marks omitted). Plaintiffs contend GELISH is a famous mark in the nail industry. Tingler Decl. ¶ 17. Plaintiffs also emphasize consumers recognize GELISH brand products by the bottles' distinctive trademarks and trade dress, and routinely ask for the products by name. Tingler Decl. ¶¶ 4, 14, 16. Harmony has also won numerous awards. *Id.* ¶ 13. Further, as mentioned earlier, the labeling and marks on Defendants' products are nearly identical to the GELISH products. "Accordingly, the Court finds Defendants must have knowingly adopted the mark." *SATA*, 2015 WL 6680807, at *8. This factor therefore weighs in Plaintiffs' favor.

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand its business to compete with the other will weigh in favor of finding that the present use is infringing." *Id.* (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (internal quotation marks omitted)). Where companies "already compete to as significant extent," as is the case here, this factor is relatively unimportant. *Id.* (quoting *Brookfield*, 174 F.3d at 1060). Accordingly, this favor is neutral.

On balance, the Court finds Plaintiff has established a likelihood of consumer confusion based on the eight factors set forth above. The Court therefore finds Plaintiffs have established a likelihood of success on the merits of their trademark infringement claim.

### 2.    Likelihood of Irreparable Harm

In the Ninth Circuit, a plaintiff seeking a TRO in the trademark infringement context must establish irreparable injury; in other words, irreparable injury is not presumed by the Court upon a showing of a likelihood of success on the merits. *Herb Reed Enters., LLC v. Fla.*

*Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). "Evidence of a loss of control over business reputation and damage to goodwill" may be sufficient to show irreparable harm. *Id.*; *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

Here, Plaintiffs have provided sufficient evidence of irreparable harm. Plaintiffs claim Defendants' "proliferation of cheap, low-quality counterfeit products[] not only eviscerates Plaintiffs' ability to control its mark, but grossly impacts Plaintiffs' reputation and goodwill." Renewed App. at 16. In support of this argument, Plaintiffs offer evidence GELISH products "are known throughout the industry for their quality, durability, ease of use, consistency and beauty," Tingler Decl. ¶ 8, and note Harmony's GELISH brand gel polish "has won numerous awards," *id.* ¶ 13.

Plaintiffs also point to customer complaints expressing confusion and detailing the poor quality of supposed GELISH products. *See* Tingler Decl. ¶ 25–17 ("On May 13, 2016, we received a complaint from a nail technician who purchased 10 bottles of counterfeit GELISH Foundation from MT Beauty Supply . . . . The nail technician attached videos to her complaint demonstrating the cheap, low-quality nature of the counterfeit product which ruined her client's nails."); *id.* ¶ 38 ("I have also received complaints from salons and distributors that are confused about the source or origin of spurious GELISH goods purchased from counterfeiters . . . ."); Supp. Tingler Decl. ¶ 15 ("Harmony has received multiple reports of complaints from confused consumers, nail technicians, and salon owners regarding the poor quality of the counterfeit product, which they learned they were duped into purchasing. I followed up with one salon owner in Beverly Hills on June 2, 2016, regarding complaints he received after purchasing fake foundation off EBay at a deeply discounted price.").

Plaintiffs also offer evidence concerning the poor and potentially harmful quality of the counterfeit products. For example, Sunil Sirdesai ("Sirdesai"), the Technical Director (Polymers) in Harmony's Research & Development Department who is directly involved in the development of Harmony's new products, declares: "in my experience, counterfeit nail

products (a) do not duplicate the formulas of leading brands; (b) there are no assurances that they are subject to the same quality controls." Sirdesai Decl. ¶ 5. Sirdesai also states:

> To cheaply manufacture a nail product that tries to mimic the performance of a high-quality nail product, one or more "nasties" is normally included. Even then, based on my experience, nail products from China do not perform as well. For example, a typical foundation imported from China, which based on my knowledge includes the subject counterfeit product, may be brittle, can experience cracking within days of application, and will normally last less than two weeks. In addition, soak-off times to remove the imported foundation may be longer, and the removal process may be more harsh, leading to damage to the nail bed.

*Id.* ¶ 7.

Furthermore, Plaintiffs offer evidence the counterfeiting activities threaten and are already harming the business relationships with their distributors. Tingler, the Vice President of Harmony, declares that in April of 2016, Harmony received complaints from authorized distributors regarding the proliferation of counterfeit products harming their sales. Supp. Tingler Decl. ¶ 13. For example, on June 3, 2016, "one of Harmony's master distributors . . . met with one of its sub-distributors . . . to discuss a decrease of $70,000 in 2016 sales, mostly occurring in the last two months. As a result of the meeting, [the master distributor] discovered a large portion of the decrease in sales (reportedly more than 60% of the decrease) was being attributed to the recent counterfeit activities." *Id.* ¶ 13. Tingler contends the "widespread nature of the subject counterfeiting activity is harming Harmony's relationships with its distributors, who are now competing against distributors of counterfeit product, which diminishes the value of their distributorships, and encourages Plaintiffs' network of distributors to carry and distribute other branded products." Tingler Decl. ¶ 38; *see also* Supp. Tingler Decl. ¶ 12.

