UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| HAND AND NAIL HARMONY INC., ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> ABC NAIL AND SPA PRODUCTS, ET AL., <br><br> Defendants. | Case No.: SA CV 16-0969-DOC (JEMx) <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED DISCOVERY |

The hearing on the Court's Order to Show Cause Re: Preliminary Injunction dated June 28, 2016 (Dkt. 31) came on as noticed on July 13, 2016.  Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, "Plaintiffs") appeared through counsel, Todd M. Malynn. Defendant Xuan Thi Lam, d/b/a Defendant V&V Beauty Supply, appeared through counsel, Jason S. Roberts. Defendants Iris Zhen and Val USA Manufacturer, Inc., a/k/a Val Gel Polish Manufacture (together, "Val USA"), as well as Felix Tseng, appeared through counsel, Peter K. Chu. No other Defendants appeared.

The following entities and persons were expressly subject to the Court's June 28, 2016 Amended Order granting Plaintiffs' Application for a Temporary Restraining Order ("TRO") and Expedited Discovery ("June 28, 2016 Order") (Dkt. 31): ABC Nail and Spa Products ("ABC Nail"); Gel Nail Supply, LLC ("Gel Nail"); Val USA; VIP Nail Products, Inc. ("VIP Nail"); V&V Beauty Supplies ("V&V Beauty"); Xuan Thi Lam; Chau Thi Ngoc Le; Anh Q. Le; Irish Zhen; Felix Tseng; Cindy Trinh; Lindside Pham; Bryan Tran; Hai T. Nguyen; and Bao Toan Le. Plaintiffs submitted the $5,000 bond required by the Court's June 28, 2016 Order (Dkt. 35).

None of the Defendants filed any opposition to Plaintiffs' motion for a preliminary injunction or request for expedited discovery. In addition, at the outset of the hearing, Xuan Thi Lam (individually and as V&V Beauty) reported she did not oppose Plaintiffs' Motion and that she was in the process of finalizing a settlement agreement with Plaintiffs. Accordingly, the Court will entertain any request to dissolve any preliminary injunction against Lam and V&V Beauty upon submission of an appropriate stipulation or motion.

At the hearing, Val USA, Iris Zhen, and Felix Tseng opposed the Motion,[1] which included a challenge to the Declaration of Jim Phan ("Phan") (Dkt. 9), a private investigator hired by Plaintiffs. Accordingly, Phan was called as a witness; he testified under oath, and was subject to cross examination. *See* Minutes of Hearing (Dkt. 70).

---

[1] Upon Plaintiffs' filing of the First Amended Complaint ("FAC") (Dkt. 25), Felix Tseng ("Tseng"), a sales representative of Val USA, was removed as a named Defendant. Plaintiffs confirmed at the hearing they no longer seek to hold Tseng personally liable for any infringing activity of Val USA. Accordingly, Tseng is relieved from any obligation to produce expedited discovery and any preliminary injunction issued in this matter would not run personally against Tseng under Federal Rule of Civil Procedure 65(d)(2)(A). However, Tseng remains subject to the provisions of Rules 65(d)(2)(B) and 65(d)(2)(C).

Having considered all papers filed in connection with Plaintiffs' Motion, all testimony at the hearing, and oral argument of counsel, the Court hereby GRANTS the Motion, makes the following findings of fact and conclusions of law, and issues the following preliminary injunction against Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V&V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Irish Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le (collectively, "Defendants"); all officers, agents, servants, employees, and attorneys of the Defendants, or any of them who receive actual notice of this Order; and all other persons who are in active concert or participation with them or any of them who receive actual notice of this Order.

## I. Background

### A. Facts

Plaintiff Harmony manufactures, distributes, and sells high-quality, soak-off gel polishes and other nail products, accessories, and preparations under the brand name "GELISH." First Amended Complaint ("FAC") (Dkt. 25) ¶ 6. Through its qualified distributors, Harmony sells GELISH brand goods to boutiques and salons in Southern California and throughout the world. *Id.* GELISH brand foundation, gel polish, and top coat are sold in elegantly adorned and distinctive bottles. Declaration of GariDawn Tingler ("Tingler Decl.") (Dkt. 8) ¶ 9.

