1  **POLSINELLI LLP**
   Todd M. Malynn (CA Bar No.181595)
2  Adam P. Daniels (CA Bar No. 296466)
   2049 Century Park East, Suite 2900
3  Los Angeles, CA 90067
   Telephone:  310.556.1801
4  Facsimile:  310.556.1802
   Email:      tmalynn@polsinelli.com
5              adaniels@polsinelli.com

6  Jose Mariano Castillo
   Jose M. Castillo Law Offices
7  800 W. 6th Street, Suite 900
   Los Angeles, CA  90017-2704
8  Telephone:  213.622.6555
   Facsimile:  213.622.5781
9  Email:      Castillo@castillolaw.com

10 *Attorneys for Plaintiffs*
   HAND & NAIL HARMONY, INC., and
11 NAIL ALLIANCE, LLC

12          **IN THE UNITED STATES DISTRICT COURT**

13        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15 HAND & NAIL HARMONY, INC., a          | Case No. SACV16-00969
   California corporation, NAIL          | DOC(JEMx)
16 ALLIANCE, LLC, a Delaware
   corporation,
17                                       | DATE:  August 22, 2016
                    Plaintiffs,          | TIME:   8:30 AM
18       v.                              | JUDGE: Hon. David O. Carter
                                         | CTRM:  9D
19 ABC NAIL AND SPA PRODUCTS, a
   California business; CHAU THI NGOC
20 LE, a California resident; GEL NAIL   | **PLAINTIFFS' OPPOSITION TO**
   SUPPLY, LLC, a California business;   | **DEFENDANT JC SUPPLY,**
21 ANH Q. LE (a.k.a. Mimi), a California | **LLC'S MOTION TO DISMISS**
   citizen; VAL USA MANUFACTURER,
22 INC. (d.b.a. Val Gel Polish
   Manufacturer), a California corporation;
23 IRIS ZHEN, a California resident; VIP
   NAIL PRODUCTS, INC., a California
24 corporation; CINDY TRINH, a
   California resident; LINDSIDE PHAM, a
25 California resident; V&V BEAUTY
   SUPPLIES, a California business;
26 XUAN THI LAM, a California citizen;
   KMB NAILS & BEAUTY PRODUCTS,
27 INC., a California corporation; CT
   TRADING, INC., a California
28 corporation; JACKIE BEAUTY
   SUPPLY, a California business; NAIL

53906879.1

1  MAXX PRODUCTS, INC., a California
   corporation; KASHI BEAUTY SUPPLY,
2  a California business; NAILS LOUNGE,
   LLC, a Nevada corporation; CALI
3  BEAUTY SUPPLY, INC. (d.b.a.,
   CALNAILSUPPLY.COM), a California
4  corporation; BRYAN TRAN, a
   California resident; TODAY NAILS
5  (a.k.a., Nails Today, LLC), a Nevada
   Business; HAI T. NGUYEN, a Nevada
6  resident; BAO TOAN LE (a.k.a, Toan), a
   Nevada resident; DL BEAUTY
7  SUPPLY, LLC (d.b.a., Hollywood
   Beauty Supply), a Nevada corporation;
8  DERICK Q. LUU (a.k.a., Tony), a
   Nevada resident; DIRECT BEAUTY
9  SUPPLY, LLC, a Nevada corporation;
   RYAN DO (a.k.a., Jimmy), a Nevada
10 resident; U.S. MAXIM NAIL SUPPLY
   CORPORATION, a Texas business; U.S.
11 MAXIM NAIL SUPPLY OUTLET,
   INC., a Virginia business; QUALITY
12 BEAUTY & NAILS SUPPLY, INC., a
   Missouri business; A&A NAIL
13 SUPPLY, INC., a Nebraska Business;
   DANNY TRAN, a Nebraska resident;
14 NAILMARK'S III, INC., a Florida
   corporation; MT BEAUTY SUPPLY, a
15 South Carolina business; JC SUPPLY,
   INC., a Georgia business; KHUONG
16 LIEN PHAN, a Georgia resident;
   ABUBACAR NESSER (a.k.a., Tony), a
17 Georgia resident; FLEX NAILS &
   BEAUTY SUPPLY (a.k.a., Nail &
18 Beauty Super Store), a Canadian
   business; and DOES 1 through 100,
19 inclusive,

20              Defendants.

21

22      Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC

23 (collectively, "Plaintiffs") respectfully submit the attached Memorandum of Points

24 and Authorities in Opposition to a Motion to Dismiss ("Motion") (Dkt. 75)

25 Plaintiffs' First Amended Complaint ("Complaint") filed by Defendant JC Supply,

26 Inc. (or JC Supply, LLC) ("JC Supply" or "JCS").

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................ 1

II. LEGAL STANDARD ..................................................................................... 3

    A. Meet and Confer Obligation Under Local Rule 7-3 ............................ 3

    B. Personal Jurisdiction Under Rule 12(b)(2) ......................................... 3

    C. Notice of a Claim Under Rule 12(b)(6) ............................................... 5

III. JC SUPPLY'S MOTION IS A NON-STARTER IN VIOLATION OF
LOCAL 7-3 ...................................................................................................... 6

