**POLSINELLI LLP**
Todd M. Malynn (CA Bar No.181595)
Adam P. Daniels (CA Bar No. 296466)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   310.556.1801
Facsimile:   310.556.1802
Email:          tmalynn@polsinelli.com
                    adaniels@polsinelli.com

Jose Mariano Castillo
Jose M. Castillo Law Offices
800 W. 6th Street, Suite 900
Los Angeles, CA  90017-2704
Telephone:   213.622.6555
Facsimile:   213.622.5781
Email:          Castillo@castillolaw.com

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC., and
NAIL ALLIANCE, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, NAIL ALLIANCE, LLC, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ABC NAIL AND SPA PRODUCTS, a California business; CHAU THI NGOC LE, a California resident; GEL NAIL SUPPLY, LLC, a California business; ANH Q. LE (a.k.a. Mimi), a California citizen; VAL USA MANUFACTURER, INC. (d.b.a. Val Gel Polish Manufacturer), a California corporation; IRIS ZHEN, a California resident; VIP NAIL PRODUCTS, INC., a California corporation; CINDY TRINH, a California resident; LINDSIDE PHAM, a California resident; V&V BEAUTY SUPPLIES, a California business; XUAN THI LAM, a California citizen; KMB NAILS & BEAUTY PRODUCTS, INC., a California corporation; CT TRADING, INC., a California corporation; JACKIE BEAUTY SUPPLY, a California | Case No. SACV16-00969 DOC(JEMx) <br><br> The Honorable David O. Carter <br><br> **PLAINTIFFS/COUNTER-DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE (C.C.P. § 425.15 ANTI-SLAPP MOTION) AND RULE 12(B)(6) MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF STEVEN R. MALYNN; [PROPOSED] ORDER** <br><br> Date:       December 12, 2016 <br> Time:       8:30 a.m. <br> Place:      Courtroom 9D <br>               411 W. Fourth Street <br>               Santa Ana, CA  92701 <br><br> Complaint Filed:   May 26, 2016 <br> Trial:                November 28, 2017 |

business; NAIL MAXX PRODUCTS, INC., a California corporation; KASHI BEAUTY SUPPLY, a California business; NAILS LOUNGE, LLC, a Nevada corporation; CALI BEAUTY SUPPLY, INC. (d.b.a., CALNAILSUPPLY.COM), a California corporation; BRYAN TRAN, a California resident; TODAY NAILS (a.k.a., Nails Today, LLC), a Nevada Business; HAI T. NGUYEN, a Nevada resident; BAO TOAN LE (a.k.a, Toan), a Nevada resident; DL BEAUTY SUPPLY, LLC (d.b.a., Hollywood Beauty Supply), a Nevada corporation; DERICK Q. LUU (a.k.a., Tony), a Nevada resident; DIRECT BEAUTY SUPPLY, LLC, a Nevada corporation; RYAN DO (a.k.a., Jimmy), a Nevada resident; U.S. MAXIM NAIL SUPPLY CORPORATION, a Texas business; U.S. MAXIM NAIL SUPPLY OUTLET, INC., a Virginia business; QUALITY BEAUTY & NAILS SUPPLY, INC., a Missouri business; A&A NAIL SUPPLY, INC., a Nebraska Business; DANNY TRAN, a Nebraska resident; NAILMARK'S III, INC., a Florida corporation; MT BEAUTY SUPPLY, a South Carolina business; JC SUPPLY, INC., a Georgia business; KHUONG LIEN PHAN, a Georgia resident; ABUBACAR NESSER (a.k.a., Tony), a Georgia resident; FLEX NAILS & BEAUTY SUPPLY (a.k.a., Nail & Beauty Super Store), a Canadian business; and DOES 1 through 100, inclusive,

Defendants.

55223769.1

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on December 12, 2016, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9D of the above-captioned Court, located at 411 West Fourth Street, Santa Ana, California, 92701, Plaintiffs/Counter-Defendants Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, the "Harmony Parties") will and hereby do move this Court under California Code of Civil Procedure section 425.16 and Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure for an order (1) striking or dismissing the First Amended Counterclaim ("Counterclaim") filed by Defendant/Counter-Claimant Val USA Manufacturer, Inc. ("Val USA"), including Count I for Tortious Interference with Business Relations and Count II for State Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*), (2) staying discovery on the Counterclaim, and (3) awarding the Harmony Parties their attorneys' fees in connection with this matter (the "Motion").

The Motion is made and based on the following grounds:

1.       Val USA's Counterclaim seeks to hold the Harmony Parties liable based on the exercise of their "constitutional rights of freedom of speech and petition for redress of grievances" (Cal. Civ. Proc. Code § 425.16(a));

2.       Val USA's Counterclaim, and each cause of action asserted therein, is subject to a special motion to strike because it arises from acts of the Harmony Parties "in furtherance of [their] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" (*id.* § 425.16(b)(1)) within the meaning of Code of Civil Procedure section 425.16 (e), subdivisions (1) to (4);

3.       Val USA's Counterclaim should be stricken or dismissed because:

a.       It fails to state a claim for relief under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure;

b.   Val USA cannot establish with admissible evidence that "there is a probability that [Val USA] will prevail on [each] claim" (Cal. Civ. Proc. Code § 425.16(b)(1)); and

c.   The asserted wrongful conduct, even if otherwise properly alleged and supported, is privileged and cannot form the basis of liability pursuant to California Civil Code section 47, subsections (b) to (d);

4.   Anti-SLAPP motions in federal court directed to state-law counterclaims are proper. *See United States v. Lockheed Missiles & Space Co., Inc.,* 190 F.2d 963, 970-71 (9th Cir. 1999); *Nathan v. Boeing Co.,* 116 F.3d 422, 423 (9th Cir. 1997);

5.   Attorneys' fees to a prevailing counter-defendant are directed by statute (Civ. Proc. Code § 425.16(c)(1)); and

6.   A discovery stay on the challenged pleading is directed by statute (Civ. Proc. Code § 425.16(g)).

NOTICE IS FURTHER GIVEN THAT this Motion is made following a series of conferences of counsel pursuant to L.R. 7-3, beginning on October 17, 2016.

