Tony W. Wong (CA State Bar No. 243324)
A. Justin Lum, *Of Counsel* (CA State Bar No. 164882)
Peter K. Chu (CA State Bar No. 251705)
D&R I.P. LAW FIRM, APLC
388 E. Valley Blvd., Suite 223
Alhambra, CA 91801
Telephone: (626) 447-7788
Facsimile: (626) 447-7783
Email: tonyw@dnriplaw.com
        justinl@dnriplaw.com
        peterc@dnriplaw.com

Attorneys for Defendants
VAL USA MANUFACTURER, INC.
and IRIS ZHEN

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, NAIL ALLIANCE, LLC, a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ABC NAIL AND SPA PRODUCTS, a California business; GEL NAIL SUPPLY, a California business; VAL USA MANUFACTURER, INC. (a.k.a., Val Gel Polish Manufacture), a California corporation; IRIS ZHEN; et al.<br><br>Defendants. | Case No. SACV16-00969 DOC (JEMx)<br><br>**DEFENDANTS/COUNTER-PLAINTIFF VAL USA MANUFACTURER, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS/COUNTER-DEFENDANTS' HAND & NAIL HARMONY, INC. AND NAIL ALLIANCE, LLC'S SPECIAL MOTION TO STRIKE AND RULE 12(B)(6) MOTION TO DISMISS** |

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION  AND STATEMENT OF FACTS        4

II.  ARGUMENT        6

    A.  LEGAL STANDARD        6

    B.  COUNTER-PLAINTIFF'S COUNTERCLAIMS DO
        NOT ARISE FROM PROTECTED ACTIVITY BY
        COUNTER-DEFENDANTS        8

    C.  COUNTER-PLAINTIFF'S COUNTERCLAIMS EACH
        STATE FACTS SUFFICIENT TO STATE A CLAIM        15

    D.  COUNTER-PLAINTIFF IS LIKELY TO PREVAIL
        ON ITS CLAIMS        20

III.  CONCLUSION        22

# TABLE OF AUTHORITIES

**PAGE**

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 556 & n.3 (2007)                                                    24

*Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010)       7

*Lafayette Morehouse v. Chronicle Publishing Co.*,
  37 Cal. App. 4th 855, 858 (1995)                                              7

*Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002)                       7, 8

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
151 Cal. App. 4th 688, 699, 61 Cal. Rptr. 3d 29 (2007)          8
*Gallagher v. Connell*, 123 Cal. App. 4th 1260, 1275 (2004)    8
*Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)   8
*Martinez v. Metabolife Intl, Inc.*, 113 Cal.App.4th 181,188 (2003)   11
*Kaskey v. Nike, Inc.* 27 Cal. 4th 939, 952 (2002)                    12
*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974).          12
*Virginia State Bd of Pharmacy v.*
*Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)   12
*Rivero v. American Federation of State,*
*County & Mun. Employees, AFL-CIO,*
  105 Cal. App. 4th 913, 924 (2003)                                           16
*Rusheen v. Cohen,* 37 Cal. 4th 1048, 1056 (2006)                  20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION AND STATEMENT OF FACTS

Defendant/Counter-Plaintiff VAL USA MANUFACTURER, INC. (collectively, "Counter-Plaintiff"), filed its Counterclaim against Plaintiffs/Counter-Defendants HAND & NAIL HARMONY, INC. and NAIL ALLIANCE, LLC (collectively, "Counter-Defendants") on September 27, 2016. On October 25, 2016, Counter-Plaintiff filed its First Amended Counterclaim. Counter-Plaintiff amended its original Counterclaim by completely abandoning Sherman Act violation arising from a sham litigation to limit its claims for damages solely to tortious communications contained in correspondence sent by Counter-Defendants to business associates of Counter-Plaintiff on or about July 20, 2016 (the "July Correspondence"). Counter-Plaintiff attached a true and correct copy of the July Correspondence as Exhibit "B" to its First Amended Counterclaim. Counter-Plaintiff amended its counterclaims such that the instant lawsuit now is merely background information,while maintaining valid claims against Counter-Defendants for interference with business relations and unfair competition pursuant to Cal. Bus. Prof. Code §17200.

Despite these amendments and the sufficiency of Counter-Plaintiff's claims, Counter-Defendants on November 8, 2016 filed their Notice of Motion and Special Motion to Strike (C.C.P. § 425.15 Anti-SLAPP Motion) (herein, "Motion to Strike"). Counter-Defendants concurrently with their Motion to Strike brought a Rule 12(b)(6)

Motion to Dismiss wherein they seek the dismissal of each of Counter-Plaintiff's claims for relief for alleged failures to state a claim ("Motion to Dismiss").