Finally, Tingler declares Harmony has suffered an unexpected drop in sales of GELISH foundation and top coat "evidencing not only lost sales due to the counterfeiting activity, but also a corresponding amount of disappointed customers." Tingler Decl. ¶ 39.

In light of the foregoing evidence, which shows a risk of harm to Plaintiffs' goodwill and reputation, along with a threat to established business relationships and evidence of lost sales, the Court finds Plaintiffs have demonstrated a likelihood of irreparable harm. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 Fed. Appx. 669, 672 (9th Cir. 2015); *SATA*, 2015 WL 6680807, at *9.

### 3.    Balance of Hardships

Plaintiffs also must show the balance of hardships weighs in favor of granting the TRO. *SATA*, 2015 WL 6680807, at *9. "[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Id.* (citation and internal quotation marks omitted).

Plaintiffs argue that if their Renewed Application is granted, "[a]ny inconvenience to Defendants will be merely economic, consisting of ill-gotten gains from the sales of counterfeit products," and that the potential for any other type of harm is ameliorated by the posting of a bond by Plaintiffs. Renewed App. at 18–19. The Court agrees the balance of hardship weighs in Plaintiffs' favor. Based on the record, it appears the only plausible hardship to Defendants if the Court issues Plaintiffs' requested TRO "is lost profits from the sales of counterfeit and infringing goods." *SATA*, 2015 WL 6680807, at *9. Further, in light of the Court's finding Plaintiffs are likely to succeed on the merits of their trademark infringement claim, this hardship does not weigh strongly in Defendants' favor and "merits little equitable considerable." *Id.* (citation omitted).

On the other hand, Plaintiffs have invested substantial resources in developing the goodwill and reputation associated with the GELISH Marks, as well as protecting its customers from counterfeit products. *See* Tingler Decl. ¶¶ 15–20, 36; Supp. Tingler Decl. ¶ 6. Plaintiffs' reputation and status in the market are put at risk by the actions of infringers and counterfeiters seeking to unfairly benefit from the positive association consumers have with Plaintiffs' products. *See* Tingler Decl. ¶ 37; Supp. Tingler Decl. ¶ 13–15. Accordingly, the Court finds the balance of hardships weighs in favor of granting the TRO.

### 4.    Public Interest

Finally, the Court must consider whether the requested TRO is in the public interest. "In trademark cases, courts generally recognize the public as a 'right not to be deceived or confused.'" *SATA*, 2015 WL 6680807, at *9 (quoting *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008)).

Plaintiffs have sufficiently demonstrated a TRO is in the public interest in this case. Plaintiffs have shown they have poured significant resources into having the public associate their products with their registered marks. *See* Tingler Decl. ¶¶16–20, 36. "By using confusingly similar marks, Defendant[s] [are] depriving consumers of their ability to distinguish among the goods of competing manufacturers." *Moroccanoil*, 590 F. Supp. 2d at 1282. Given the public has the right not to be deceived or confused, "the public interest and goals of the Lanham Act favor an injunction in this case." *Id.*

Based on the foregoing, the Court GRANTS Plaintiffs' Renewed Application for a TRO.

### B.  Bond Amount

In their Application, Plaintiffs "request that this Court dispense with any bond or impose a minimal bond of less than a hundred dollars." Renewed App. at 21. Plaintiffs assert "the targeted merchandise is cheap, proven fakes," and no undue harm can befall Defendants from the TRO. *Id.* Even if it is unlikely future proceedings will prove the injunction issued wrongfully, the Court is unconvinced a $100 bond is sufficient. Instead, having considered the record, the Court finds a $5,000.00 bond is sufficient "to protect [Defendants] from loss in the event that future proceedings prove that the injunction issued wrongfully." *SATA*, 2015 WL 6680807, at *9 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982)) (internal quotation marks omitted). Accordingly, Plaintiffs shall post a bond of $2,000.00 pursuant to Rule 65(c).

### C.  Expedited Discovery

Plaintiffs argue there is good cause to expedite discovery in this case, "so as to aid and enable Plaintiffs to present this Court with a full record regarding both the nature and scope of the counterfeiting activity, including the involvement of each named defendant and other persons and entities conspiring to counterfeit GELISH brand goods." Renewed App. at 24.

Plaintiffs state such discovery will assist the merits of the case at the preliminary injunction hearing. Further, without expedited discovery, it is possible Plaintiffs will suffer a denial of evidence and information necessary for their case because evidence may be secreted, concealed, destroyed, sold off, or otherwise disposed of. *See* Tingler Decl. ¶ 33; Phan Decl. ¶ 4. Based on the foregoing, the Court finds Plaintiffs purposes for requesting the expedited discovery demonstrate the requisite good cause with respect to the Defendants specifically listed above.[7]

### V. Disposition

The Court hereby GRANTS Plaintiffs' Renewed Application as set forth below.