Plaintiff Nail Alliance owns and holds certain intellectual property rights used in connection with GELISH goods, including federal trademarks for the GELISH brand. FAC ¶¶ 7, 62–63. In particular, Nail Alliance owns the rights to United States Trademark Registration Numbers 4,096,115 (GELISH standard character mark), 3,857,946 (GELISH Design plus words), as well as the unique three-dimensional configuration and scrollwork pattern, which is protected by United States Trademark Registration Numbers 4,473,557 and 4,473,558 (collectively, "GELISH marks"). Tingler Decl. ¶ 5; *see also* FAC Exs. 1–2. Harmony is the exclusive, worldwide licensee of Nail Alliance as it relates to the GELISH goods, marks, and bottle. Tingler Decl. ¶ 5.

This case centers upon allegations that Defendants are "actively engaged in manufacturing, distributing, selling, promoting, and/or attempting to pass off counterfeit

products and spurious imitations of Plaintiffs' GELISH® brand nail products." FAC ¶ 5; *see also id.* ¶¶ 76, 78–80. Plaintiffs contend Defendants' counterfeit products are cheap, low-quality masquerades that disparage Plaintiffs' registered trademarks and inherently distinctive trade dress. *Id.* ¶¶ 5, 90, 92.

Harmony has invested millions of dollars in promoting its GELISH goods, marks, and bottles in the United States and throughout the world. Tingler Decl. ¶ 15. In particular, Harmony has spent millions of dollars promoting GELISH brand goods at trade shows and over the internet. *Id.* Harmony has developed and maintains a highly visited website (www.nailharmony.com), and corporate pages on social media sites such as Facebook. *Id.* ¶ 16. Harmony has also produced online advertisements, including a video that has been viewed by more than 2.5 million visitors. *Id.*

The GELISH goods incorporate the ® symbol to notify others the mark "GELISH" is subject to federal trademark registrations. *Id.* ¶ 14. The GELISH marks, trade dress, and bottle are symbols of Harmony's quality, reputation, and goodwill and have never been abandoned. *Id.* Moreover, the GELISH marks are instantly recognizable and associated exclusively with Plaintiffs in the United States and throughout the world by consumers. *Id.* Indeed, consumers routinely ask for the products by name. *Id.* ¶ 4. Plaintiffs state GELISH is a famous mark in the nail industry. *Id.* ¶ 17.

Harmony carefully monitors and polices the use of its intellectual property, including the GELISH marks, both in the United States and around the world. *Id.* ¶¶ 18–20; *see also* Supplemental Declaration of GariDawn Tingler ("Supp. Tingler Decl.") (Dkt. 17) ¶ 6; FAC ¶ 73. The "continuing and growing success of the GELISH brand has attracted numerous counterfeit, knock-off, and other spurious products attempting to tradeoff the goodwill and reputation of Harmony's Products." Tingler Decl. ¶ 19; *see also* Supp. Tingler Decl. ¶ 7. In this case, Harmony states Defendants sell cheap, low-quality foundation and top coat that are mislabeled and sold as GELISH brand foundation and top coat (the "counterfeit product"). *See* Tingler Decl. ¶ 24; Declaration of Jim Phan ("Phan Decl.") (Dkt. 9) ¶¶ 6–8; *id.* Exs. 1–2. Defendants' counterfeit product is sold or offered for sale in bottles with nearly identical labels.

*See* Tingler Decl. ¶ 11, Fig. 2; Phan Decl. Exs. 3–6; Renewed App. at 5. Given the similarity between the genuine GELISH goods and the counterfeit product, the conclusion is that consumers presented with the counterfeit product will be confused about its source.

Plaintiff state the counterfeit product is of inferior quality. *See* Tingler Decl. ¶¶ 37–38; Supp. Tingler Decl. ¶ 4. The counterfeit product originates from sources in China. *See* Supp. Tingler Decl. ¶¶ 4, 7–10. The Chinese government does not follow or enforce the standards imposed on companies in the United States. *See* Declaration of Sunil Sirdesai ("Sirdesai Decl.") (Dkt. 18) ¶¶ 4, 7. Defendants generally sell the products at steeply discounted prices. *See* Tingler Decl. ¶ 29, Phan Decl. Exs. 1–2.