IV. THE COURT HAS PERSONAL JURISDICTION OVER JC SUPPLY ...... 6

    A. Purposeful Availment .......................................................................... 6

        1. Intentional Act ........................................................................... 7

        2. Expressly Aimed at the Forum State ......................................... 8

        3. Harm Likely To Be Suffered In Forum State .......................... 10

    B. Cause of Action Arises Out of Forum-Related Activities ................. 11

    C. Reasonableness .................................................................................. 11

V. THE COMPLAINT ALLEGES FACTS THAT STATE A CAUSE OF
ACTION UNDER A COGNIZABLE LEGAL THEORY .......................... 12

    A. Trademark Infringement and Counterfeiting Under 15 U.S.C.
§§ 1114 and 1116(d) ......................................................................... 13

    B. False Designation of Origin Under 15 U.S.C. § 1125(a) .................. 15

    C. Federal Unfair Competition .............................................................. 16

    D. Unfair Competition under California Business and Professions
Code § 17200 .................................................................................... 16

VI. ALTERNATIVE LEGAL THEORIES AND REQUEST FOR
JURISDICTIONAL DISCOVERY ............................................................. 18

VII. CONCLUSION ............................................................................................. 20

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adv. Skin & Hair, Inc. v. Bancroft*,
   858 F.Supp.2d 1084 (C.D. Cal. 2012) ...........................................................3, 4, 10

*Amini Innovation Corp. v. JS Imports, Inc.*,
   497 F.Supp.2d 1093 (C.D. Cal. 2007) ....................................................................9

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ...................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................5

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) ..............................................................................5, 12

*Bancroft & Masters*,
   223 F.3d 1082 (9th Cir. 2000) .............................................................................8, 9

*Bauman v. DaimlerChrysler Corp.*,
   644 F.3d 909 (9th Cir.2011) .....................................................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................5

*Boschetto v. Hansing*,
   539 F.3d 1011 (2008)..............................................................................................17

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir.2010) .............................................................................3, 10

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)...................................5, 6, 11

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ......................................................................................5

*Calder v. Jones*,
   465 U.S. 783 (1984).......................................................................................... passim

*California Trust Co. v. Cohn*,
   214 C. 619 7 P.2d 297 (1932) .................................................................................12

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir.1988) .................................................................................13

*Chan v. Soc'y Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir.1994) ...................................................................................4

*Core-Vent Corp. v. Nobel Indus.* AB,
   11 F.3d 1482 (9th Cir.1993) .................................................................................11

*CYBERsitter, LLC v. People's Republic of China*,
   805 F.Supp.2d 958 (C.D. Cal. 2011) ...................................................................7

*Daimler AG v. Bauman,*
   134 S.Ct. 746 (2014) ............................................................................................4

*Doe v. Geller*,
   533 F.Supp.2d 996 (N.D. Cal. 2008) ...................................................................4

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir.2002) ...............................................................................7

*Freecycle Network, Inc. v. Oey*,
   505 F. 3d 898 (9th Cir. 2007) .............................................................................15

*GTE New Media Services Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (2000)...........................................................................................17

*Haisten v. Grass Valley Med. Reimbursement Fund*,
   784 F.2d 1392 (9th Cir.1986) ...............................................................................8

*Jones v. Iverson*,
   131 C. 101 P. 135 (1900)....................................................................................12

*Lake v. Lake*,
   817 F.2d 1416 (9th Cir.1987) ...............................................................................5

*Lord v. Garland*,
   27 C.2d 840, 168 P.2d 5 (1946) ..........................................................................12

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ..............................................................................11

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir.2007) ...............................................................................7

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ..........................................................................5, 12

*New West Corp. v. NYM Co. of California*,
   595 F.2d 1194 (9th Cir.1979) .............................................................................16

53906879.1

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir.1998) ...................................................................6, 9

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir.2006) ...................................................................3, 4

*Rio Props., Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007 (9th Cir.2002) .................................................................3, 11

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ................................................................ passim

*South Bay Chevrolet v. General Motors Acceptance Corp.,*
    72 Cal. App. 4th 861 (1999) ......................................................................16

*Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.,*
    No. 91-1562 SVW (SX), 1991 WL 280844, at *4 (C.D. Cal. July 29, 1991) .........................11

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ................................................9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) .............................................................. passim

**Statutes**

15 U.S.C. § 1114 .......................................................................13, 16

15 U.S.C. § 1114(1)(a) ......................................................................13

15 U.S.C. § 1116 .............................................................................16

15 U.S.C. §1116(d) ..........................................................................13

15 U.S.C. § 1125(a) .....................................................................14, 16

**Other Authorities**

Cal. Civ. Pro. Code § 410.10 ................................................................4

California Business and Professions Code § 17200 ...............................16

Lanham Act .....................................................................................16

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(2) .................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ............................................................................5, 12

Local Rule 7-3............................................................................................................1, 3, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Without meeting or conferring on the subject motion in violation of Local Rule 7-3, JC Supply moved "to dismiss the Complaint of Plaintiffs for lack of jurisdiction over Defendant JCS" or "to dismiss Plaintiffs' claims . . . in that they fail to state a claim upon which relief can be granted." Motion at 3. Although JC Supply is a supply store "located at 2071 E. Roxboro Rd. NE, Atlanta, GA 30324," and "knowingly purchased, promoted, distributed, advertised, sold and/or offered to sell counterfeit GELISH brand product that falsely indicates Harmony and California as the source and origin,"[1] JC Supply describes itself as "a *small salon*,"[2] denies any "action *within* the State of California that would authorize specific jurisdiction," and argues that the allegations in the Complaint are insufficient to state a claim against JC Supply. Motion at 5, 6 (emphasis added).