This Motion is made and based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Steven R. Malynn, the orders, records and files in this action, and such other matter, evidence and argument as may be presented at or prior to the hearing on the motion.

Dated: November 8, 2016                    Respectfully submitted,

**POLSINELLI LLP**

/s/Todd M. Malynn
By: Todd M. Malynn, Esq.
Adam P. Daniels, Esq.
*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC.,
NAIL ALLIANCE, LLC

Special Motion to Strike and Motion to Dismiss

# TABLE OF CONTENTS

**Page**

**MEMORANDUM OF POINTS AND AUTHORITIES** .......................... 1

I. INTRODUCTION ....................................................................................... 1

II. STATEMENT OF FACTS ........................................................................ 1

    A. The Harmony Parties' Free Speech And Petitioning Activity ............ 1

    B. Val USA's SLAPP Suit/Amended Counterclaim .................................. 3

    C. Val USA's Conclusory Pleading ........................................................... 5

III. THE HARMONY PARTIES ARE ENTITLED TO ANTI-SLAPP REMEDIES, INCLUDING AN ORDER STRIKING VAL USA'S COUNTERCLAIM AND EACH COUNT THEREIN .................................. 6

    A. Legal Standard for Special Motions to Strike ...................................... 7

    B. Val USA's Counterclaim Arises From Protected Activity .................. 8

    C. Val USA Cannot Establish the Merits of its Counterclaim ............... 12

        1. The Counterclaim Fails to State a Claim ................................. 12

        2. Val USA Cannot Establish a *Prima Facie* Case ..................... 14

        3. The Alleged Wrongful Conduct Is Privileged ........................ 14

    D. A Discovery Stay on the Counterclaim Is Appropriate ..................... 16

    E. An Award of Attorneys' Fees is Appropriate ..................................... 17

IV. CONCLUSION ......................................................................................... 17

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

1

# TABLE OF AUTHORITIES

2

## Cases

3

4

**Page**

5

*Animial Legal Defense Fund v. Mendes,*
    160 Cal. App. 4th 136 (2008) ................................................................ 14

6

7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 12

8

9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................................... 12, 14

10

11

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988) .............................................................. 11

12

13

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (2002) ............................................................................. 8

14

15

*Cross v. Cooper,*
    197 Cal. App. 4th 357 (2011) ............................................................... 10

16

17

*Eclectic Properties East, LLC v. Marcus & Millichap Co.,*
    751 F.3d 990 (2014) ............................................................................. 13

18

19

*Equilon Enterprises v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002) ....................................................................... 6, 7, 8

20

21

*Fox Searchlight Pictures, Inc. v. Paladino,*
    89 Cal. App. 4th 294 (2001) ................................................................... 9

22

23

*GetFugu, Inc. v. Patton Boggs LLP,*
    220 Cal. App. 4th 141 (2013) ............................................................... 10

24

25

*Hecimovich v. Encinal School Parent Teacher Org.,*
    203 Cal. App. 4th 450 (2012) ............................................................... 10

26

27

*Jacob B. v. County of Shasta,*
    40 Cal. 4th 948 (2007) ......................................................................... 15

28

*Jarrow Formulas, Inc. v. Lamarche,*
    31 Cal. 4th 728 (2003) ................................................................................... 9

*Kashian v. Harriman,*
    98 Cal. App. 4th 892 (2002) ......................................................................... 16

*Mattel Inc. v. Walking Mountain Productions,*
    353 F.3d 807 (9th Cir. 2003) ........................................................................ 11

*New.Net, Inc. v. Lavasof,*
    356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................... 7, 16

*Nygard, Inc., v. Uusi-Kerttula,*
    154 Cal. App. 4th 1027 (2008) ..................................................................... 10

*Old Republic Const. Program Group v. Boccardo Law Firm, Inc.,*
    230 Cal. App. 4th 859 (2014) ......................................................................... 8

*Paradise Hills Associates v. Procel,*
    235 Cal. App. 3d 1528 (1991) ...................................................................... 10

*Pfeiffer Venice Properties v. Bernard,*
    101 Cal. App. 4th 211 (2002) ....................................................................... 17

*Rivero v. American Federation of State, County & Mun. Employees,*
    *AFL-CIO,* 105 Cal. App. 4th 913 (2003) ...................................................... 10

*Rodgers v. Grimaldi,*
    875 F.2d 994 (2d Cir.1989) .......................................................................... 11

*Rusheen v. Cohen,*
    37 Cal. 4th 1048 (2006) ............................................................................ 8, 14

*Silberg v. Anderson,*
    50 Cal. 3d 205 (1990) ................................................................................... 15

*Taus v. Loftus,*
    40 Cal. 4th 683 (2007) .................................................................................. 15

*Thomas v. Fry's Elecs., Inc.*
    400 F.3d 1206 (9th Cir. 2005) ........................................................................ 6

*United States v. Lockheed Missiles & Space Co., Inc.,*
    190 F.3d 963 (9th Cir. 1999) ..................................................................6

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...............................................................6