Counter-Plaintiff timely brings its opposition to Counter-Defendants' Motion to Strike and Motion to Dismiss herein.

## II.   ARGUMENT

### A.   LEGAL STANDARD

A special motion to strike under Cal. Code Civ. P. § 425.16 -- the so-called anti-SLAPP statute -- allows a defendant to seek early dismissal of a lawsuit that qualifies as a Strategic Lawsuit Against Public Participation ("SLAPP").

Pursuant to Cal. Code Civ. P. § 425.16 (b) (1):
A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Pursuant to Cal. Code Civ. P. § 425.16 (e):
An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right

of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

However, the statute protects only against lawsuits "without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Lafayette Morehouse v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 858 (1995) (SLAPP plaintiffs file "solely for delay and distractions and to punish activists by imposing litigation costs on them").

The anti-SLAPP statute was not intended to bar all litigation allegedly affecting or relating to First Amendment rights. Rather, it was enacted to encourage participation in matters of public significance and ensure that such participation would not be dissuaded through abuse of the judicial system. Cal. Code Civ. P. § 425.16(a).

The Court engages in a two-step process when ruling on an anti-SLAPP motion to strike. First, the Court must decide whether the movant has made a threshold showing that the challenged cause of action is one arising from protected activity furtherance of the right of petition or free speech, or in connection with a public issue. See, e.g., *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010); *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002); Cal. Code Civ. P. § 425.16.

Second, only if the movant meets its burden, the nonmovant must then show a probability of prevailing on the challenged claim. A nonmovant satisfies this burden by showing that the claim is legally sufficient and supported by a prima facie showing of facts sufficient for a judgment in the nonmovant's favor if the evidence relied on is

credited. *See Navellier v. Sletten*, 29 Cal. 4th 82, 88–89. 124 (2002). It is well established in California that nonmovant's burden requires a very minimal showing. *Id.*("[I]n order to establish the requisite probability of prevailing (§ 425.16, subd. (b)(1)), the [nonmovant] need only have stated and substantiated a legally sufficient claim." (citation and quotation omitted)); *see also Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699, 61 Cal. Rptr. 3d 29 (2007) (a [nonmovant]'s burden in establishing a probability of prevailing is not onerous); *Gallagher v. Connell*, 123 Cal. App. 4th 1260, 1275, 20 Cal. Rptr. 3d 673 (2004) (a [nonmovant] need only make a minimal showing to withstand anti-SLAPP motion).

Only a claim that satisfies both prongs of the anti-SLAPP statute -- that arises from protected speech and lacks even minimal merit -- is a claim subject to being stricken under the statute. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Navellier*, *supra*, at 88-89. In the instant case, neither prong can be met, as Counter-Defendants' tortious communications are not protected speech, and Counter-Plaintiff has pled valid claims of substantial merit that are likely to prevail.

## B.    COUNTER-PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF PROTECTED ACTIVITY BY COUNTER-DEFENDANTS

*1. Counter-Plaintiff's claims are not based on the  instant lawsuit filing*

Counter-Plaintiff amaintains that the instant lawsuit filing by Counter-Defendants is frivolous as to Counter-Plaintiff, being based solely upon false

accusations by one individual upon information and belief, paid by Counter-Defendants. Counter-Plaintiff therefore reserves the right to seek the attorneys' fees due to them for the instant lawsuit filing as to Counter-Plaintiff.

However, Counter-Plaintiff's first Counterclaim is not the subject of the instant special motion to strike by Counter-Defendants. Counter-Plaintiff met and conferred with Counter-Defendants regarding certain elements of its first Counterclaim. In the spirit of cooperation, rather than oppose Counter-Defendants assertions in motion practice, Counter-Plaintiff amended its counterclaims sufficiently such that they are based solely on tortious communications by Counter-Defendants. Counter-Plaintiff make no mention of the instant lawsuit in connection to its claims for damages in its Amended Counterclaim. Contrary to Counter-Defendants' claims, Counter-Plaintiff's claims for damages are not related to claims for malicious prosecution.