### A. Temporary Restraining Order

IT IS HEREBY ORDERED that Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le; their respective officers, directors, employees, agents, subsidiaries, and distributors; and all persons in active concert or participation with Defendants who receive actual notice of this Order are immediately restrained and enjoined:

1. From directly or indirectly manufacturing, purchasing, importing, advertising, promoting, offering to sell, selling, distributing, transferring, concealing, or otherwise disposing of any products bearing any of the GELISH marks, the trade dress associated with the GELISH goods or the design of the GELISH bottle, above, or any confusingly similar mark or bottle, other than those actually manufactured or distributed by Plaintiffs;

---

[7] As stated in the Court's Order Denying the Original Application, "Plaintiffs have not established the Court has personal jurisdiction over [Defendants Nail Lounge LLC ("Nail Lounge"), Nail Today, Hollywood Beauty, A&A Nail, MT Beauty, and Nail Mark]." Order Denying Original Application at 8. Based on the record before it, the Court is unclear as to whether Plaintiffs are specifically requesting jurisdictional discovery as to the "non-California Defendants." If Plaintiffs are seeking to conduct jurisdictional discovery, they have not specified on what basis they are making such a request. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("The district court's refusal to provide [jurisdictional discovery], 'will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant. Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfaction of the fact is necessary.") (citation and internal quotation marks omitted).

2. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH marks, or any confusingly similar marks, trade dress or bottle design; or (ii) any evidence relating to the manufacture, purchasing, acquisition, importation, advertising, promotion, distribution, inventory, shipping, handling, sale, offer for sale, disposal or transfer of any products bearing any GELISH mark or any confusingly similar mark or bottle design, including but not limited to counterfeit GELISH brand foundation and top coat; and

3. From knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (1) through (2) above.

IT IS FURTHER ORDERED that Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le; their respective officers, directors, employees, agents, subsidiaries, and distributors; and all persons in active concert or participation with Defendants who receive actual notice of this Order shall immediately:

1. Provide or otherwise turn over to Plaintiffs, within five (5) days of service of this Order, all counterfeit GELISH brand products, and all documents, including electronic records, related to the promotion, acquisition, inventory, sales, returns, shipping, handling and disposal in the last year of all GELISH products, including all counterfeit GELISH products, in their possession, custody or control.

Unless extended by the Court, this Temporary Restraining Order shall expire in fourteen (14) days after its issuance; however, unless Plaintiffs show good cause as to why it should not be extended and/or a preliminary injunction should not issue, at the preliminary injunction hearing, the Court may convert said order into a Preliminary Injunction and it may thereby remain in full force and effect pending trial.

**B.  Bond to Be Posted**

IT IS FURTHER ORDERED that prior to the execution of this Order, Plaintiffs shall post a bond in the amount of five thousand dollars ($5,000.00), as payment of damages to which Defendants may be entitled, and shall file proof of the bond.  Any issue as to the adequacy of the bond must be raised at the hearing on July 13, 2016 at 8:30 a.m.

**C.  Order to Show Cause Why A Preliminary Injunction Should Not Issue and Order of Service**

IT IS FURTHER ORDERED that upon the Complaint herein and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le are to appear before this Court on **July 13, 2016 at 8:30 a.m.**, or at such other time that this Court deems appropriate, to show cause, if there be any, why an Order for a Preliminary Injunction should not be granted, pursuant to Federal Rule of Civil Procedural 65(a), on the same grounds and providing the same aforementioned relief to prohibit further violations of the Act and why the other relief should not be granted pending trial on the merits of this action.

Service or delivery of copies of this Order and the papers in support thereof on Defendants or their attorney shall be given within two (2) business days of this Order and, as so given, shall be deemed good and sufficient service thereof.

Opposing papers, if any, shall be filed with the Court and served by hand on Plaintiffs' counsel at least five (5) days prior to the hearing set for **July 13, 2016 at 8:30 a.m.** Plaintiffs shall file and personally serve any Reply Memorandum at least two (2) days prior to the hearing set for **July 13, 2016 at 8:30 a.m.**  The above dates may be revised upon stipulation by all parties to a continuance or upon agreement to maintain the status quo.

Defendants are hereby on notice that failure to appear at the show cause hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C.§ 1116(d) and Federal Rule of Civil Procedure 65.

**D. Expedited Discovery Order**

IT IS FURTHER ORDERED that Plaintiffs shall be entitled to depose Defendants in accordance with Federal Rule of Civil Procedure 26(d)(1) and 30. The depositions shall occur at reasonable places and times (no weekends or holidays), and upon at least 72 hours' notice, Further, Plaintiffs are permitted to immediately submit ten (10) Requests for Production of Documents with a command verified responses and document production be produced and completed within five (5) days of service of the document requests. As stated above, this ruling concerning expedited discovery only applies to Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le.

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2016