None of the Defendants are direct distributors of Harmony's GELISH brand products, and none of them have a license to use the mark GELISH to promote any product not manufactured by Harmony. *See* Tingler Decl. ¶¶ 5–6.

In their FAC, Plaintiffs allege the following claims: (1) trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116(d), *id.* ¶¶ 96–106; (2) false designation of origin, false descriptions, unfair competition and dilution under 15 U.S.C. § 1125, *id.* ¶¶ 107–18; (3) unfair competition *id.* ¶¶ 119–126; unfair competition in violation of California Business & Professions Code § 17200, *id.* ¶¶ 127–33; and (4) violation of the Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, *id.* ¶¶ 134–56.

### B. Procedural History

Plaintiffs commenced this action on May 27, 2016. *See* generally Complaint ("Compl.") (Dkt. 1). Also on May 27, 2016, Plaintiffs filed their original *Ex Parte* Application for: (a) Entry of Temporary Restraining Order and Seizure Order; (b) Order to Show Cause Re: Preliminary Injunction; (c) a Substitute Custodian Order; and (d) an Order for Expedited Discovery ("Original Application") (Dkt. 7). On May 31, 2016, the Court denied without prejudice Plaintiffs' Original Application ("Order Denying Original Application") (Dkt. 14).

Plaintiffs filed their Renewed Application on June 8, 2016, requesting the Court issue a TRO and an Order to Show Cause, and grant Plaintiffs' request for expedited discovery ("Renewed Application") (Dkt. 15). Although Plaintiffs previously sought a TRO without

notice, Plaintiffs provided Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, An Q. Le, Iris Zhen, Felix Tseng, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le, against whom they sought a TRO, with notice of the Renewed Application. *See* Proof of Service (Dkt 21) at 1–3; Proof of Service (Dkt. 22) at 1–2; Proof of Service (Dkt. 24) at 1–2. Despite receiving notice, none of the Defendants have filed a response or opposition to the Renewed Application. This Court granted Plaintiffs' Renewed Application and scheduled an oral hearing to Show Cause regarding the requested Preliminary Injunction.

## II. Legal Standards

### A. Preliminary Injunction

A preliminary injunction is an "extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking preliminary injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotations marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

### B. Bond Amount

A preliminary injunction must be accompanied by payment of a bond "in such a sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Although there is 'no steadfast rule as to the amount of a bond as a result of the issuance of a preliminary injunction,' the Ninth Circuit 'gives wide discretion to the issuance of preliminary injunction bonds, holding that' '[s]o long as a district court does not set such a high

bond that it serves to thwart citizen actions, it does not abuse its discretion.'" *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (EX), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (quoting *Garrett v. City of Escondido*, 465 F. Supp. 2d. 1043, 1059 (S.D. Cal. 2006)).

### C. Expedited Discovery

"Because the Parties could not have already conferred as required by Federal Rule of Civil Procedure 26(f), Plaintiff[s] 'may not seek discovery . . . except . . . when authorized by . . . a court order.'" *SATA*, 2015 WL 6680807, at *11 (quoting Fed. R. Civ. P. 26(d)(1)). Courts employ the "good cause" standard to determine whether expedited discovery is warranted. *Id.* (citation omitted). Courts may consider the following factors when determining whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the Defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (citation and internal quotation marks omitted).

## III. Discussion

### A. Preliminary Injunction

After reviewing the arguments and considering testimony presented during the hearing on July 13, 2016, and Plaintiffs' Renewed Application and supporting documents, the Court finds a preliminary injunction is warranted here.

#### 1. Likelihood of Success on the Merits

The Court finds Plaintiffs have established they are likely to succeed on at least one of their claims. *See C & C Properties, Inc. v. Shell Co.*, No. 1:14-CV-01889-JAM, 2015 WL 5604384, at *4 (E.D. Cal. Sept. 23, 2015), *report and recommendation adopted* (Dec. 3, 2015); *Californians for Alternatives To Toxics v. Troyer*, No. CIVS051633FCDKJM, 2005 WL 2105343, at *2 (E.D. Cal. Aug. 31, 2005) ("To prevail on the motion, plaintiffs need only show a likelihood of success on the merits/serious questions as to *one* of their claims for relief. Accordingly, the court does not consider herein all of plaintiffs' claims nor all of the grounds for plaintiffs' claims . . . ."). Plaintiffs' FAC alleges trademark infringement in violation of 15