In addition to the Defendants violation of Local Rule 7-3, Plaintiffs' respectfully submit none of JC Supply's arguments have merit. As alleged in the Complaint, this Court has personal jurisdiction over JC Supply under *Calder v. Jones*, 465 U.S. 783 (1984), because JC Supply has "committed (a) intentional acts, (b) expressly aimed at the forum state, (c) causing harm that Defendants know is likely to be suffered in the forum state. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)." Complaint ¶ 49. Specifically, JC Supply "knew that the counterfeit product was

---

[1]   Complaint ¶ 42.

[2]   Plaintiffs' private investigation of JC Supply has revealed that (a) JC Supply has common ownership with a *separate company*, Nails Fantastic Limited Liability, which operates a nail salon in Gwinnett County, Georgia, and (b) JC Supply sold thousands of bottles of counterfeit GELISH foundation and top coat to multiple nail salons in Georgia, and after confronted by salons as a result of this lawsuit, repurchased and returned to its supplier over 4,000 unused bottles of counterfeit product—putting that product back into the stream of commerce rather than turning the product over to Plaintiffs or its private investigator. *See* Declaration of Jim Phan in Opposition to Motion to Dismiss ("Phan Decl.") ¶¶ 5-9.

counterfeit at the time it was purchased, sold or otherwise transferred by them and not produced to Plaintiffs or destroyed. Defendants knew of the counterfeit nature of the product because of whom they purchased the product from, because of discrepancies in the labeling of the counterfeit product, because of the price they paid for the counterfeit product, because of the complaints they received after selling one or more bottles of the counterfeit product, and/or because they had notice of this lawsuit and moved the product and/or destroyed evidence." *Id.* ¶ 50. JC Supply's "counterfeiting activity was directly aimed at causing harm to Harmony in California because [it] know[s] that genuine GELISH brand products are manufactured by Harmony in California, and because each bottle of the counterfeit product expressly mimics Harmony's labeling, which specifically states the product is manufactured by 'Hand & Nail Harmony' in 'Bea, CA.' Therefore, by participating in the counterfeit activity, it was more than foreseeable that the brunt or bulk of the harm would be suffered by Harmony in California." *Id.* ¶ 51. JC Supply has <u>not</u> denied these allegations or attempted to distinguish *Calder*, *Yahoo! Inc.* or *Schwarzenegger* from this case.[3]

On the merits, the Complaint sufficiently states facts upon which relief can be granted for JC Supply's counterfeiting activity under one or more legal theories, including trademark infringement, false designation of origin, and unfair competition under the Lanham Act and California law. That is enough to deny JC

---

[3] Instead, JC Supply denies, at least indirectly, Plaintiffs' alternative basis for jurisdiction—*i.e.,* JC Supply's involvement in a civil conspiracy or enterprise of racketeering activity that would justify attributing to JC Supply the conduct of other co-conspirators or persons in the subject enterprise that have minimum contacts to California, so as to further warrant one lawsuit over multi-state counterfeiting activity, not fifty lawsuits. *See* Complaint ¶¶ 52-57. In addition to having personal jurisdiction over JC Supply under *Calder*, the Court may permit jurisdictional discovery on Plaintiffs' alternative basis for jurisdiction. Among other things, Plaintiffs' private investigator has already discovered a direct working relationship between JC Supply and defendant Cali Beauty Supply, Inc., located at 9081 Bolsa Ave., Unit 101-102, Westminster, CA 92683. *See* Phan Decl. ¶ 8.

Supply's motion.[4]   For the foregoing reasons, Plaintiffs respectfully request that JC Supply's motion be denied.   Alternatively, Plaintiffs request jurisdictional discovery before JC Supply's motion is heard.

## II.   LEGAL STANDARD

### A.   Meet and Confer Obligation Under Local Rule 7-3

Under this Court's Local Rules, prior to filing motions, counsel is required to meet and confer with opposing counsel. L.R. 7-3.   In fact, the Local Rules specifically address motions to dismiss under Fed. R. Civ. Pro. 12(b) and require that "this conference shall take place at least five (5) days prior to the last day for filing the motion [...]". *Id.*

### B.   Personal Jurisdiction Under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002); *Adv. Skin & Hair, Inc. v. Bancroft*, 858 F.Supp.2d 1084, 1087 (C.D. Cal. 2012).   "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir.2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006)).