*Williams v. Taylor,*
    129 Cal. App. 3d 745 (1982) ................................................................15

**Federal Statutes**

15 U.S.C. § 1...........................................................................................4

15 U.S.C. § 2...........................................................................................4

15 U.S.C. § 45.........................................................................................4

**Other Authorities**

1 McCarthy on Trademarks & Unfair Competition § 2:1 (4th ed. 2013) ...............11

California Business and Professions Code § 17200 ...........................................4, 14

California Business and Professions Code § 17204 ................................................14

Civ. P. Code § 425.16..................................................................4, 6, 9, 10

Civ. Proc. Code § 425.16(a) ..............................................................................7

Civ. Proc. Code § 425.16(b)(1) ...................................................................6, 7, 8

Civ. Proc. Code § 425.16(b)(2) ...........................................................................8

Civ. Proc. Code § 425.16(c) .............................................................................17

Civ. Proc. Code § 425.16(e) ...........................................................................7, 9

Civ. Proc. Code § 425.16(e)(4).........................................................................10

Civ. Proc. Code § 425.16(g) .............................................................................16

Civil Code § 47(b) ...........................................................................................16

Civil Code § 47(c) ...........................................................................5, 15, 16

**Rules**

Federal Rules of Civil Procedure 8.................................................................7, 12

Federal Rules of Civil Procedure Rule 8(a)(2).....................................................12

Federal Rules of Civil Procedure Rule 12 .............................................................7

Federal Rules of Civil Procedure Rule 12(b)(6)........................................................12

Federal Rules of Civil Procedure Rule 56.................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs/Counter-Defendants Hand & Nail Harmony, Inc. and Nail Alliance, LLC (collectively, the "Harmony Parties") respectfully submit this memorandum in support of their special motion to strike or dismiss the amended counterclaim of defendant/counter-claimant Val USA Manufacturing, Inc. ("Val USA").

## I.    INTRODUCTION

Val USA has counter-sued the Harmony Parties for allegedly filing a "sham" complaint and reporting to its sales representatives the results of the preliminary injunction hearing.  Val USA's effort to create litigation out of litigation and chill the Harmony Parties' free speech and right of petition should be stricken.

## II.    STATEMENT OF FACTS

### A.    The Harmony Parties' Free Speech And Petitioning Activity

After receiving multiple reports from independent sales representatives that counterfeit GELISH® brand foundation and top coat had flooded the market, not only in the United States but also in Canada and other countries, which reports included customer complaints about the inferior quality of the counterfeit product being attributed to the GELISH brand, the Harmony Parties immediately began to investigate the reports, so as to (a) shut down the outlets and sources of counterfeit products, and (b) stabilize the market for authentic GELISH® brand products by quickly reporting to their sales representatives summaries of their enforcement efforts.[1]  *See* Declaration of Steven R. Malynn ("Malynn Decl.") ¶¶ 5-18.

Counterfeit nail products can be extremely harmful to consumer confidence in a brand.  Consumer complaints range from disappointment in the product's performance in ruining a customer's nails,[2] such as complaints that a product is

---

[1]   The Harmony Parties do not have an internal sales force.  Rather, they contract with and rely upon independent sales reps to carry and promote GELISH brand products. *See* Malynn Decl. ¶ 4.

[2]   For example, the Harmony Parties received a complaint from a nail technician who purchased 10 bottles of counterfeit GELISH product.  The nail technician wrote:  "Hi we bought 10 bottles of Gelish base and top coat at MT Beauty Supply in Taylor, SC, work on customer they came back said all fall off so we test the base

Special Motion to Strike and Motion to Dismiss
1

"brittle" and cracked or "burned" a customer's skin,[3] to complaints about how a customer received bacterial or staph infections, or the occurrence of other safety hazards in connection with the use of an inferior product.[4]   Competitors take advantage of low consumer confidence to sell against a brand.  *Id.* ¶ 13.

The Harmony Parties brought this action and moved for a temporary restraining order and a preliminary injunction to protect consumer confidence in its leading brand of nail products.  *See id.* ¶¶ 5-12.  While the Harmony Parties believe the counterfeit products were emanating from China, they appeared to have more than one source, as the counterfeit products varied in quality based on consumer reports, and included differences in the fake bottling and labeling, which mimicked the look of authentic GELISH brand products.  *Id.* ¶ 8.

At the preliminary injunction hearing, the Harmony Parties proved through (i) investigation reports, (ii) declarations and (iii) live witness testimony from Jim Phan, a former police officer and certified private investigator, that each of the California defendants were involved in counterfeiting activity; and the Court found sufficient evidence to enjoin the same.  *See* Order Granting Plaintiff's Motion for Preliminary Injunction ("Order") [Dkt. 78] at 2.  As to Val USA, a suspected source of counterfeit product, the Harmony Parties proved that it had the facility, bottles, manufacturing/labeling capability, and expertise to engage in the counterfeiting activity, was likely a source of counterfeit product and, at minimum, eagerly

---

coat it was so thin running try on one finger and clean with alcohol it came off it not cure so we take it back to the store demand an exchange but he wont take it back he sale 10 bottles with the wholesale price which is $10.  Below is our receipt and pictures we compare the one we bought at LA Nail Supply in Atlanta and we notice that the barcode ink look lighter than before."  Declaration of GariDawn Tingler in Support of Temporary Restraining Order and Seizure Order and Order to Show Cause re:  Preliminary Injunction [Dkt. 8] ¶¶ 25-27, Exhibit ("Ex.") 4.

[3]   *See* Supplemental Declaration of GariDawn Tingler in Support of Temporary Restraining Order, Order to Show Cause re:  Preliminary Injunction and Expedited Discovery [Dkt. 17] ¶ 15.