Subsection (2) of CCP §425.16(e) is therefore not satisfied by the elements of this case. Counter-Plaintiff's claims for malice by Counter-Defendants is not based on the filing of the instant lawsuit, as Counter-Defendants try to argue, but instead are based solely on the false allegations made in Counter-Defendants' tortious communications with Counter-Plaintiff's business associates. Still, Counter-Defendants attempt to apply the facts of the initial Counterclaim to Counter-Plaintiff's Amended Counterclaim. Counter-Defendants construe allegations by Counter-Plaintiff at ¶23 to reference the instant lawsuit. Paragraph 23 of the Amended

Counterclaim merely states that "Counterclaimant has been damaged as a direct and proximate result of Counter-Defendants actions because Counterclaimant has been falsely and maliciously accused of infringing Counter-Defendants' purported trademarks and trade dress, despite Counter-Defendants' prior knowledge that the facts and prevailing evidence show otherwise." These allegations do not reference the instant lawsuit but instead the July Correspondence that is consistently mentioned as the basis for Counter-Plaintiff's claims for damages.

The July Correspondence and Counter-Defendants' contact with Counter-Plaintiff's business associates is clearly the basis for Counter-Plaintiff's claims, and what is being referenced at ¶23. The paragraphs leading to paragraph 23, including paragraphs 14-21, are solely based on the July Correspondence and Counter-Defendants' contact with Counter-Plaintiff's business associates. Counter-Plaintiff's specifically state in its claim for tortious interference with business relations at ¶29 that "Counter-Defendants engaged in wrongful conduct by including statements in the July Correspondence that were premature at best and misrepresented and put Counterclaimant in false light at the time the July Correspondence was sent." Counter-Plaintiff's claims for interference with business relations and unfair competition are based on the July Correspondence. Counter-Plaintiff's claims are not related to the instant lawsuit filing.

Furthermore, even if a cause of action contains allegations of both protected and unprotected activity, if the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on non-protected activity, collateral references to protected activity should not subject the cause of action to the anti-SLAPP statute. *Martinez v. Metabolife Intl, Inc.*, 113 Cal.App.4th 181,188 (2003). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation]...." Martinez, supra, 113 Cal.App.4th at 188 (citing *City of Cotati v. Cashman*, supra, 29 Cal. 4th at 79. "[A] defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant." *Martinez v. Metabolife Intl, Inc.*, 113 Cal.App.4th 181,188 (2003). Counter-Plaintiff's claims for damages in its counterclaims are principally and at the very least essentially based on non-protected activity by Counter-Defendants, their contact with Counter-Plaintiff's business associates, as alleged.

In sum, Counter-Plaintiff's claims for damages are based solely on Counter-Defendants' tortious communications with Counter-Plaintiff's associates. Therefore, Subsection (1) of CCP §425.16(e) is not properly invoked by Counter-Defendants' motion. Counter-Defendants' motion should be denied.

2. *The statements by Counter-Defendants include false statements and therefore qualifies as non-protected activity on this ground as well*

False statements of fact do not qualify for constitutional protection. *Kaskey v. Nike, Inc.* 27 Cal. 4th 939, 952 (2002), *citing Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974). "Untruthful speech, commercial or otherwise, has never been protected for its own sake." *Id.*, citing *Virginia State Bd of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976).

Counter-Defendants have admitted they sent the July Correspondence. ("The Harmony Parties' letter in July 2016...") *Counter-Defendants' Motion, Dkt. No. 111, p. 11.* Counter-Defendants therein stated falsely that the Court found that "VAL USA was involved in counterfeiting activity." Counter-Defendants stated that the Court had found "sufficient evidence." In its order granting the preliminary injunction, this Court did not specifically rule that VAL USA was actually involved in counterfeiting activity. Neither did this Court rule that there was sufficient evidence to actually **prove** that there was sufficient evidence of counterfeiting activity. Therefore, these statements are false. That finding is reserved for trial or summary judgment, and not in a preliminary injunction. Being that the Court did not make any such finding, the statement is clearly both a falsehood and an accusation against VAL USA of infringement. Counter-Defendants further falsely implicated VAL USA in counterfeiting by stating "[w]e are also committed to taking action against these types of pirating activities." VAL USA is the only entity mentioned in the July Correspondence not related to Counter-Defendants. It is obvious to which entity they

refer when implying that VAL USA is among the "companies that seek to trade off the goodwill and reputation of our brands." Similarly, it can only be VAL USA that they refer to in the July Correspondence when they promise to "protect our distributors from unfair competition." No other entity is named in the July Correspondence. Any implications or statements by Counter-Defendants, which they made time and again in the July Correspondence, are false as there has been no final judgement made by the Court as to the merits of Counter-Defendants' case. Absent judgement against VAL USA, Counter-Defendants cannot recklessly make the numerous accusations of infringement against Counter-Plaintiff that they make in the July Correspondence. These accusations are false and tend to place Counter-Plaintiff in a false light by implying infringement and counterfeiting by Counter-Plaintiff.