U.S.C. § 1114 (also referred to as Section 32 of the Lanham Act). This section of the Lanham Act "provides the registered owner of a trademark with an action against anyone who without consent uses a 'reproduction, counterfeit, copy, or colorable imitation' of the mark in such a way that 'is likely to cause confusion or to cause mistake, or to deceive.'" *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998) (quoting 15 U.S.C. § 1114(1)). To establish a trademark infringement claim, the plaintiff "must establish that [defendant] is using the mark confusingly similar to a valid, protectable trademark of [plaintiff's]." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes *prima facie* evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Plaintiffs have provided sufficient evidence to show they have a valid, protectable interest in the registered marks at issue here. *See* FAC Exs. 1–2. Thus, the Court must next examine whether Defendants have used the GELISH marks in a way that is likely to cause confusion, or to deceive.

As a preliminary matter, the Court notes the only Defendants that have responded to the Court's June 28, 2016 Order and denied being involved in manufacturing, distributing, selling, promoting, and/or offering for sale counterfeit products or spurious imitations of Plaintiffs' GELISH brand nail products are Val USA and Iris Zhen ("Zhen"). As mentioned above, at the hearing, these Defendants challenged the declaration of Phan, Plaintiffs' private investigator, who presented himself as a broker, *see* Phan Decl. ¶ 3. In his declaration and at the hearing, Phan testified in detail as to his encounter with Val USA, Zhen (the manager of Val USA), and Felix Tseng ("Tseng") (a sales representative). *See* Phan Decl. ¶ 7, *id.* Ex. 1. The Court finds Phan's testimony credible, including his testimony concerning Zhen's authority at Val USA, and that Zhen confirmed for Phan he had come to the right place to obtain identical-looking GELISH brand products.[2] Among other things, Phan testified Zhen authorized Tseng to show Phan samples of authentic GELISH brand foundation and top coat bottles, and led Phan on a

---

[2] Contrary to Defendants' argument, the Court concludes it is of no moment that Phan requested "identical" looking GELISH brand products rather than expressly asking for "counterfeit" products.

tour of Val USA's facility to confirm for Phan that Val USA had the ability to duplicate those products. Val USA had identically shaped bottles in stock. And Zhen showed Phan Val USA had the machines, equipment and expertise necessary to power coat, label, and fill those bottles to look like GELISH brand products. The Court also finds credible Phan's testimony that Zhen and Tseng were eager to consummate a large transaction, which apparently would have included 170,000 bottles, including offering to provide Phan samples of the product the next day at Phan's office, at which time Phan's client would wire transfer 35% of the cost of the project to Val USA.

With respect to the likelihood of confusion, "[c]ourts generally consider eight factors in determining whether a likelihood of confusion exists between products bearing and original trademark and allegedly infringing products." *SATA*, 2015 WL 6680807, at *6; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).[3] The eight factors, which are sometimes referred to as the *Sleekcraft* factors, are: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1990, 1209 (9th Cir. 2012) (internal quotation marks omitted)); *see also Sleekcraft*, 599 F.2d at 348–49. These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Id.* (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (internal quotation marks omitted)). "[S]ome factors – such as the similarity of the marks and whether the two companies are direct competitors – will always be important." *Id.* (citation and internal quotation marks omitted). Nevertheless, "it is often possible to reach a conclusion . . . after considering only a subset of the factors." *Id.* (citation and internal quotation marks omitted).

---

[3] Plaintiffs state that, in cases involving counterfeit marks, it is unnecessary to utilize the eight-factor test because "counterfeit marks are inherently confusing." Renewed App. at 9 (*citing Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d. 1067, 1073 (C.D. Cal. 2004)). Nonetheless, out of an abundance of caution, the Court has performed the step-by-step examination.

With respect to the first factor, strength of the mark, Plaintiffs assert the GELISH marks are "classified amongst the strongest marks because they are comprised of a fanciful, coined term." Renewed App. at 11. Further, Plaintiffs assert that, because of the extensive use by Harmony, consumers see the GELISH marks as an indicator of source and quality. Based on the evidence in the record, the Court finds this factor suggests a likelihood of confusion. *See Network Automation*, 638 F.3d at 1149.