In determining whether sufficient jurisdictional facts exist, the "uncontroverted allegations in [the] complaint must be taken as true, and conflicts

---

[4]   JC Supply's motion does not individually challenge Plaintiffs' legal theories, but instead generally denies that Plaintiffs have stated *any* claim for relief against JC Supply for its alleged involvement in the counterfeiting activity.   *See* Motion at 6.   Having already established that the Complaint states a cause of action against JC Supply for the sale/transfer of counterfeit product, the Court is not required to go further and opine on Plaintiffs' alternative legal theories.   Moreover, even if the Court were to separately consider Plaintiffs' alternative legal theories, including Plaintiffs' civil conspiracy and RICO allegations, Plaintiffs have pled sufficient facts to provide adequate notice of each alternative theory.   Plaintiffs further submit that discovery, including jurisdictional discovery, would plainly confirm or deny JC Supply's involvement in the alleged civil conspiracy or enterprise of illegal, multi-state counterfeiting activity.   Plaintiffs have alleged, *inter alia*, that supply stores like JC Supply are knowing and necessary conduits.   Complaint ¶¶ 52, 134-156.

between the facts contained in the parties' affidavits must be resolved in [the plaintiff'] favor." *Rio Props*., 284 F.3d at 1019.  In other words, "for the purpose of this [*prima facie*] demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach*, 453 F.3d at 1154.

"In evaluating the appropriateness of personal jurisdiction over a nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comports with federal due process.'"  *Bauman v. DaimlerChrysler Corp*., 644 F.3d 909, 919 (9th Cir.2011) (*quoting Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1404-05 (9th Cir.1994)).  "Because California permits the exercise of personal jurisdiction to the full extent permitted by due process, [courts] need only determine whether jurisdiction over [a defendant] comports with due process." *Id*. (internal citation and quotation marks omitted); *see* Cal. Civ. Pro. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *see also Doe v. Geller*, 533 F.Supp.2d 996, 1005 (N.D. Cal. 2008).  "For due process to be satisfied, a defendant, if not present in the forum, must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Pebble Beach*, 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. Washington*,326 U.S. 310, 315, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction may be "specific" (*i.e.,* "case-specific") or "general" (*i.e.,* "all-purpose").  *Adv. Skin & Hair,* 858 F. Supp. 2d at 1087; *Daimler AG v. Bauman,* 134 S.Ct. 746, 757 (2014).   In this case, Plaintiffs assert specific jurisdiction over JC Supply—both directly through JC Supply's actions under *Calder v. Jones*, 465 U.S. 783 (1984) and indirectly through the attribution of the contacts of others to California.  *See* Complaint ¶¶ 42, 48-57.  Specific jurisdiction exists "if the defendant's 'contacts with the forum give rise to the cause of action before the court.'"  *Bauman*, 644 F.3d at 919 (quoting *Doe v. Unocal*, 248 F.3d

915, 923 (9th Cir.2001)).  The Ninth Circuit applies a three-part test:

> (1)    The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)    The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Id*.  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

## C.    Notice of a Claim Under Rule 12(b)(6)

Under the notice requirement of Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to provide notice and "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Notice of a factually plausible claim exists when the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  A plaintiff need <u>not</u> plead facts with specificity but must provide more than mere legal conclusions.  *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on whether sufficient notice of facts

supporting a cognizable legal theory has been provided, the court accepts factual allegations as true and construes them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Other than in connection with whether leave to amend should be granted for further allegations, the court should not consider facts outside the complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.   JC SUPPLY'S MOTION IS A NON-STARTER IN VIOLATION OF LOCAL 7-3

JC Supply's motion should first be denied because JC Supply failed to meet and confer as required by Local Rule 7-3. In fact, Plaintiffs only became aware of JC Supply's motion from the Court's automated electronic notification system. Consequently, there was no opportunity for counsel to reach a resolution in direct violation of Local Rule 7-3. Accordingly, Plaintiffs' respectfully submit JC Supply's Motion is a non-starter and should be denied.

## IV.   THE COURT HAS PERSONAL JURISDICTION OVER JC SUPPLY

As alleged in the Complaint, which allegations are not contested by JC Supply's motion, the Court has personal jurisdiction under *Calder* in accordance with the Ninth Circuit's three-part test enunciated in *Schwarzenegger*, over which Plaintiffs only bear the burden on the first two-prongs of the test.

### A.   Purposeful Availment

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998) (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174). The phrase "purposeful availment" includes both purposeful availment and purposeful direction, which are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. While a purposeful availment analysis is used in suits sounding in contract, a purposeful direction analysis is used in suits sounding in tort or similar misconduct. *Id.*

Where, as here, no conduct by the defendant "within" the forum state is at issue, the Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test, adopted from a Supreme Court decision *Calder*, 465 U.S. 783.  *See Schwarzenegger*, 374 F.3d at 803.  Under this test, "the defendant allegedly must have (i) committed an intentional act, (ii) expressly aimed at the forum state, (iii) causing harm that the defendant knows is likely to be suffered in the forum state."  *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks omitted).  Contrary to JC Supply's suggestion (Motion at 5), there is no requirement that the defendant have any physical contacts with the forum.  *See Schwarzenegger*, 374 F.3d at 802.