[4]   See Declaration of Sunil Sirdesai in Support of Temporary Restraining Order, Order to Show Cause re:  Preliminary Injunction and Expedited Discovery [Dkt. 18] ¶¶ 5-8 & Ex. 2.

offered to engage in and profit from the counterfeiting activity, which the Harmony Parties discovered had been going on undetected for a sometime. *See* Malynn Decl. ¶ 9. Specifically, the Court found:

> The Court finds Phan's testimony credible, including his testimony concerning Zhen's authority at Val USA, and that Zhen confirmed for Phan he had come to the right place to obtain identical-looking GELISH brand products. Among other things, Phan testified Zhen authorized Tseng to show Phan samples of authentic GELISH brand foundation and top coat bottles, and led Phan on a tour of Val USA's facility to confirm for Phan that Val USA had the ability to duplicate those products. Val USA had identically shaped bottles in stock. And Zhen showed Phan Val USA had the machines, equipment and expertise necessary to pow[d]er coat, label and fill those bottles to look like authentic GELISH brand products. The Court also finds credible Phan's testimony that Zhen and Tseng were eager to consummate a large transaction, which apparently would have counterfeit Gelish® brand products, which apparently would have included 170,000 bottles, including offering to provide Phan samples of the product the next day at Phan's office, at which time Phan's client would wire transfer 35% of the cost of the project to Val USA.

Order [Dkt. 78] at 8-9.

After the preliminary injunction hearing, the Harmony Parties reported the result to their sales representatives, who were waiting for news to counteract the widespread negative impact the counterfeiting activity had and was having on consumer confidence in GELISH brand foundation and top coat products. *See* Malynn Decl. ¶¶ 14-15. Attached as Exhibit B to Val USA's First Amended Counterclaim [Dkt. 109] is a copy of the letter the Harmony Parties sent to their sales reps in July 2016. *Id.* It was important to report progress in the Harmony Parties' enforcement efforts to turn the tide of negative publicity. *Id.* ¶ 13.

The Harmony Parties' enforcement efforts have been successful. They have stemmed the tide of consumer complaints flowing from counterfeit products, in the United States and other countries, and the Harmony Parties have settled with multiple defendants—from Edmonton, Canada to Orlando, Florida. *Id.* ¶ 18.

## B.   Val USA's SLAPP Suit/Amended Counterclaim

To chill the Harmony Parties' petitioning activity and free speech on a matter of public interest (widespread counterfeiting activity extending into and affecting

consumers in multiple countries), Val USA filed a Counterclaim accusing the Harmony Parties of filing a "sham" lawsuit. *See* Counterclaim [Dkt. 100] ¶ 1 ("Counter-Defendants . . . are engaged in antitrust and competitive activities by filing 'sham' law suit against numerous resellers of nail care products and Counterclaimant . . . , thereby, tarnishing Counterclaimant's reputation in the trade; tortuously interfering with its business relations; and causing damages"). An essential allegation incorporated into the Counterclaim's three counts was a direct challenge to the Harmony Parties' right of petition—that "Counter-Defendants [allegedly] knew that their allegations of infringement against VAL and Zhen were baseless at the time of the filing of their complaint, but proceeded with filing their complaint against Counterclaimant despite this knowledge that their allegations were baseless." *Id.* ¶ 14 (emphasis added). Because petitioning a court for the redress of grievances is protected by the First Amendment and California's Anti-SLAPP Statute (Civ. Proc. Code § 425.16), the Harmony Parties conferred with Val USA's counsel in an attempt to avoid claims arising out of litigation and to dismiss the Counterclaim.

Rather than dismiss the Counterclaim, Val USA adjusted its legal theory to highlight the Harmony Parties' letter in July 2016 to its sales representatives,[5] and doubled down on its "sham" filing allegation,[6] which remains the primary cause of Val USA's alleged harm. *See* First Amended Counterclaim ¶ 23 ("Counterclaimant has been damaged as a direct and proximate result of Counter-Defendants [sic] actions because Counterclaimant has been falsely and maliciously accused of infringing Counter-Defendants' purported trademarks and trade dress, despite Counter-Defendants' prior knowledge that the facts and prevailing evidence otherwise."). Val

---

[5]  The Counterclaim [Dkt. 100] asserted counts for (1) violation of the Federal Trade Commission Act ("FTCA") (15 U.S.C. § 45), (2) violation of the Sherman Act (15 U.S.C. §§ 1-2), and (3) violation of California's Unfair Competition Law (California Bus. & Prof. Code § 17200), incorporating these two prior counts. The First Amended Counterclaim [Dkt. 109] dropped the counts under the FTCA and Sherman Act, and added a common law count for tortious interference with business relations, which is now the basis of the unfair competition claim.

[6]  *See* First Amended Counterclaim [Dkt. 109] ¶ 14 & fn. 1.

USA continues to allege that the Harmony Parties "knew that their allegations of infringement against VAL and Zhen were baseless at the time of the filing of their complaint, but proceeded with filing their complaint against Counterclaimant despite their knowledge that their allegations were baseless." *Id.* ¶ 13.

Val USA's "sham" filing allegations not only are incorporated into Val USA's two counts and are a primary cause of its alleged harm,[7] but also form the basis of Val USA's theory of liability tied to the July 20 letter—that the letter was sent with malice, and therefore it allegedly is not protected speech,[8] but constitutes tortious interference with business relations.  Val USA's sham filing allegations are the centerpiece of Val USA's contention that the "July Correspondence is an [sic] willful, malicious, intentional attempts [sic] by Counter-Defendants to interfere directly with the business relationships of Counterclaimant and to harm Counterclaimant's reputation, business and goodwill."  First Amended Counterclaim ¶ 20.