These false statements by Counter-Defendants form the whole basis for its claims for damages. Counter-Plaintiff alleges at ¶15-18 that Counter-Defendants maliciously, willfully, and intentionally attempted to interfere with Counter-Plaintiff's business relationships by sending correspondence to Counter-Plaintiff's distributors, vendors, and/or other business associates in which Counter-Defendants falsely accused Counter-Plaintiff of illegal activity. Counter-Plaintiff alleges at ¶26 that it had an economic relationship with its distributors that would have resulted in economic benefit to Counter-Plaintiff. Counter-Plaintiff alleges at ¶27 that Counter-Defendants knew of this relationship when they sent the tortious communications to Counter-

Defendants' business associates. Counter-Plaintiff alleges at ¶28 malice, in that Counter-Defendants intended to disrupt the relationship. Counter-Plaintiff alleges at ¶29 that Counter-Defendants engaged in wrongful conduct by presenting false accusations to associates of Counter-Plaintiff. Counter-Plaintiff alleges at ¶30 that the relationship was disrupted. Counter-Plaintiff alleges at ¶30, 31, 32 and 33 that Counter-Defendants' tortious communications resulted in damage to Counter-Defendants. Counter-Plaintiff alleges at ¶31 that Counter-Defendants' tortious communications were a substantial factor in the harm to Counter-Plaintiff.

Counter-Defendants made false statements in its July Correspondence accusing Counter-Plaintiff of counterfeiting, infringement, and unfair competition. Counter-Defendants' July Correspondence, sent to many different parties including business associates of Counter-Plaintiff, and the false statements made therein to Counter-Plaintiff's business associates, therefore do not qualify as protected speech under Cal. Code Civ. P. § 425.16. Counter-Defendants' special motion to strike should be denied on this ground as well.

### 3. The statements by Counter-Defendants were made for commercial purposes

The First Amendment "accords less protection to commercial speech than to other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64-65 (1983); *Kaskey v. Nike, Inc.*, 27 Cal. 4th 939, 952 (2002). As such, the statements here are not entitled to First Amendment protection.

*Id*, citing *In re R.MJ*, 455 U.S. 191,203 (1982). Likewise, the statements by Counter-Defendants are not entitled to protection under California's anti-SLAPP statute. *See Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39,50-51 (2003).

Counter-Defendants made these false statements in the interest of interfering with Counter-Plaintiff's business who competes in the same trade against Counter-Defendants. Counter-Defendants at best made these false statements in the interest of protecting their own business, as they plainly admit ("The Harmony Parties exercised their First Amendment right to respond to widespread negative publicity arising from counterfeiting activity"). *Counter-Defendants' Motion, Dkt. No. 111, p. 11.* The statements by Counter-Defendants were made for commercial purposes – the supposed protection of their business, as freely admitted by Counter-Defendants. The statements by Counter-Defendants were therefore not protected activity according to prevailing caselaw. Therefore, on this ground as well, Counter-Defendants motion should be denied.

*4. Counter-Defendants' false and tortious communications do not qualify as protected speech relating to matters of public interest*

Counter-Defendants state that they sent their July Correspondence, which Counter-Plaintiff pleads was sent to Counter-Plaintiff's business associates, because the communication was in the public interest. As cited by Counter-Defendants themselves, to qualify as a communication made in the "in the public interest," a

sufficient showing must be made that the communication in question involves a person or entity in the public eye, conduct that could affect large numbers of people beyond the direct participants, and/or a topic of widespread interest. *Rivero v. American Federation of State, County & Mun. Employees, AFL-CIO,* 105 Cal. App. 4th 913, 924 (2003). This case to which Counter-Defendants cite, was itself an example of a denial of a special motion to strike, with the Court finding that the matters were not in the public interest. *Rivero at 924* (denying anti-SLAPP motion in libel suit about criticisms of university's workplace activities).

The false and tortious communications made by Counter-Defendants in its July Correspondence do not involve an entity in the public eye. Counter-Plaintiff is a small company that is not known to the general public. Additionally, Counter-Plaintiff does not market its own brands but instead manufactures OEM products for other companies, so it is not in the public eye. Counter-Plaintiff's sales of its legitimate OEM products are not such that they would affect large numbers of people beyond the direct participants. Sales by Counter-Plaintiff of its legitimate OEM products, and Counter-Defendants' related false accusations of infringement, are not a topic of widespread interest.