The proximity of the goods – the second factor – depends on whether the goods are "(1) complementary, (2) sold to the same class of purchasers, and (3) similar in use and function." *Id.* at 1150. Although Plaintiffs assert Defendants' counterfeit gel polish foundation and top coat are not of the same quality as the genuine GELISH products, "the goods are complementary and have the same use and function." *SATA*, 2015 WL 6680807, at *7. The products are also sold to the same class of purchasers. The Court also finds this factor suggests a likelihood of confusion.

With respect to the third factor, similarity of the marks, "[t]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield*, 174 F.3d at 1054. Here, Defendants' counterfeit marks are almost identical to the GELISH marks – the script, color, and placement of the marks on the bottles of nail polish is strikingly similar. *See* Phan Decl. Exs. 1–6; Tingler Decl. ¶ 24. "In light of virtual identity of marks, if they were used with identical products . . . likelihood of confusion would follow as a matter of course." *Brookfield,* 174 F.3d at 1056 (citation omitted). This factor therefore strongly suggests a likelihood of confusion.

With respect to the fourth factor, evidence of confusion, the Court notes evidence of *actual* confusion is not necessary to finding a *likelihood* of confusion. *SATA*, 2015 WL 6680807, at *7.[4] "A likelihood of confusion 'will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks.'" *Id.* (citation and internal quotation marks omitted). Plaintiffs have received complaints about the poor quality of the counterfeit GELISH products. *See, e.g.*, Tingler Decl.

---

[4] Indeed, the importance of this factor "is diminished at the preliminary injunction stage of the proceedings." *Network Automation*, 638 F.3d at 1151.

¶¶ 25–27, Supp. Tingler Decl. ¶ 15. However, it does not appear these complaints – which show there are consumers who are unable to discern the difference between actual GELISH products and counterfeit products – were about counterfeit products sold or manufactured by Defendants. Thus, the Court finds this factor weighs slightly against Plaintiffs.

The Court now turns to the fifth factor, marketing channels used. "Convergent marketing channels increase the likelihood of confusion." *SATA*, 2015 WL 6680807, at *7 (citation and internal quotation marks omitted). It appears the markets are convergent; Plaintiffs assert "Defendants are targeting consumers of GELISH brand products with counterfeits." Renewed App. at 12. Based on the record evidence, the Court finds this factor suggests a likelihood of confusion. *See, e.g.*, Tingler Decl. ¶ 38; Supp. Tingler Decl. ¶¶ 10, 13, 15.

With respect to the sixth factor – type of goods and degree of care – Plaintiffs note the goods at issue here are relatively inexpensive items, which suggests consumers will generally use a low degree of care and rely more on the brand name in purchasing the product. Renewed App. at ¶ 12; *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is assumed that buyers will exercise greater care in their purchasers."). In addition, the nearly identical labels on the nail polish bottles "would likely confuse even purchasers using a high degree of care." *SATA*, 2015 WL 6680807, at *8. Based on the foregoing, the Court finds this factor weighs in Plaintiffs' favor.

The seventh factor, the defendant's intent in selecting the mark, "seeks to determine whether the junior user adopted its mark to capitalize on the senior user's reputation and goodwill." *Id.* (citation omitted). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* (citation and internal quotation marks omitted). Plaintiffs contend GELISH is a famous mark in the nail industry. Tingler Decl. ¶ 17. Plaintiffs also emphasize consumers recognize GELISH brand products by the bottles' distinctive trademarks and trade dress, and routinely ask for the products by name. Tingler Decl. ¶¶ 4, 14, 16. Harmony has also won numerous awards. *Id.* ¶ 13. Further, as mentioned earlier, the labeling and marks on Defendants' products are nearly identical to the GELISH products. Accordingly,

the Court finds Defendants must have knowingly adopted the mark." *SATA*, 2015 WL 6680807, at *8. This factor therefore weighs in Plaintiffs' favor.

Finally, the Court turns to the eighth factor, likelihood of expansion of the product lines. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand its business to compete with the other will weigh in favor of finding that the present use is infringing." *Id.* (quoting *Sleekcraft Boats*, 599 F.2d at 354) (internal quotation marks omitted). Where companies "already compete to as significant extent," as is the case here, this factor is relatively unimportant. *Id.* (quoting *Brookfield*, 174 F.3d at 1060). Accordingly, this favor is neutral.