## 1.     Intentional Act

An intentional act for purposes of the *Calder*-effects test just requires the intent to perform an actual, physical act in the real world, regardless of any intent to accomplish a result or consequence of that act.  *CYBERsitter, LLC v. People's Republic of China,* 805 F.Supp.2d 958, 969 (C.D. Cal. 2011).  Here, the Complaint satisfies the intentional act requirement as to JC Supply.  It alleges, *inter alia,* that JC Supply (a) "knowingly purchased, promoted, distributed, advertised, sold and/or offered to sell counterfeit GELISH brand product that falsely indicates Harmony and California as the source and origin, and (b) "knowingly participated in the counterfeit activity described herein, which is directed at and injuring Harmony in California, and is responsible for the same."  Complaint ¶ 42.  Specifically, JC Supply "knew that the counterfeit product was counterfeit at the time it was purchased, sold or otherwise transferred by them and not produced to Plaintiffs or destroyed.  Defendants knew of the counterfeit nature of the product because of whom they purchased the product from, because of discrepancies in the labeling of the counterfeit product, because of the price they paid for the counterfeit product, because of the complaints they received after selling one or more bottles of the counterfeit product, and/or because they had notice of this lawsuit and moved the product and/or destroyed evidence."  Complaint ¶ 50.

## 2.   Expressly Aimed at the Forum State

The second prong of the *Calder*-effects test requires more than "'untargeted negligence' that merely happened to cause harm to [a plaintiff]." *Schwarzenegger*, 374 F.3d at 807 (quoting *Calder*, 465 U.S. at 789, 104 S.Ct. 1482). The requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir.2007) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002)); *see Bancroft & Masters*, 223 F.3d at 1087 (concluding that "'express aiming' encompasses wrongful conduct individually targeting a known forum resident").

As the Ninth Circuit has recognized, "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Dole Food Co.*, 303 F.3d at 1111 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.1986)); *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis."). While courts have "struggled somewhat with *Calder's* import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction," the Ninth Circuit has concluded that when "something more" occurs in the form of "express aiming at the forum state," personal jurisdiction is properly found. *Yahoo! Inc*, 379 F.3d at 1124 (quoting *Bancroft & Masters*, 223 F.3d at 1087).

The Ninth Circuit has consistently held that "the express aiming requirement of *Calder* [is] 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Id*. (quoting *Bancroft & Masters*, 223 F.3d at 1087). Indeed, the

Supreme Court in *Calder* held that defendants' actions were "expressly aimed at California" because defendants wrote and edited an article "that they knew would have a potentially devastating impact upon [plaintiff]" and "they knew the brunt of that injury would be felt by [plaintiff] in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Calder*, 465 U.S. at 789-90, 104 S.Ct. 1482. Under those circumstances, the Supreme Court held that defendants must "reasonably anticipate being haled into court there." *Id.* at 790, 104 S.Ct. 1482 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *see, e.g., Bancroft & Masters*, 223 F.3d at 1087 (concluding that defendant had expressly aimed at plaintiff in California by sending a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business).

The *Calder*-effect test is routinely applied in cases involving the infringement of intellectual property, particularly where, as here, the defendant does not deny knowledge that the plaintiff resides in California, where the brunt of the harm is felt. *See Panavision*, 141 F.3d at 1322 & n. 2 (affirming jurisdiction where defendants engaged in copyright infringement with knowledge of plaintiff's residency, where they "should reasonably anticipate being haled into court," holding that the "brunt of the harm" suffered by plaintiff from the intellectual property theft "was in the state where [plaintiff] maintained its principal place of business"); *accord Amini Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1105 (C.D. Cal. 2007) ("Following *Columbia Pictures* and *Panavision*, numerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum."); *Amini Innovation Corp. v. Cosmos Furniture, Ltd.*, No. CV 08-7855, 2009 WL 806603, at *3 (C.D. Cal. Mar. 16, 2009) (holding that, based on plaintiff's allegations of willful copyright and design patent infringement, defendant

satisfied the *Calder*-effects test because defendant "[did] not deny that it knew that [plaintiff] [was] located in and operates out of this judicial district" and "kn[ew] the brunt of the harm would be suffered in California").

Here, JC Supply does not deny any of the allegations substantiating that the counterfeiting activity of which it was involved was expressly aimed at Harmony in California. JC Supply's "counterfeiting activity was directly aimed at causing harm to Harmony in California because [it knew] that genuine GELISH brand products are manufactured by Harmony in California, and because each bottle of the counterfeit product expressly mimics Harmony's labeling, which indicates that the product is manufactured by 'Hand & Nail Harmony' in 'Brea, CA.' Therefore, by participating in the counterfeit activity [including putting counterfeit product into the stream of commerce], it was more than foreseeable that the brunt or bulk of the harm would be suffered by Harmony in California." Complaint ¶ 51. Accordingly, the second prong of the *Calder*-test is satisfied.

### 3.    Harm Likely To Be Suffered In Forum State

To satisfy the final prong of the *Calder*-test, Plaintiffs only have to alleged "a jurisdictionally sufficient amount of harm"; "the 'brunt' of the harm need not [in fact] be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1207. "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton*, 606 F.3d at 1131. This element is easily satisfied here because it was plainly foreseeable that JC Supply's counterfeiting activity would cause harm in California, where authentic product is manufactured and sold by Harmony. As noted above, Plaintiffs have alleged, and JC Supply does not deny, that it knew, when it purchased and/or returned counterfeit product and knowingly put counterfeit product into the stream of commerce, that authentic GELISH brand foundation and top coat are manufactured by Harmony in California. Accordingly, JC Supply's counterfeiting activity was not "'untargeted negligence' that merely happened to cause harm" to parties in California. *See Schwarzenegger*, 374 F.3d at

807 (quoting *Calder*, 465 U.S. at 789, 104 S.Ct. 1482).   Rather, Plaintiffs have satisfied each of the elements of the purposeful-direction, *Calder*-effects test, and JC Supply may be properly called to answer in a California court.