## C.    Val USA's Conclusory Pleading

Val USA's First Amended Counterclaim alleges no facts that, if accepted as true, would state a claim for tortious interference, but rather merely parrots the elements of such a claim in conclusory fashion.  For example, Val USA alleges that the Harmony Parties "contacted Counterclaimant's distributors, vendors, and/or other business associates, alleging that Counterclaimant VAL was involved in counterfeiting activity."  First Amended Counterclaim ¶ 15.  Val USA does not factually identify any distributor, vendor or "other business associate," let alone any facts identifying who contacted any such person or the circumstances of such contact.  It simply concludes that such contact was made on or about July 20 and references Exhibit B.  *Id.* ¶ 17.

Moreover, Val USA alleges no facts that would support a conclusion that Val USA had an "economic relationship" with the unspecified person(s) allegedly contacted on or about July 20, let alone any facts that the relationship "probably would

---

[7]   *See id.* ¶¶ 25, 34.

[8]   *See* Civil Code § 47(c) (codifying interested party privilege that protects "a communication, without malice, to a person interested therein . . . .").

have resulted in an economic benefit to Counterclaimant" but for the alleged interference.  First Amended Counterclaim ¶ 26.  Nor does Val USA allege any facts that the Harmony Parties had any knowledge "of the relationship when they sent the July Correspondence" and "intended to disrupt the relationship for their own benefit." *Id.* ¶¶ 27-28.  Finally, Val USA alleges no facts that any relationship was in fact disrupted; it simply concludes that "the relationship was disrupted." *Id.* ¶ 29.

In reality, July 20 is when the Harmony Parties circulated Exhibit B to their own independent sales representatives—all of whom have contracted to promote and sell GELISH brand products, and were deeply concerned about the counterfeiting activity, the negative publicity surrounding the same, and the Harmony Parties' enforcement efforts to support the brand.  *See* Malynn Decl. ¶¶ 4-15.  The Harmony Parties deny contacting anyone associated of Val USA.  *Id.* ¶ 16.  They deny even having any knowledge of Val USA's alleged "business associates." *Id.* ¶ 17.

## III.   THE HARMONY PARTIES ARE ENTITLED TO ANTI-SLAPP REMEDIES, INCLUDING AN ORDER STRIKING VAL USA'S COUNTERCLAIM AND EACH COUNT THEREIN

In 1992, the California legislature enacted Code of Civil Procedure section 425.16 (the "anti-SLAPP statute") in order to "encourage continued participation in matters of public significance." *Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal. 4th 53, 59-60 (2002).  It authorizes a "special motion to strike" a cause of action against a person arising from "any act in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue."  Civ. Proc. Code § 425.16(b)(1).

A motion to strike a state law claim under California's anti-SLAPP statute (Civ. Proc. Code § 425.16 *et seq.*) may be brought in federal court.  *See Thomas v. Fry's Elecs., Inc.* 400 F.3d 1206, 1206 (9th Cir. 2005); *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1109 (9th Cir. 2003); *United States v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 970-73 (9th Cir. 1999) ("*Lockheed*") (holding no

direct conflict between Federal Rules of Civil Procedure and California's anti-SLAPP statute); *see also New.Net, Inc. v. Lavasof,* 356 F. Supp. 2d 1090, 1100 (C.D. Cal. 2004).  In *Lockheed*, the Ninth Circuit concluded that "subsections (b) and (c) of the anti-SLAPP statue may be applied to pendant state law claims without running afoul of Federal Rules of Civil Procedure Rules 8, 12 and 56."  190 F.3d at 970-73.

The purpose of California's anti-SLAPP statute was to mitigate the chilling effect of lawsuits on free speech and petitioning activities.  It protects First Amendment rights through the early review and disposal of state law claims based on "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  Civ. Proc. Code § 425.16(a).

## A.   Legal Standard for Special Motions to Strike

California's anti-SLAPP statute employs a two-part test to identify and dispose of SLAPPs.  First, the moving party must make a "*prima facie* showing" that a cause of action in the subject pleading arises from any one of the statutorily defined acts "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ."  Civ. Proc. Code § 425.16(b)(1); *Equilon Enterprises,* 29 Cal. 4th at 67.  Four types of First Amendment activity is protected by the anti-SLAPP statute, which the statute sets forth in pertinent part as follows:

> As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:  (1) any written or oral statement or writing made before a . . . judicial proceeding . . . , (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . , (3) any written or oral statement or writing made in . . . a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Civ. Proc. Code § 426.16(e).

Second, once the moving party establishes that a claim arises from one of

these types of protected activities, the burden shifts and the non-moving party must establish "that there is a probability that [it] will prevail on the claim." Civ. Proc. Code § 425.16(b)(1); *Equilon Enterprises,* 29 Cal. 4th at 58. The moving party is under no obligation to show that it was the non-moving party's intent to chill such free speech or petitioning activity. *Equilon Enterprises,* 29 Cal. 4th at 67 (affirming dismissal of complaint although plaintiff "may well" have "had pure intentions" when it filed suit; however, its intentions were "ultimately beside the point."). Rather, the non-moving party bears the burden of establishing the merits of its claim. Specifically, the non-moving party "must demonstrate that the [challenged pleading] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [it] is credited." *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1056 (2006). If the non-moving party cannot establish the legal sufficiency of and a *prima facie* basis for a claim, then the claim must be stricken. Civ. Proc. Code § 425.16(b)(1). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Civ. Proc. Code § 425.16(b)(2); *Equilon Enterprises,* 29 Cal. 4th at 67.