Furthermore, statements about the quality of a specific commercial product or about a particular business are not matters that concern a public issue or a matter of public interest within the meaning of California's anti-SLAPP statute. *Commonwealth*

*Energy*, 110 Cal. App. 4th at 34-35; *Consumer Justice Center*, 107 Cal. App. 4th at 601 (denying motion to strike in case involving ads for breast enlargement herbal supplements); *Nagel*, 109 Cal. App. 4th at 47-48 (denying antiSLAPP motion in case involving dietary supplements). Although a statement about the efficacy and/or specific properties of a certain product may affect consumers, this type of statement is directed primarily at protecting private commercial interests and, thus, does not generally implicate issues that are fundamentally "public" concerns. *See Commonwealth Energy*, 110 Cal. App. 4th at 34-35; *Consumer Justice Center*, 107 Cal. App. 4th at 601; *Nagel*, 109 Cal. App. 4th at 50-51.

Furthermore, Counter-Defendants in their filings have stated that they admit that they sent the July Correspondence to "companies that have an ongoing relationship with us." They can only state at best that they "have no knowledge of any contractual or business relationship had by [Counter-Plaintiff]." *Declaration of Steven Malynn, Dkt. No. 111-1, p. 5.* Given that Counter-Plaintiff is an OEM manufacturer for a number of companies in the exact same field as Counter-Defendants, it is very possible and even likely that at least one of these parties might also be business associates or prospective business partners for Counter-Plaintiff. Counter-Defendants cannot guarantee that this is not the case. Counter-Plaintiff has concurrently submitted evidentiary objections to Counter-Defendants' supposed evidence, including counsel's declaration.

Counter-Defendants now by bringing this motion to strike are attempting to get out of their false accusations made against Counter-Plaintiff. These false allegations were made in communications with Counter-Plaintiff's business associates. Subsection (4) of CCP §425.16(e) is therefore not satisfied by the elements of this case. The tortious speech made by Counter-Defendants was made solely to interfere with Counter-Plaintiff's business relations, and is therefore not protected speech to invoke the protection of California's anti-SLAPP statute.

*5. Counter-Defendants' false and tortious communications do not qualify as privileged communications*

Counter-Defendants assert that if their tortious communications were not made to the public in the public interest, they are exactly the opposite, privileged communications that may not be attacked. Here again, Counter-Defendants try to argue that Counter-Plaintiff's claims for damages were based on the filing of the instant lawsuit, in asserting privilege pursuant to Civil Code section 47(c). Again, any assertion by Counter-Defendants that Counter-Plaintiff based his claims for relief in its First Amended Counterclaim on the filing of the instant lawsuit, despite its lack of merit as it relates to Counter-Plaintiff, are still, simply false. Counter-Defendants sent the July Correspondence, which included tortious statements about Counter-Plaintiff, to customers and business associates of Counter-Plaintiff. Counter-Plaintiff has alleged this in its counterclaims. Counter-Plaintiff's claims for relief in its

counterclaims only explicitly mention the tortious contact with Counter-Plaintiff's business associates as the basis for each of its claims for damages.

Counter-Plaintiff has alleged that the July Correspondence was sent to its business associates. Counter-Plaintiff has sufficiently pled allegations of such tortious activity by Counter-Defendants in its claims against Counter-Defendants. Therefore, Counter-Defendants' assertion that the July Correspondence was also sent to its sales representatives is irrelevant, as the communication was also sent to other third parties related to Counter-Plaintiff. Additionally, Counter-Defendants have admitted that the July Correspondence was sent to certain "companies that have an ongoing contractual relationship with us." *Declaration of Steven Malynn, Dkt. No. 111-1, p. 5.*

Counter-Defendants simultaneously claim that the false statements in their July Correspondence which form the basis for Counter-Plaintiff's claims were 1) statements made to the public in their interest and 2) privileged communications meant for only for its sales representatives. Neither of these are true as the facts, including those pled by Counter-Plaintiff in its counterclaim, show that the communications were tortious, were sent to business associates and customers of Counter-Plaintiff, and falsely accused Counter-Plaintiff of illegal activity.

Counter-Defendants may try to throw every argument against the wall and see which if any sticks, but they have failed to prove that any of the elements required by any of the cited subsections of CCP §425.16 are present in the instant lawsuit in

regards to Counter-Plaintiff's counterclaims. Counter-Plaintiff simply seek damages

for Counter-Defendants' false allegations made in communications with Counter-

Plaintiff's business associates. Such statements are not protected under any subsection

of CCP §425.16. Counter-Defendants' tortious statements made to related parties of

Counter-Plaintiff do not qualify for any protection under CCP §425.16.