On balance, the Court finds Plaintiffs have established a likelihood of consumer confusion based on the eight factors set forth above. The Court therefore finds Plaintiffs have established a likelihood of success on the merits of their trademark infringement claim.

### 2. Likelihood of Irreparable Harm

In the Ninth Circuit, a plaintiff seeking a preliminary injunction in the trademark infringement context must establish irreparable injury; in other words, irreparable injury is not presumed by the Court upon a showing of a likelihood of success on the merits. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). "Evidence of a loss of control over business reputation and damage to goodwill" may be sufficient to show irreparable harm. *Id.*; *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

Here, Plaintiffs have provided sufficient evidence of irreparable harm. Plaintiffs claim Defendants' "proliferation of cheap, low-quality counterfeit products[] not only eviscerates Plaintiffs' ability to control its mark, but grossly impacts Plaintiffs' reputation and goodwill." Renewed App. at 16. In support of this argument, Plaintiffs offer evidence GELISH products "are known throughout the industry for their quality, durability, ease of use, consistency and beauty," and note Harmony's GELISH brand gel polish "has won numerous awards." Tingler Decl. ¶ 8; *id.* ¶ 13.

1    Plaintiffs also point to customer complaints expressing confusion and detailing the poor
2 quality of supposed GELISH products. *See* Tingler Decl. ¶ 25–27 ("On May 13, 2016, we
3 received a complaint from a nail technician who purchased 10 bottles of counterfeit GELISH
4 Foundation from MT Beauty Supply . . . . The nail technician attached videos to her complaint
5 demonstrating the cheap, low-quality nature of the counterfeit product which ruined her client's
6 nails."); *id.* ¶ 38 ("I have also received complaints from salons and distributors that are
7 confused about the source or origin of spurious GELISH goods purchased from
8 counterfeiters. . . ."); Supp. Tingler Decl. ¶ 15 ("Harmony has received multiple reports of
9 complaints from confused consumers, nail technicians, and salon owners regarding the poor
10 quality of the counterfeit product, which they learned they were duped into purchasing. I
11 followed up with one salon owner in Beverly Hills on June 2, 2016, regarding complaints he
12 received after purchasing fake foundation off EBay at a deeply discounted price.").

13    In addition, Plaintiffs offer evidence concerning the poor and potentially harmful quality
14 of the counterfeit products. For example, Sunil Sirdesai ("Sirdesai"), the Technical Director
15 (Polymers) in Harmony's Research & Development Department who is directly involved in the
16 Development of Harmony's new products, declares: "in my experience, counterfeit nail
17 products (a) do not duplicate the formulas of leading brands; and (b) there are no assurances
18 that they are subject to the same quality controls." Sirdesai Decl. ¶ 5. Sirdesai also states:

> To cheaply manufacture a nail product that tries to mimic the performance
> of a high-quality nail product, one or more "nasties" is normally included.
> Even then, based on my experience, nail products from China do not
> perform as well. For example, a typical foundation imported from China,
> which based on my knowledge includes the subject counterfeit product,
> may be brittle, can experience cracking within days of application, and will
> normally last less than two weeks. In addition, soak-off times to remove the
> imported foundation may be longer, and the removal process may be more
> harsh, leading to damage to the nail bed.

*Id.* ¶ 7.

Furthermore, Plaintiffs offer evidence the counterfeiting activities threaten and are already harming the business relationships with their distributors. Tingler, the Vice President of Harmony, declares that in April of 2016, Harmony received complaints from authorized distributors regarding the proliferation of counterfeit products harming their sales. Supp. Tingler Decl. ¶ 13. For example, on June 3, 2016, "one of Harmony's master distributors . . . met with one of its sub-distributors . . . to discuss a decrease of $70,000 in 2016 sales, mostly occurring in the last two months. As a result of the meeting, [the master distributor] discovered a large portion of the decrease in sales (reportedly more than 60% of the decrease) was being attributed to the recent counterfeit activities." *Id.* ¶ 13. Tingler contends the "widespread nature of the subject counterfeiting activity is harming Harmony's relationships with its distributors, who are now competing against distributors of counterfeit product, which diminishes the value of their distributorships, and encourages Plaintiffs' network of distributors to carry and distribute other branded products." Tingler Decl. ¶ 38; *see also* Supp. Tingler Decl. ¶ 12. Finally, Tingler declares Harmony has suffered an unexpected drop in sales of GELISH foundation and top coat "evidencing not only lost sales due to the counterfeiting activity, but also a corresponding amount of disappointed customers." Tingler Decl. ¶ 39.