## B.   Cause of Action Arises Out of Forum-Related Activities

The second element of due process for purposes of specific jurisdiction also is satisfied.  "A lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum." *Adv. Skin & Hair*, 858 F. Supp. 2d at 1090.  The Ninth Circuit applies a "but for" test to this second prong. *See Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc*., No. 91-1562 SVW (SX), 1991 WL 280844, at *4 (C.D. Cal. July 29, 1991); *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 899 (9th Cir. 2002) (finding that the Ninth Circuit's "but for" test was satisfied in an action for trademark infringement and defamation because there would be no cause of action but for defendants' conduct purposefully directed toward California).

Here, there is a direct nexus between the purposeful direction of JC Supply's counterfeiting activity (*i.e.,* minimum contacts) and Plaintiffs' causes of action in the Complaint.  But for Harmony's highly popular GELISH brand products, which JC Supply knew were manufactured in Brea, California, and but for JC Supply's counterfeiting activity directed at injuring Harmony in California, there would be no cause of action in the Complaint against JC Supply.

## C.   Reasonableness

Because the first two elements for specific jurisdiction have been satisfied, JC Supply bore the burden in its motion to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).  "The exercise of jurisdiction is reasonable if it comports with traditional notions of fair play and substantial justice." *Rio Props*., 284 F.3d at 1021.  On a proper motion, the Court would consider seven factors in making this determination: (1) the extent of a

defendant's purposeful direction; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Id*. (citing *Core-Vent Corp. v. Nobel Indus.* AB, 11 F.3d 1482, 1487-88 (9th Cir.1993)).  "As no single factor is dispositive, a court must balance all seven [were a defendant to make a showing on them]."  *Id*.

Here, JC Supply's motion ignores its burden of proof and makes no showing that it would violate due process and be unreasonable for JC Supply to defend Plaintiffs' counterfeiting allegations in California, where authentic GELISH brand products are manufactured and sold by Harmony.  California has a substantial interest in protecting California manufacturers like Harmony from tortious activity in California and elsewhere.  It is far more efficient to have one lawsuit over the same set of counterfeiting activity than fifty lawsuits simply because the counterfeit product has been found in multiple states.  There is no alternative forum where all the participating counterfeiters can be sued.  And discovery will likely reveal that counterfeit product has been sold by defendants in California to JC Supply and other defendants in other states.  Regardless, not only do the relevant factors weigh in Plaintiffs' favor, but because JC Supply has made no argument let alone showing on any of the factors, its objection to jurisdiction should be overruled.

## V.     THE COMPLAINT ALLEGES FACTS THAT STATE A CAUSE OF ACTION UNDER A COGNIZABLE LEGAL THEORY

JC Supply filed a Rule 12(b)(6) motion that generally challenges a complaint that asserts multiple counts.  In *Navarro* and *Balistreri*, the Ninth Circuit articulated when dismissal of a complaint is proper under Rule 12(b)(6) consistent with the long-standing practice and distinguished between a motion, like JC Supply's motion, that challenges a complaint "as a whole" for failure to state a claim, and a

motion, unlike JC Supply's motion, that individually challenges legal theories asserted in a complaint.[5]   In the latter, courts customarily opine on each asserted legal theory challenged by the motion, whereas, in the former, and applicable here, courts may deny the motion if there are facts sufficient to "support a cognizable legal theory."   *Navarro*, 250, F.3d at 732; *Balistreri,* 901 F.2d at 699.   Here, Plaintiffs have alleged facts sufficient to support multiple counts against JC Supply for its involvement in the alleged counterfeiting of GELISH brand products.

## A.   **Trademark Infringement and Counterfeiting Under 15 U.S.C. §§ 1114 and 1116(d)**

To prevail on a claim of trademark infringement, the holder of a registered trademark must show that another person is using: (1) a reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods or services; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.   15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 (9th Cir.1988).   Plaintiff has pled these necessary facts within the Complaint against JC Supply.

Specifically, as to JC Supply, the Complaint plainly alleges that JC Supply "knowingly purchased, promoted, distributed, advertised, sold and/or offered to sell counterfeit GELISH brand product that falsely indicates Harmony and California as the source and origin."   Complaint ¶ 42.   Contrary to JC Supply's argument (*see* Motion at 6), there is no uncertainty in the pleading that JC Supply is among the Defendants being sued for counterfeit activity related to GELISH brand products.