## B. Val USA's Counterclaim Arises From Protected Activity

California law is clear that a claim arises out of protected activity if at least one of the predicate wrongful acts alleged in the complaint constitute protected conduct. *Old Republic Const. Program Group v. Boccardo Law Firm, Inc.,* 230 Cal. App. 4th 859, 862 (2014). "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman,* 29 Cal. 4th 69, 78 (2002). If multiple wrongful act forms the basis of a claim, it is enough that one of them constitutes protected activity. Plaintiffs "cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity

under the label of one cause of action." *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal. App. 4th 294, 308 (2001).  A defendant meets its burden by showing that one act underlying the cause of action fits one of the categories enumerated in Code of Civil Procedure section 425.16(e).  *City of Cotati,* 29 Cal. 4th at 78.

Here, the alleged wrongful acts alleged by Val USA are the "sham" filing of a lawsuit and the July 20 correspondence that allegedly was sent with malice— where the alleged malice is predicated on the alleged "sham" filing of a lawsuit. *See* First Amended Complaint ¶¶ 13, 18, 20, 23.  These alleged wrongful acts plainly implicate subsections (1), (2) and (4) of Section 425.16(e).

Section (1) is directly implicated by Val USA's "sham" filing allegation, which remains one of the alleged wrongful acts that caused Val USA harm.  *See* First Amended Complaint ¶¶ 11-13, 23.  Val USA makes this clear in Paragraph 23, which broadly describes the basis of Val USA's injury as being "falsely and maliciously" accused of trademark infringement. *Id.* ¶ 23.

Subsection (2) of Section 425.16(e) is implicated because Val USA's claim of malice is predicated on the claim of malicious prosecution.  Val USA alleges that the Harmony Parties "knew that their allegations of infringement against VAL and Zhen were baseless at the time of the filing of their complaint, but proceeded with filing their complaint against Counterclaimant despite their knowledge that their allegations were baseless."  First Amended Counterclaim ¶ 13.  By its terms, section 425.16 is implicated by "every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch." *Jarrow Formulas, Inc. v. Lamarche,* 31 Cal. 4th 728, 734-35 (2003).  The "in connection with an issue under consideration or review by a . . . judicial body" requirement is satisfied by the July 20 communication, because Val USA has alleged the filing of baseless claims as a predicate of its claim of malice in connection with that communication.  First Amended Counterclaim ¶¶ 13, 20, 23.

Subsection (4) of Section 425.16(e) is implicated by the Harmony Parties'

July 20 correspondence because it is an act "in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  "Public interest" within the meaning of the anti-SLAPP statute is broadly construed.  *Hecimovich v. Encinal School Parent Teacher Org.,* 203 Cal. App. 4th 450, 464 (2012); *Nygard, Inc., v. Uusi-Kerttula*, 154 Cal. App. 4th 1027, 1039 (2008) ("Section 425.16 does not define 'public interest,' but its preamble states that its provisions 'shall be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'").  A communication is "in the public interest" if it involves a person or entity in the public eye, conduct that could affect large numbers of people beyond the direct participants, and/or a topic of widespread interest.  *Rivero v. American Federation of State, County & Mun. Employees, AFL-CIO,* 105 Cal. App. 4th 913, 924 (2003).  Stated differently, an issue of public interest is anything that is of interest to the public or a limited but definable portion thereof apart from mere curiosity.  *See Cross v. Cooper,* 197 Cal. App. 4th 357, 380 (2011).

For example, in *GetFugu, Inc. v. Patton Boggs LLP,* 220 Cal. App. 4th 141, 151 (2013), a press release and "tweet" stating that the plaintiff corporation was under FBI investigation for an investment scam fell within Section 425.16(e)(4), because "investment scams are a matter of public interest" as they could affect large numbers of people.  Similarly, in *Paradise Hills Associates v. Procel,* 235 Cal. App. 3d 1528 (1991), the Court held that a disgruntled buyer's statements to third parties made against a seller, although involving a private dispute, fell within Section 425.16(e)(4), because the free flow of information affecting consumers is essential.  *Id.* at 1545 ("It is a matter of public interest that [private economic] decisions, in the aggregate, be intelligent and well informed.  To this end, the free flow of commercial information is indispensable.").

Like communications about perceived investment scams or dissatisfaction with a seller's product, communications about counterfeiting activity under the

Lanham Act is in the public interest.[9]  Not only does counterfeiting activity directly affect consumers in a substantial segment of the market that unwittingly purchase counterfeit products, but it also is of great interest to the public in that this form of consumer fraud erodes public confidence in the safety and quality of consumer goods, and it harms and impedes the free flow of commercial information about consumer products, which is vital to the economy and consumer choice.

The Ninth Circuit recognizes the public nature and public harm underlying claims under the Lanham Act:  "A trademark claim exists under the Lanham Act 'where the *public interest* in avoiding consumer confusions outweighs the public interest in free expression.'"  *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 807, 808 (9th Cir. 2003) (quoting *Rodgers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989)) (emphasis added); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("[t]he 'ultimate test' . . . [is] whether the public is likely to be deceived or confused by the similarity of the marks.").  Counterfeiting is of particular public importance because unlike trademark infringement, which turns on a likelihood of confusion and considers the fact that a defendant may have a *bona fide* interest in its own expression, counterfeiting is based on deception, where the consumer is intentionally deceived and there is no valid expression.