Therefore, on this ground as well, Counter-Defendants' special motion to strike

should be denied in its entirety.

## C.     COUNTER-PLAINTIFF IS LIKELY TO PREVAIL ON ITS

## CLAIMS

Even if the Court finds with Counter-Defendants that their tortious

communications were protected by one of the grounds given in CCP §425.16, the

statute provides at b(1) that a claim may avoid a special motion to strike if "the

Court determines that the plaintiff has established that there is a probability that

the plaintiff will prevail on the claim." The plaintiff "must demonstrate that the

[challenged pleading] is both legally sufficient and supported by a sufficient

prima facie showing of facts to sustain a favorable judgment if the evidence

submitted by [it] is credited." *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1056 (2006).

"In making its determination, the court shall consider the pleadings, and

supporting and opposing affidavits stating the facts upon which the liability or

defense is based." Civ. Proc. Code § 425.16(b)(2); *Equilon Enterprises,* 29 Cal.

4th at 67. Counter-Plaintiff concurrently with this opposition submits affidavits from personnel for Counter-Plaintiff including Iris Zhen, named defendant in this matter.

Counter-Plaintiff has pled each of its claims with sufficient specificity, and these are backed by corresponding facts sufficient to prevail on the merits. Counter-Plaintiff has pled that there was an existing economic relationship. This is true as Iris Zhen of Counter-Plaintiff has made an affidavit stating that at least Le Chat Nail Care Products is a business partner of Counter-Plaintiff, and was a recipient of the July Correspondence from Counter-Defendants. *See Zhen Declaration, concurrently filed,* ¶19. Counter-Plaintiff has pled that Counter-Defendants knew of the prospective or existing business relationship. This is likely to be found true as the nail products industry is a small industry. Additionally, Counter-Defendants state in their July Correspondence that "Harmony carefully monitors and polices the use of its intellectual property…both in the United States and around the world." This would entail regular surveys of the market and what products and entities exist in the nail industry. Additionally, Counter-Defendants published the July Correspondence in Nailpro, one of the industry's leading publications. They are therefore likely familiar with the nail industry's publications and the nail industry's entities. *See Zhen Declaration*, concurrently filed, ¶14. Counter-Plaintiff has pled that the July

Correspondence was intended to disrupt Counter-Plaintiff's business. This is likely given the content of the letter and the fact that VAL USA is the only entity mentioned by name in regards to infringing and counterfeiting activities. Counter-Plaintiff has pled that there was wrongful conduct by Counter-Defendants. This is true because Counter-Defendants' statements made in its communications with Counter-Plaintiff's business associates were false and defamatory. Counter-Plaintiff has pled that its business and business relationships were disrupted by Counter-Defendants' tortious communications. This is true as Iris Zhen has declared in her concurrently filed declaration that LeChat Nail Care Products, one of the recipients of the July Correspondence from Counter-Defendants, "no longer wants to do business with VAL." This was immediately following receiving the July Correspondence. The President of LeChat Nail Care Products stated in an email that it can no longer do business with Counter-Plaintiff Counter-Plaintiff has pled that as a result of Counter-Defendants' tortious communications, Counter-Plaintiff suffered damages. This is true as Iris Zhen stated that she suffered harms in an amount yet to be determined. *See Zhen Declaration*, concurrently filed, ¶¶21, 22.

Counter-Plaintiff has sufficiently pled each of its claims. Each of Counter-Plaintiff's claims is based on real damage suffered by Counter-Defendants' tortious communications. Counter-Plaintiff therefore ubmits that it has a

likelihood to prevail on the merits of its claims. Therefore, Counter-Defendants' Special Motion to Strike should be denied in its entirety on that ground as well.