In light of the foregoing evidence, which shows a risk of harm to Plaintiffs' goodwill and reputation, along with a threat to established business relationships and evidence of lost sales, the Court finds Plaintiffs have demonstrated a likelihood of irreparable harm. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 602 Fed. Appx. 669, 672 (9th Cir. 2015); *SATA*, 2015 WL 6680807, at *9.

### 3. Balance of Hardships

Plaintiffs also must show the balance of hardships weighs in favor of granting the preliminary injunction. *SATA*, 2015 WL 6680807, at *9. "[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Id.* (citation and internal quotation marks omitted).

-14-

1 Plaintiffs argue if their Renewed Application is granted, "[a]ny inconvenience to
2 Defendants will be merely economic, consisting of ill-gotten gains from the sales of counterfeit
3 products," and that the potential for any other type of harm is ameliorated by the posting of a
4 bond by Plaintiffs. Renewed App. at 18–19. At the hearing, Val-USA objected that the granting
5 of a preliminary injunction to enjoin their business activities would injure its reputation.

6 The Court concludes the balance of hardship weighs in Plaintiffs' favor. First, the Court
7 found Phan's testimony credible (testimony that was not rebutted by any other witness), and is
8 unpersuaded by Val USA's argument that potential damage to its reputation tips the balance of
9 harm against Plaintiffs. *See Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir.
10 1995) ("Southeastern cannot complain of the harm that will befall it when properly forced to
11 desist from its infringing activities."), *superseded by statute on other grounds as stated in*
12 *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1158 (9th Cir. 2011); *see also Apple Computer,*
13 *Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (stating, in motion for
14 preliminary injunction, district court should not consider the "devastating effect" of the
15 injunction on the infringer's business). Further, based on the record, it appears the only other
16 hardship Defendants will suffer, if the Court issues the requested preliminary injunction "is lost
17 profits from the sales of counterfeit and infringing goods," an argument that "merits little
18 equitable consideration." *SATA*, 2015 WL 6680807, at *9 (citation and internal quotation marks
19 omitted). In addition, in light of the Court's finding Plaintiffs are likely to succeed on the merits
20 of their trademark infringement claim, any such hardship does not weigh strongly enough in
21 Defendants' favor and "merits little equitable considerable." *Id.*

22 Plaintiffs, on the other hand, have invested substantial resources in developing the
23 goodwill and reputation associated with the GELISH Marks, as well as protecting its customers
24 from counterfeit products. *See* Tingler Decl. ¶¶ 15–20, 36; Supp. Tingler Decl. ¶ 6. Plaintiffs'
25 reputation and status in the market are put at risk by the actions of infringers and counterfeiters
26 seeking to unfairly benefit from the positive association consumers have with Plaintiffs'
27 products. *See* Tingler Decl. ¶ 37; Supp. Tingler Decl. ¶¶ 13–15. Accordingly, the Court finds
28 the balance of hardships weighs in favor of granting the preliminary injunction.

#### 4. Public Interest

Finally, the Court must consider whether the requested preliminary injunction is in the public interest. "In trademark cases, courts generally recognize the public as a 'right not to be deceived or confused.'" *SATA*, 2015 WL 6680807, at *9 (quoting *Moroccanoil*, *Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008)).

Plaintiffs have sufficiently demonstrated a preliminary injunction is in the public interest in this case. Plaintiffs have shown they have poured significant resources into having the public associate their products with their registered marks. *See* Tingler Decl. ¶¶16–20, 36. "By using confusingly similar marks, Defendant[s] [are] depriving consumers of their ability to distinguish among the goods of competing manufacturers." *Moroccanoil*, 590 F. Supp. 2d at 1282. Given the public has the right not to be deceived or confused, "the public interest and goals of the Lanham Act favor an injunction in this case." *Id.*

#### 5. Conclusion

Based on the foregoing, the Court finds a preliminary injunction is warranted here. Accordingly, the Court GRANTS Plaintiffs' motion for a preliminary injunction.