Plaintiffs plead that "the infringing products sold by Defendants closely

---

[5]   If a complaint contains only one count, a motion to dismiss necessarily attacks that count.   But if the complaint contains multiple counts, the defendant should direct the motion to the particular counts it thinks are defective.   A motion that challenges a multi-count complaint as a whole will be sustained only when *all* counts are defective; if one count is good, the motion should be denied.   *See Jones v. Iverson,* 131 C. 101, 104, 63 P. 135 (1900) (articulating rule under California law); *California Trust Co. v. Cohn,* 214 C. 619, 628, 7 P.2d 297 (1932) (following rule); *Lord v. Garland,* 27 C.2d 840, 850, 168 P.2d 5 (1946) (same).

mimic the appearance of genuine GELISH brand goods. Defendants use the GELISH marks in the same stylized fashion, but for different quality goods, without Harmony's quality control and customer service, and with certain mistakes." Complaint ¶ 78.  The Complaint also exhibits the counterfeit products being sold by Defendants.  *See id.* ¶¶ 79, 80.  The products are sold without Plaintiffs' consent and in commerce.  *See id.*  Moreover, the counterfeit products are sold in connection with the sale, offering for sale, distribution or advertising of goods or services, where such use is likely to cause confusion, or to cause mistake or to deceive.  *Id.* ¶¶ 86, 91.  Among the allegations pertaining to JC Supply:

> Defendants, and each of them, knew that the counterfeit product was counterfeit at the time it was purchased, sold or otherwise transferred by Defendants and not produced to Plaintiffs or destroyed. Defendants knew of the counterfeit nature of the product because of whom they purchased the product from, because of discrepancies in the labeling of the counterfeit product, because of the price they paid for the counterfeit product, because of the complaints they received after selling one or more bottles of the counterfeit product, and/or because they had notice of this lawsuit and acted in their own pecuniary interest to move the product and/or to destroy evidence of the counterfeit product.

Complaint ¶ 86.

> Further,

> Defendants' actions result in confusion to consumers, including both end users and nail technicians, who believe, who will continue to believe, and who are intentionally led to believe, that there are receiving genuine GELISH brand product that originates from and is approved and supported by Harmony, when, in reality, Defendants know that inferior product, with unknown hazards to consumers, are being peddled and falsely promoted by nail technicians.

*Id.* ¶ 91.

The factual allegations against JC Supply could hardly provide more notice of Plaintiffs' claim for trademark infringement.   JC Supply knew that the counterfeit product was counterfeit at the time it was purchased.  JC Supply knew the product was counterfeit because of who they purchased it from, because of

discrepancies in labeling, and/or because of the low price they paid for the product. Further, its actions resulted in confusion to consumers, including both end users and nail technicians, who believed that they were receiving genuine GELISH brand products that were originated from and approved by Harmony.  In reality, the product was falsely promoted and sold as authentic product.

### B.    False Designation of Origin Under 15 U.S.C. § 1125(a)

To be liable under 15 U.S.C. § 1125(a) for false designation of origin, a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services.  15 U.S.C. § 1125(a); *Freecycle Network, Inc. v. Oey*, 505 F. 3d 898, 902 (9th Cir. 2007).  For the same reasons articulated above, Plaintiffs have pled these facts within their Complaint against JC Supply.   Among other things, the counterfeit GELISH brand products are sold in commerce.  *See* Complaint ¶¶ 79, 80.  And the counterfeit GELISH brand products are sold with a false designation of origin that is likely to cause confusion amongst purchasers of the counterfeit products.  For example:

> The infringing products sold by Defendants closely mimic the appearance of genuine GELISH brand goods.  Defendants use the GELISH marks in the same stylized fashion, but for different quality goods, without Harmony's quality control and customer service, and with certain mistakes.  Defendants use a closely identical trade dress on a counterfeit GELISH brand bottle, which includes the same or substantially similar artwork, bottle and bottle designs, fonts, names and script, as well as fraudulent item codes, item numbers, and UPC codes.

Complaint ¶ 78.  Further,

- Defendants are manufacturing, promoting, distributing and/or selling counterfeit product, containing wrong item codes and false designation of source and origin, which are designed to deceive and necessarily results in a likelihood of confusion among consumers.

- Defendants are using the GELISH marks and GELISH brand bottles with inferior quality goods to pass off as Plaintiffs' goods.  The health risks and safety of such misbranded products are unknown to Plaintiffs, and they may well present a danger to the health and safety of the

consuming public.  Indeed, countries such as Sweden have outright banned one or more cheap, low-quality products from China for such reasons.

- Packaging, including labeling, for the counterfeit products indicates the products are "Made in USA."

- Packaging, including labeling, for the counterfeit products indicates "Hand & Nail Harmony" and "Bea, CA" as a source and/or origin.

*Id.* ¶¶ 81-84.  Finally,

Defendants, and each of them, knew that the counterfeit product was counterfeit at the time it was purchased, sold or otherwise transferred by Defendants and not produced to Plaintiffs or destroyed. Defendants knew of the counterfeit nature of the product because of whom they purchased the product from, because of discrepancies in the labeling of the counterfeit product, because of the price they paid for the counterfeit product, because of the complaints they received after selling one or more bottles of the counterfeit product, and/or because they had notice of this lawsuit and acted in their own pecuniary interest to move the product and/or to destroy evidence of the counterfeit product.

*Id.* ¶ 86.  Again, JC Supply could hardly be given more notice of the counterfeiting allegations against it or this particular legal theory.

## C.  Federal Unfair Competition

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for anyone injured by unfair competition:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services ... any false description or representation, including words or other symbols tending falsely to describe or represent the same ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The "ultimate test" for unfair competition is exactly the same as for trademark infringement:  "whether the public is likely to be deceived or confused by the similarity of the marks."  *New West Corp. v. NYM Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979).  For the same reasons that Plaintiffs sufficiently pled its claims for trademark infringement under 15 U.S.C. §§ 1114 and 1116, Plaintiffs also sufficiently pled the claims for federal unfair competition.