The Harmony Parties exercised their First Amendment right to respond to widespread negative publicity arising from counterfeiting activity, as to which the Court found sufficient evidence to enjoin.  They communicated with their own independent sales representatives that the Harmony Parties were actively enforcing their rights and protecting their brand.  That Val USA was involved in the counterfeiting activity, as proved at the preliminary injunction hearing, does not convert counterfeiting activity into just a private dispute.  It remains a dispute that

---

[9]   The very purpose of the Lanham Act is to protect the public's interest in trademarks and to protect consumers from confusion and deception.  J. Thomas McCarthy, 1 McCarthy on Trademarks & Unfair Competition § 2:1 (4th ed. 2013).

is about consumer confidence in products, that affects the free flow information and consumer choice, and that is about a public issue.

### C.   Val USA Cannot Establish the Merits of its Counterclaim

Val USA's First Amended Counterclaim and each count therein should be stricken or dismissed for three separate reasons.  First, they fail to state a claim upon which relief can be granted.  Second, Val USA does not have admissible evidence that would establish a *prima facie* case of tortious interference.  Third, the filing of a complaint and the July 20 letter to the Harmony Parties' independent sales representatives are privileged acts under Civil Code § 47(b)-(c).

### 1.   The Counterclaim Fails to State a Claim

Under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, a complaint fails to state a claim upon which relief can be granted if the pleading does not alleged facts "showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  This "showing" requires "more than labels and conclusions"; it requires factual allegations setting forth the "'grounds' on which the claims rests," and these factual allegations must "raise a right to relief above the speculative level" to the "plausible" level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 & n.3 (2007) ("Twombly"); *Ashcroft v. Iqbal,* 556 U.S. 662, 679-80 (2009). Therefore, it is not enough that Val USA belatedly denies the Harmony Parties' allegations or that its conclusory allegations of wrongdoing are "consistent with" Val USA's theory of liability; rather, the allegations of wrongdoing must be factually based and sufficiently probative to cross "line between possibility and plausibility of 'entitlement to relief.'"  *Ashcroft,* 556 U.S. at 678.  Allegations are not plausible if there are "obvious alternative explanation(s)" indicating lawful conduct, not unlawful conduct as alleged in a pleading.  *Id.* at 682.

There is a two-prong approach under *Twombly*.  First, a court must take "note of the elements a plaintiff must plead to state a claim." *Ashcroft,* 556 U.S. at 675; *Eclectic Properties East, LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 997

(2014).  Second, the court is to disregard the conclusory allegations, and assume the veracity of only the "well-pleaded factual allegations," and "then determine whether they plausibly give rise to an entitlement to relief."  *Ashcroft,* 556 U.S. at 675; *Rodriguez-Revyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013).

Val USA's pleading fails to meet this standard.  To begin with, there are different elements to Val USA's first cause of action for tortious interference with business relations—depending on whether the claim is for interference with a contractual relationship,[10] or a prospective advantage from an economic relationship.[11]  Regardless of which theory Val USA is trying to assert, there are no well-pled facts in the amended counterclaim that Val USA had a contractual relationship with any "business associate" who received the July 20 letter, or an economic relationship with any party that probably would have resulted in an economic benefit but for the July 20 letter.  Val USA's First Amended Counterclaim does not even identify any third party who received the letter.

While Val USA contends the Harmony Parties "contacted Counterclaimant's distributors, vendors, and/or other business associates" via letter "on or about July 20, 2016," there are no facts that would support even these conclusory allegations.  *See* First Amended Counterclaim ¶¶ 15, 17.  Who at the Harmony Parties made

---

[10]  If the claim is for interference with contractual relation, Val USA had to plead and prove (1) that there was a contract between Val USA and a third party; (2) that the Harmony Parties knew of that contract; (3) that the Harmony Parties intended to disrupt the performance of the contract; (4) that the Harmony Parties' conduct prevented performance or made performance more expensive or difficult; (5) that Val USA was harmed; and (6) that the Harmony Parties' conduct was a substantial factor in causing Val USA's harm.  *See* California Civil Jury Instruction § 2201 (Intentional Inference with Contractual Relations).

[11]  If the claim is for interference with a prospective advantage from an economic relationship, Val USA had to plead and prove (1) that Val USA and a third party were in an economic relationship that probability would have resulted in an economic benefit to Val USA; (2) that the Harmony Parties knew of that relationship; (3) that the Harmony Parties intended to disrupt that relationship; (4) that the Harmony Parties engaged in an independently wrongful act outside the privilege of fair competition; (5) that the relationship was disrupted; (6) that Val USA was harmed; and (6) that the Harmony Parties' conduct was a substantial factor in causing Val USA's harm.  *See* California Civil Jury Instruction § 2202 (Intentional Inference with Contractual Relations).

such contact?  And with whom was that contact made?  Exhibit B to the amended counterclaim sheds no light on either question.  Therefore, in addition to having failed to allege facts supporting the requisite relationship, there is no ground upon which to allege or infer that the Harmony Parties knew of the unidentified relationship, let alone intended to interfere with or disrupt it, especially with any independently wrongful conduct outside the privilege of fair competition.

Val USA's state law unfair competition claim, which reasserts Val USA's conclusory allegation of tortious inference, *see* First Amended Complaint ¶ 35, fairs no better under *Twombly*.  In addition to there being no well-pled facts of any illegal, fraudulent or unfair competition, Business and Professions Code section 17200 has a standing requirement, pursuant to which Val USA had to plead and prove that it has sustained an "injury in fact and . . . lost money or property as a result of the unfair competition."  Bus. & Prof. Code § 17204.  It is not enough to allege that the July letter portrayed Val USA in a false light.  Val USA was required to pled facts supporting a plausible "economic injury" resulting from the letter. *Animial Legal Defense Fund v. Mendes,* 160 Cal. App. 4th 136, 147 (2008).  Therefore, not only is there no claim for tortious inference, there is no claim for unfair competition, as the First Amended Counterclaim is wholly unsupported.