## D.   COUNTER-PLAINTIFF'S COUNTERCLAIMS EACH STATE FACTS SUFFICIENT TO STATE A CLAIM

*1. Counter-Plaintiff sufficiently stated a claim for tortious interference with business relations*

Counter-Defendants' motion to dismiss Counter-Plaintiff's Amended Counterclaim should likewise be denied. Counter-Plaintiff sufficiently state each of its claims. Counter-Plaintiff cite *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 & n.3 (2007) in stating that claims require "raise a right to relief above the speculative level" to the "plausible" level. In the instant matter, Counter-Plaintiff has more than satisfied this requirement. Counter-Plaintiff has stated with exact specificity the communication sent by Counter-Defendants to Counter-Plaintiff's business associates. Counter-Defendants plainly admit they sent the July Correspondence in their motion. Counter-Plaintiff attached to its Counterclaim the copy of the July Correspondence they obtained. The July Correspondence sent by Counter-Defendants plainly accuses Counter-Plaintiff of infringing activity for which Counter-Defendants has no evidence. Counter-Plaintiff has stated such in its Amended Counterclaim. Therefore, it is more than plausible that the tortious communications by Counter-Defendants occurred.

To sufficiently state a claim for tortious interference with business relations, a plaintiff must simply state these elements: the plaintiff and another party were in a relationship that probably would have benefitted the plaintiff; the defendant knew or should have known of the relationship; the defendant engaged in wrongful acts such as breach of contract, misrepresentation, or other violation of the law; the relationship was disrupted; damages resulted from the disruption; and the defendant's wrongful conduct was a substantial factor in the damages.

Counter-Plaintiff has stated with specificity its allegations for tortious interference with business relations and unfair competition. Counter-Plaintiff alleges at ¶15-18 that Counter-Defendants maliciously, willfully, and intentionally attempted to interfere with Counter-Plaintiff's business relationships by sending correspondence to Counter-Plaintiff's distributors, vendors, and/or other business associates in which Counter-Defendants falsely accused Counter-Plaintiff of illegal activity. Counter-Plaintiff alleges at ¶26 that it had an economic relationship with its distributors that would have resulted in economic benefit to Counter-Plaintiff. Counter-Plaintiff alleges at ¶27 that Counter-Defendants knew of this relationship when they sent the tortious communications to Counter-Defendants' business associates. Counter-Plaintiff alleges at ¶28 malice, in that Counter-Defendants intended to disrupt the relationship. Counter-Plaintiff alleges at ¶29 that Counter-Defendants engaged in wrongful conduct by

presenting false accusations to associates of Counter-Plaintiff. Counter-Plaintiff alleges at ¶30 that the relationship was disrupted. Counter-Plaintiff alleges at ¶30, 31, 32 and 33 that Counter-Defendants' tortious communications resulted in damage to Counter-Defendants. Counter-Plaintiff alleges at ¶31 that Counter-Defendants' tortious communications were a substantial factor in the harm to Counter-Plaintiff. Therefore, Counter-Plaintiff has stated facts sufficient to plead its claim brought for tortious interference with business relations.

*2. Counter-Plaintiff pled with sufficient specificity all of the elements required for an Unfair Competition claim*

California Business and Professions Code Section 17200 provides relief for those affected by deceptive and illegal business practices. This relief extends to three general categories of behavior: unlawful, fraudulent or unfair business acts or practices. Although the courts in interpreting this statute have not expressly defined the term "business," courts have interpreted the terms "act" and "practice" broadly to cover most types of business conduct.

Plaintiffs must simply "plead[] facts that show the defendants' business practices are unfair." *Camacho v. Automobile Club of Southern California* (2006) 143 Cal.App.4th 1391, 1405. The California state courts have repeatedly held that all that is necessary to establish a violation of B&P § 17200 et seq., is to show that the defendant is a business engaged in acts or practices that are unlawful,

fraudulent or unfair. Thus, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal. App. 4th 824, 837 (2006). A plaintiff bringing a claim for unfair competition need only plead with sufficient specificity one of the three prongs under the statute. The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made. *Saunders v. Superior Court* (1994) 27 Cal. App. 4th 832, 838-39. It is not necessary that the predicate law provide for private civil enforcement. "Unfair," as used in the statute, simply means any practice whose harm to the victim outweighs its benefits. "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived. *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267

Counter-Plaintiff has stated all of the necessary factual elements with specificity sufficient to satisfy each of these potential prongs for an unfair competition claim. Counter-Plaintiff alleges at ¶15-18 that Counter-Defendants maliciously, willfully, and intentionally attempted to interfere with Counter-Plaintiff's business relationships by sending correspondence to Counter-Plaintiff's distributors, vendors, and/or other business associates in which Counter-Defendants falsely accused Counter-Plaintiff of illegal activity. Counter-