### B. Bond Amount

Pursuant to Rule 65(c) and a June 28, 2016 Order granting Plaintiffs' Renewed Application for a Temporary Restraining Order, Plaintiffs posted a $5,000.00 bond. The Court finds such prior posted bond, to which there has been no objection (written or oral), satisfies the bond requirements of this Order "to protect [Defendants] from loss in the event that future proceedings prove that the injunction issued wrongfully." *SATA*, 2015 WL 6680807, at *9 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (internal quotation marks omitted)).

### C. Expedited Discovery

The Court finds Plaintiffs demonstrate the requisite good cause with respect to the Defendants specifically listed above,[5] and hereby reaffirms the June 28, 2016 Order regarding expedited discovery under Fed. R. Civ. Proc. 26(d)(1). The Court overrules objections made by counsel Peter K. Chu during the hearing.

---

[5] Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, An Q. Le, Iris Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le.

### IV. Disposition

The Court GRANTS Plaintiffs' motion for a preliminary injunction and overrules Val USA and Iris Zhen's objections to expedited discovery.

### A. Preliminary Injunction

IT IS HEREBY ORDERED that, barring further Order of this Court, Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le; their respective officers, directors, agents, servants, employees, and attorneys; and all other persons who are in active concert or participation with them, or any of them, who receive actual notice of this Order, are immediately restrained and enjoined pending the final resolution of this matter:

    1. From directly or indirectly manufacturing, purchasing, importing, advertising, promoting, offering to sell, selling, distributing, transferring, concealing, or otherwise disposing of any products bearing any of the GELISH marks, the trade dress associated with the GELISH goods or the design of the GELISH bottle, above, or any confusingly similar mark or bottle, other than those actually manufactured or distributed by Plaintiffs;

    2. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH marks, or any confusingly similar marks, trade dress or bottle design; or (ii) any evidence relating to the manufacture, purchasing, acquisition, importation, advertising, promotion, distribution, inventory, shipping, handling, sale, offer for sale, disposal or transfer of any products bearing any GELISH mark or any confusingly similar mark or bottle design, including but not limited to counterfeit GELISH brand foundation and top coat; and

        3. From knowingly instructing, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (1) through (2) above.

IT IS FURTHER ORDERED that Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le; their respective officers, directors, agents, servants, employees, and attorneys; and all other persons who are in active concert or participation with them, or any of them, who receive actual notice of this Order, shall immediately:

        1. Provide or otherwise turn over to Plaintiffs, within five (5) days of service of this Order, all counterfeit GELISH brand products, and all documents, including electronic records, related to the promotion, acquisition, inventory, sales, returns, shipping, handling and disposal in the last year of all GELISH products, including all counterfeit GELISH products, in their possession, custody or control.

This Order for a Preliminary Injunction will remain in full force and effect until further Order of this Court or a final judgment or resolution of this matter.

### B. Bond Posted

IT IS FURTHER ORDERED that Plaintiffs' prior posted bond of $5,000.00 now applies to this Order for a Preliminary Injunction in satisfaction of the bond requirement for payment of damages to which Defendants may be entitled.

### C. Order of Service

IT IS FURTHER ORDERED that Plaintiffs shall serve by personal delivery or otherwise this Order on Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V&V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan Le.

**D. Expedited Discovery**

The Court affirms its June 28, 2016 Order entitling Plaintiffs to depose Defendants ABC Nail, Gel Nail, Val USA, VIP Nail, V & V Beauty, Xuan Thi Lam, Chau Thi Ngoc Le, Anh Q. Le, Iris Zhen, Cindy Trinh, Lindside Pham, Bryan Tran, Hai T. Nguyen, and Bao Toan in accordance with Federal Rules of Civil Procedure 26(d)(1) and 30. The Depositions shall occur at reasonable places and times (no weekends or holidays), and upon at least 72 hours' notice. Further, Plaintiffs are permitted to immediately serve ten (10) Requests for Production of Documents on these Defendants with a command verified responses and document production be produced and completed within five (5) days of service of the document requests.

**IT IS SO ORDERED**.

Dated: July18, 2016

*David O. Carter*

UNITED STATES DISTRICT COURT JUDGE