## D.  Unfair Competition under California Business and Professions

**Code § 17200**

Under California law, unfair competition is broadly defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Each prong is a separate and distinct theory of liability; thus, the "unfair" practices prong offers an independent basis for relief. *South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 85 Cal. Rptr. 2d 301, 316 (1999).

JC Supply's involvement in a scheme, whether a civil conspiracy or illegal enterprise, to sell counterfeit GELISH brand products easily meets the requirements for unfair competition. For example, the unlawful, unfair, or fraudulent business act or practice was defined within the Complaint at paragraph 87:

> Defendants knew that by agreeing to promote, buy, sell, distribute or otherwise dispose of the counterfeit product, they were participating in a network of counterfeiting activity designed to import and sell cheap, low-quality product from China, which was being distributed and sold in the same or substantially similar bottles. In agreeing to buy and sell the counterfeit product, Defendants knew that they were not the only persons or entities involved in the network of counterfeiting activity, but rather were joining an unlawful enterprise to import and sell counterfeit product from China that was targeting Harmony in California its victim.

Further, the unlawful, unfair, and fraudulent scheme was described:

> Despite knowledge of the nature of their counterfeit products, knowledge that they are without authority to promulgate the same, and knowledge of their essential role in the counterfeiting activity, Defendants purchased, promoted, distributed, advertised, sold and/or offered to sell substantial quantities of counterfeit product with the knowledge that it will be mistaken for the genuine high quality genuine GELISH brand products offered for sale by Harmony.

Complaint ¶ 90. The unlawful, unfair, and fraudulent scheme resulted in harm:

> Defendants' actions result in confusion to consumers, including both end users and nail technicians, who believe, who will continue to believe, and who are intentionally led to believe, that there are receiving genuine GELISH brand product that originates from and is approved and supported by Harmony, when, in reality, Defendants know that inferior product, with unknown hazards to consumers, are being peddled and falsely promoted by nail technicians.

*Id.* ¶ 91. Again, there is no basis for JC Supply to argue, nor does JC Supply argue, that it does not have sufficient notice of Plaintiffs' unfair competition claim.

## VI.   ALTERNATIVE LEGAL THEORIES AND REQUEST FOR JURISDICTIONAL DISCOVERY

JC Supply generally denies, at least indirectly, Plaintiffs' civil conspiracy and RICO allegations and objects that they are not pled factually enough as to JC Supply (*see* Motion at 6), so as to support an independent basis for jurisdiction or, for that matter, cognizable theories of liability.

Plaintiffs respectfully submit the Complaint includes sufficient facts to support claims based on civil conspiracy and RICO against JC Supply. *See* Complaint ¶¶ 52, 134-156. Among the allegations pertaining to JC supply, Plaintiffs pled specific facts alleging a civil conspiracy between ABC Nail, A&A/Tran, JC Supply/Nesser, DL Beauty and the Maxim stores "to distribute counterfeit products in the United States." *Id*. ¶ 52. In addition, regarding RICO, Plaintiffs pled facts that support the claim, including conduct by Defendants, including JC Supply, of predicate acts of an enterprise through a pattern of racketeering activity resulting in injury to Plaintiffs' business or property. *Id.* ¶¶ 134-156; 18 U.S.C. §§ 1962(c), 1964(c).

Notwithstanding the foregoing, Plaintiffs request discovery to further substantiate these allegations. In the Ninth Circuit, "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Services Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351-52 (2000). This rule applies where, as here, jurisdictional allegations in the complaint are denied.  .

Here, JC Supply returned over 4,000 bottles of counterfeit GELISH brand products to someone after contacting defendant Cali-Beauty Supply, who is based out of California. *See* Phan Decl. ¶¶ 5-9. Especially because JC Supply's motion does not individually challenge any theory of liability, and because Plaintiffs have stated a claim upon which relief can be granted, Plaintiffs should be given the opportunity to take discovery, including jurisdictional discovery, on Plaintiffs' civil

conspiracy and RICO allegations, so as to identify, among other things, (a) the source and connections of the persons who supplied JC Supply thousands of bottles of counterfeit product, (b) why JC Supply returned to the counterfeit product to them rather than turn that product over to Plaintiffs, including whether JC Supply or the other parties sold any of the counterfeit product over the Internet, and (c) the connections of those parties to California, why they accepted the return of counterfeit product, and what they did with the returned product.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny JC Supply's motion to dismiss.   In the alternative, the Court should grant jurisdictional discovery.   At minimum, the Court should grant Plaintiffs' leave to amend.


Dated:  August 1, 2016                              Respectfully submitted,


                                                    **POLSINELLI LLP**


                                                    /s/Todd M. Malynn
                                        By:   Todd M. Malynn, Esq.
                                              Adam P. Daniels, Esq.
                                              *Attorneys for Plaintiffs*
                                              HAND & NAIL HARMONY, INC.,
                                              NAIL ALLIANCE, LLC

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on August 1, 2016, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.   The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice of this document by electronic means.


Dated:  August 1, 2016                              POLSINELLI, LLP


                                                    By:  /s/AJ Cruickshank
                                                         AJ Cruickshank