### 2.    Val USA Cannot Establish a *Prima Facie* Case

Because Val USA's First Amended Counterclaim fails to state a claim upon which relief can be granted, the Court does not have to reach the issue of whether Val USA can support either count in its pleading with admissible evidence.  The First Amended Complaint should be stricken or dismissed simply because it fails to state a claim.  *Rusheen,* 37 Cal. 4th at 1056.  It should also be stricken because Val USA will be unable to support with admissible evidence its claims.

### 3.    The Alleged Wrongful Conduct Is Privileged

Finally, Val-USA's First Amended Counterclaim, and especially or at least the first cause of action asserted therein, should be stricken because the alleged

wrongful acts—the filing of a complaint and the July 20 communication—are privileged. Civil Code section 47 sets forth two privileges that apply here. First, Section 47(b) sets forth the litigation privilege, which operates to bar claims based on "any communication (1) made in judicial . . . proceedings; (2) by litigants . . . ; (3) to achieve the objects of the litigation; and (4) that have come connection or logical relation to the action." *Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990); *Jacob B. v. County of Shasta,* 40 Cal. 4th 948, 955 (2007). Section 47(b) bars any liability based on, *inter alia,* the allegations in Paragraphs 11 to 13 and 23 of the amended counterclaim, which accuse the Harmony Parties of filing a "sham" complaint and falsely accusing Val USA of trademark infringement, which are privileged statements and cannot form the basis of liability.

Second, Section 47(c) sets forth the interested-party or common-interest privilege, which, absent malice, operates to bar claims based on a communication "to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." The party asserting the privilege bears the initial burden of establishing that the statement in question was made on a privileged occasion. *Taus v. Loftus,* 40 Cal. 4th 683, 721 (2007). When that burden is met, the party opposing the privilege bears the burden of proving that the communication was made with "actual malice." *Id.*

There is no question that the Harmony Parties' July 20 letter, which they sent to their own sales representatives, Malynn Decl. ¶ 16, is privileged. *See Williams v. Taylor,* 129 Cal. App. 3d 745, 751 (1982) (Section 47(c) applies if "the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest."). This privilege applies to a defendant making a communication between parties in a contractual, business or similar relationship to protect a pecuniary or proprietary interest.

*Kashian v. Harriman,* 98 Cal. App. 4th 892, 914 (2002).  The Harmony Parties have a business relationship with their independent sales representatives, who are contractually objected to sell and promote GELISH brand products.  Malynn Decl. ¶ 4.  These individuals have a keen interest in the subject counterfeiting activity, the Harmony Parties' enforcement efforts, and the results thereof, and the Harmony Parties had a pecuniary interest in strongly responding to the negative publicity associated with the counterfeit activity in the market.  *Id.* ¶¶ 5-15.

Section 47(c) bars any liable based on, *inter alia,* Paragraphs 14 to 22 of the First Amended Counterclaim, which are based on a privileged communication.  No facts other than privileged conduct under Civil Code section 47(b) has been alleged that would support any claim or inference of "actual malice."  The Harmony Parties did not file their complaint until after receiving investigation reports, and they filed declarations in support of their claims concurrently with the filing of the complaint. In connection with the motion for a preliminary injunction, the Harmony Parties served their moving papers including declarations and investigation reports on the California defendants, including Val USA.  In addition, at the preliminary injunction hearing, the Court expressly found Phan's testimony, which was subjected to cross-examination, credible and made findings supporting relief adverse to Val USA.  Under these circumstances, there is no basis for any claim that the Harmony Parties acted with "actual malice" to Val USA.

### D.    A Discovery Stay on the Counterclaim Is Appropriate

California's anti-SLAPP statute imposes a stay of discovery on the challenged pleading.  *See* Civ. Proc. Code § 425.16(g) ("all discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.").  This stay is consistent with the Federal Rules of Civil Procedure because the district court has discretion to permit discovery upon a proper showing.  *New.Net, Inc.,* 356 F. Supp. 2d at 1101.

### E.   An Award of Attorneys' Fees is Appropriate

California's anti-SLAPP statute directs that prevailing counter-defendants are entitled to an award of costs and attorney's fees.  *See* Civ. Proc. Code § 425.16(c) ("a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.").  The Legislature made the award mandatory to protect the First Amendment rights of petition and free speech.  *See Pfeiffer Venice Properties v. Bernard,* 101 Cal. App. 4th 211, 215 (2002).  The Harmony Parties respectfully request that the Court award attorney's fees in an amount to be demonstrated following the submission of evidence after the ruling on the Motion.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Harmony Parties' motion, strike or dismiss Val USA's First Amended Counterclaim and each cause of action therein, stay discovery on the Counterclaim, and award the Harmony Parties their costs and attorney's fees incurred in connection with the Motion.

Dated:  November 8, 2016                    Respectfully submitted,

**POLSINELLI LLP**

/s/Todd M. Malynn

By:  Todd M. Malynn, Esq.
Adam P. Daniels, Esq.
*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC.,
NAIL ALLIANCE, LLC

Special Motion to Strike and Motion to Dismiss
17

55223769.1

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 8, 2016, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice of this document by electronic means.


Dated:  November 8, 2016                    POLSINELLI, LLP


                                            By:  /s/AJ Cruickshank
                                                 AJ Cruickshank