Plaintiff alleges at ¶26 that it had an economic relationship with its distributors that would have resulted in economic benefit to Counter-Plaintiff. Counter-Plaintiff alleges at ¶27 that Counter-Defendants knew of this relationship when they sent the tortious communications to Counter-Defendants' business associates. Counter-Plaintiff alleges at ¶28 malice, in that Counter-Defendants intended to disrupt the relationship. Counter-Plaintiff alleges at ¶29 that Counter-Defendants engaged in wrongful conduct by presenting false accusations to associates of Counter-Plaintiff. Counter-Plaintiff alleges at ¶30 that the relationship was disrupted. Counter-Plaintiff alleges at ¶30, 31, 32 and 33 that Counter-Defendants' tortious communications resulted in damage to Counter-Defendants. Counter-Plaintiff alleges at ¶31 that Counter-Defendants' tortious communications were a substantial factor in the harm to Counter-Plaintiff. Counter-Plaintiff alleges at ¶31 that "Counter-Defendants' wrongful conduct in … sending correspondence to third parties claiming that Counterclaimant is infringing the Trademarks prior to the final adjudication of this Court, is unlawful, unfair or fraudulent and constitutes unfair competition …" Therefore, Counter-Plaintiff has stated facts sufficient to plead its claims brought for unfair competition. Counter-Plaintiff has pled facts sufficient to plead claims for unfair business practices, fraudulent business practices, and unlawful business practices.

Counter-Plaintiff has therefore satisfied not one but all of the prongs for sufficiently bringing a claim for unfair competition.

Counter-Plaintiff stated with sufficient specificity all of the necessary factual elements necessary for each of its claims against Counter-Defendants for tortious interference with business relations and unfair competition. Therefore, Counter-Defendants' motion to dismiss should be denied with respect to both of Counter-Plaintiff's claims for relief.

*3. In the alternative, Counter-Plaintiff should be granted leave to amend its counterclaims*

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Counter-Defendants have certainly not identified any alleged deficiency that even if present as alleged, could not be cured by Counter-Plaintiff in

amendment. Therefore, if the Court finds that Counter-Plaintiff's claims are deficient in any way, Counter-Plaintiff requests leave to amend its counterclaims.

## III.   CONCLUSION

For all of the foregoing reasons, and any grounds presented at oral argument, Counter-Defendants' Special Motion to Strike and Motion to Dismiss should both be denied in their entirety. Counter-Defendants' Special Motion to Strike should be denied because Counter-Plaintiff amended its counterclaim sufficiently such that it seeks damages not for the instant lawsuit, but instead justly seeks damages for Counter-Defendants' tortious interference with business relations and illegal contact with Counter-Plaintiff's business associates. Counter-Plaintiff has sufficiently pled its claims for these damages, incorporating all of the elements required for each of its claims. Therefore, Counter-Defendants' Motion to Dismiss should be denied as well.

Dated: November 21, 2016                    D&R I.P. LAW FIRM, APLC


                                            s/Tony W. Wong/
                                            TONY W. WONG

                                            Attorneys for Defendants
                                            VAL USA MANUFACTURER, INC.
                                            and IRIS ZHEN

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

4

5

6

7

I am a citizen of the United States of America and I am employed in Alhambra, California. I am over the age of 18 and not a party to the within action. My business address is 388 E. Valley Blvd., Suite 223, Alhambra, California 91801. On the below execution date I served the within **OPPOSITION TO MOTION TO STRIKE** to the parties or their counsel shown below:

| | |
|---|---|
| Todd Matthew Malynn<br>Adam Peter Daniels<br>Polsinelli LLP<br>2049 Century Park East Suite 2900<br>Los Angeles, CA 90067 | Roger J Buffington<br>Buffington Law Firm<br>2151 Michelson Drive, Suite 232<br>Irvine, CA 92612 |
| Curtis R Tingley<br>Kevin W Isaacson<br>Stephen Douglas Collins<br>Tingley Law Group PC<br>10 Almaden Boulevard Suite 430<br>San Jose, CA 95113 | Justin Ledden<br>Justin Ledden Attorney at Law<br>555 W 5th Street<br>31th Floor<br>Los Angeles, CA 90013 |
| Jason S Roberts<br>Grant Genovese and Baratta LLP<br>2030 Main Street Suite 1600<br>Irvine, CA 92614 | Jose Mariano Castillo<br>Jose M Castillo Law Offices<br>800 West 6th Street<br>Suite 900<br>Los Angeles, CA 90017-2704 |

X (BY ECF NOTIFICATION) I filed this document electronically with PACER/ECF and stated parties received notification by e-mail from the ECF filing system.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 21, 2016 at Alhambra, California.

\_\_s/Jeffrey Vien/_____

Jeffrey Vien