**POLSINELLI LLP**
Todd M. Malynn (CA Bar No.181595)
Adam P. Daniels (CA Bar No. 296466)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   310.556.1801
Facsimile:   310.556.1802
Email:         tmalynn@polsinelli.com
                  adaniels@polsinelli.com

Jose Mariano Castillo
Jose M. Castillo Law Offices
800 W. 6th Street, Suite 900
Los Angeles, CA  90017-2704
Telephone:   213.622.6555
Facsimile:   213.622.5781
Email:         Castillo@castillolaw.com

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC., and
NAIL ALLIANCE, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>ABC NAIL AND SPA PRODUCTS, a California business, et al.,<br><br>          Defendants. | Case No. SACV16-00969 DOC(JEMx)<br>The Honorable David O. Carter<br><br>**REPLY IN SUPPORT OF PLAINTIFFS/COUNTER-DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE (C.C.P. § 425.15 ANTI-SLAPP MOTION)**<br><br>Date:       December 12, 2016<br>Time:       8:30 a.m.<br>Place:      Courtroom 9D<br>               411 W. Fourth Street<br>               Santa Ana, CA  92701<br><br>Complaint:  May 26, 2016<br>Trial:           November 28, 2017 |

Plaintiffs/Counter-Defendants Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, the "Harmony Parties") respectfully submit this memorandum in Reply to the Opposition to the Special Motion to Strike the First Amended Counterclaim ("Counterclaim") filed by Defendant/Counter-Claimant Val USA Manufacturer, Inc. ("Val USA").

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    VAL-USA'S COUNTERCLAIM SHOULD BE STRICKEN ...................... 4

    A.     Val USA's Counterclaim Arises From Protected Activity ................... 4

        1.     Civ. Proc. Code § 416.25(e)(1)-(2) ............................................ 5

        2.     Civ. Proc. Code § 416.25(e)(4) .................................................. 7

    B.     Val USA Cannot Establish a Probability of Success ........................ 11

        1.     The Counterclaim Fails to State a Claim.................................. 11

        2.     Val-USA's Proffered Evidence Would Not Support A Judgement—Let Alone Liability For Damages. ..................... 13

    C.     An Award of Attorneys' Fees is Appropriate .................................... 15

III.   CONCLUSION ................................................................................. 15

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

55343554.1

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662, 679 (2009) ................................................................ 12

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 556 (2007 ................................................................ 11

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) ........................................................................ 9

*Bosley Medical Institute, Inc. v. Kremer,*
    403 F.3d 672 (9th Cir. 2005) ......................................................... 4\

*Camacho v. Automobile Club of Southern California,*
    142 Cal. App. 4th 1394 (2006) ..................................................... 13

*Chapman v. Skype Inc.,*
    220 Cal. App. 4th 217 (2013) ....................................................... 13

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (2002) ..................................................................... 4

*Equilon Enterprises v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002) ..................................................................... 4

*F.T.C. v. Publ'g Clearing House, Inc.,*
    104 F.3d 1168 (9th Cir. 1997) ....................................................... 14

*Family Home and Finance Center, Inc. v. Federal Home Loan*
    *Mortgage Corp.,*
    525 F.3d 822 (2008) ....................................................................... 15

*Fox Searchlight Pictures, Inc. v. Paladino,*
    89 Cal. App. 4th 294 (2001) ........................................................... 4

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ........................................................................ 8

*GetFugu, Inc. v. Patton Boggs LLP,*
    220 Cal. App. 4th 141 (2013) .................................................... 7, 10

*Hecimovich v. Encinal School Parent Teacher Org.,*
    203 Cal. App. 4th 450 (2012) .................................................................. 4

*Infuturia Glob. Ltd. v. Sequus Pharm., Inc.,*
    414 F. App'x 61 (9th Cir. 2011) ............................................................ 12

*Kaskey v. Nike, Inc.*
    27 Cal. 4th 939 (2002) ........................................................................ 8, 9

*Kwikset Corp. v. Superior Court,*
    51 Cal.4th 310, 320,, 326-328 (2011) .................................................. 12

*Martinez v. Metabolife Intl, Inc.,*
    113 Cal. App. 4th 181 (2003) .................................................................. 7

*Murray v. Bailey,*
    613 F. Supp. 1276 (1985) ...................................................................... 15

*Nagel v. Twin Laboratories, Inc.,*
    109 Cal. App. 4th 39 (2003) .................................................................... 9

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers,*
    No. CV 12-8676 PA PLAX, 2013 WL 2151478, (C.D. Cal. Mar. 4,
    2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015) ...................................... 12

*Navellier v. Sletten,*
    29 Cal. 4th 82 (2002) ............................................................................. 4

*Nygard, Inc., v. Uusi-Kerttula,*
    154 Cal. App. 4th 1027 (2008) ................................................................ 4

*Old Republic Const. Program Group v. Boccardo Law Firm, Inc.,*
    230 Cal. App. 4th 859 (2014) .................................................................. 4

*Paradise Hills Associates v. Procel,*
    235 Cal. App. 3d 1528 (1991) ............................................................ 7, 10

*Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.,*
    No. CIV. A. 96-6961, 1999 WL 285883, (E.D. Pa. Apr. 26, 1999) ...................... 8

*Rivero v. American Federation of State, County & Mun. Employees, AFL-CIO,*
105 Cal. App. 4th 913 (2003) ............................................................. 10

*Rusheen v. Cohen,*
37 Cal. 4th 1048 (2006) ..................................................................... 11

*Taus v. Loftus,*
40 Cal. 4th 683 (2007) .......................................................................6\

*Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054 (9th Cir. 2002) ........................................................... 14

**Federal Statutes**

15 U.S.C. § 301(b)(1)(B) ........................................................................ 8

15 U.S.C. § 8111 ..................................................................................... 7

28 U.S.C. § 1746 ..................................................................................... 2

**State Statutes**

Cal. Bus. & Prof. Code § 17204 ........................................................... 12

Civ. Code § 47(b) .................................................................................. 15

Civ. Code § 47(c) .................................................................................... 6

Civ. Proc. Code § 416.25(a) .................................................................. 4

Civ. Proc. Code § 425.16(b)(1) ...................................................... 11, 13

**Other Authorities**

*ICE Report More than $1 Billion of Intellectual Property Rights Seizures,* U.S. Customs and Border Protection (April 15, 2016) ......................... 8

*ICE HSI Report $1.2 Billion in Counterfeit Seizures in 2014,* U.S. Customs and Border Protection (April 2, 2015) ............................... 8

James Madison, *Federalist #43* .............................................................. 7

*Observations on the Efforts to Quantify the Economic Effects of Counterfeit and Pirated Goods,* U.S. Government Accountability Office Report (April 12 2010) ............................................................ 9

*Prioritizing Resources and Organization for Intellectual Property Act of 2008* ................................................................................................. 7

55343554.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Hallmark SLAPPs are baseless claims attacking speech, including petitioning activity.  In this case, Val-USA went on offense to play defense with baseless claims.  It sued the Harmony Parties for filing "sham litigation"; it alleges malice in the form of "prior knowledge" of frivolous claims against Val-USA;[1] it alleges interference with unidentified "business associates" stemming from being "maliciously accused of infringing . . . purported trademarks and trade dress"; its Prayer for Relief in the Counterclaim is predicated on its "sham litigation" allegations; then, but not until after the motion was filed, did Val-USA fabricate an argument that its Counterclaim is based "solely" on correspondence Val-USA claims has interfered with its relations with unidentified "business associates."

Val-USA proffers an undated, untruthful, and defective Declaration of Iris Zhen ("Zhen Decl.") (Dkt. 118/118-1) with a manipulated screen shot as evidence of purported interference.  The screen shot is an alleged email exchange between Felix Tseng of Val-USA and Newton Luu of LeChat Nail Care Products that hides the date and half of the alleged communication.[2]   Contrary to Ms. Zhen's speculation, there is no evidence that Mr. Luu received *any* correspondence—let alone correspondence from the Harmony Parties.  LeChat Nail Care Products is a competitor of Nail Alliance and is not someone that would be sent or receive correspondence from Nail Alliance or Hand & Nail Harmony, Inc.

---

[1]   The allegation of "prior knowledge" is critical to Val USA's allegation that it has been "maliciously accused of infringing Counter-Defendants' purported trademarks and trade dress" (Counterclaim ¶ 23), because the Court found sufficient evidence to enjoin Val USA from engaging in further counterfeiting activity—a judicial ruling that would otherwise bar any finding of malice.

[2]   *See* Exhibit ("Ex.") "C" to the Zhen Decl. (Dkt. 120-3).  The date of Mr. Luu's alleged email would obviously indicate whether it was sent before or after the correspondence.  From its omission, one may draw the adverse inference that the alleged email was sent *before* the correspondence—to which it does not refer.

Moreover, from the face of the incomplete screen shot, it is clear that the subject interference **is the lawsuit brought by the Harmony Parties**—not any correspondence from the Harmony Parties—as the Counterclaim plainly alleges. Specifically, the incomplete screen shot states:   "Unfortunately we could not cooperate with your company at this time **due to your company being sued by Nail Harmony for manufacturing counterfeit Gelish**."[3]

Finally, Val-USA has ties to Guangzhou, China,[4] from where unsafe, poor quality counterfeit products proliferate.[5]   A simple Internet search of Val-USA reveals the following about Val-USA's business:

- Val USA is tied to "International V&W Company" ("Int'l V&W"), which is based out of Guangzhou, China;

- Int'l V&W has twelve (12) subsidiaries in China, Hong Kong, and the United States – two of which are "Int'l V&W Factory" and "Guangzhou V&W Chemical";

- Iris Zhen is listed as the point of contact for both Int'l V&W Company and Int'l V&W Factory;

- "Li Juan Zhen" (an apparent relation) is listed as President of International V&W Company;

- Int'l V&W is listed as a "top supplier" for Val-USA and Bills of Lading show product from Int'l V&W coming through the port in Long Beach, California; and

- Prior to the Court's preliminary injunction, Val-USA was openly offering for sale fake GELISH pirates.[6]

Val-USA was hardly portrayed in a "false light."   In fact, Val-USA protests the truthful statements in a July 20, 2016 correspondence, which it refers to as the "July Correspondence."   Opposition ("Opp.") at 5.   The Court found "sufficient evidence" to enjoin Val-USA from further "counterfeiting activity"; the Court held

---

[3]   *See id.* (emphasis added).

[4]   While the Zhen Decl. is not dated and the city of execution is left blank, and therefore does not qualify as evidence under, *see* 28 U.S.C. § 1746, it does refer to "China" as the county wherein it was allegedly executed.

[5]   *See* Supplemental Declaration of GariDawn Tingler (Dkt. 17) ¶ 5; Declaration of Sunil Sirdesai (Dkt. #18) ¶¶ 5-8 & Ex. 2.

[6]   *See* Declaration of Adam Daniels ("Daniels Decl."), Exs. 1-7.

an evidentiary hearing with live testimony that was subject to cross-examination, whereat the Harmony Parties proved that Val-USA was engaged in counterfeiting activity based on credible testimony.  As to Val-USA, the Court found:

> The Court finds Phan's testimony credible, including his testimony concerning Zhen's authority at Val USA, and that Zhen confirmed for Phan he had come to the right place to obtain identical-looking GELISH brand products.  Among other things, Phan testified Zhen authorized Tseng to show Phan samples of authentic GELISH brand foundation and top coat bottles, and led Phan on a tour of Val USA's facility to confirm for Phan that Val USA had the ability to duplicate those products.  Val USA had identically shaped bottles in stock.  And Zhen showed Phan Val USA had the machines, equipment and expertise necessary to pow[d]er coat, label and fill those bottles to look like authentic GELISH brand products.  The Court also finds credible Phan's testimony that Zhen and Tseng were eager to consummate a large transaction, which apparently would have counterfeit Gelish® brand products, which apparently would have included 170,000 bottles, including offering to provide Phan samples of the product the next day at Phan's office, at which time Phan's client would wire transfer 35% of the cost of the project to Val USA.

Order [D.E. 78] at 8-9.

The July Correspondence, entitled "GELISH Fights Back in *Counterfeit* Nail Polish Scheme," provides an opening sentence that informs the reader of the context of the statements therein:  "A **preliminary injunction was granted** this week . . . ."  Counterclaim, Ex. B (emphasis added).  Val-USA's argument that it was singled out in the July Correspondence is immaterial because Val-USA is the only manufacturer named in the lawsuit; and the few other California defendants enjoined by the Court's order are distributors or suppliers who perhaps unknowingly got involved in counterfeiting activity.  Finally, Val-USA's effort to parse the correspondence is misguided as it ignores the opening sentence of the letter, which puts each of the truthful statements therein in context.

In short, Val-USA's Opposition, which grossly misinterprets its own pleading and attempts to prop up claims that allege no facts and that are supported by no evidence that the July correspondence interfered with any business relations, does little except to confirm that Val-USA's Counterclaim arises from protected speech and petitioning activity, and is neither legally sufficient to state a claim for

tortious interference or unfair competition, nor supported by admissible evidence that, if believed, would support a judgment at trial. Therefore, Val-USA's Counterclaim should be stricken and the Harmony Parties awarded their costs and attorneys' fees incurred as a result of Val-USA's Counterclaim.

## II.   VAL-USA'S COUNTERCLAIM SHOULD BE STRICKEN

### A.   Val USA's Counterclaim Arises From Protected Activity

In determining whether a cause of action arises from protected speech or petitioning activity, two rules of construction control. First, the statute "shall be construed broadly" to ensure that participation in petitioning activity and other matters of public significance is not "chilled through abuse of the judicial process." Civ. Proc. Code § 416.25(a); *Hecimovich v. Encinal School Parent Teacher Org.,* 203 Cal. App. 4th 450, 464 (2012); *Nygard, Inc., v. Uusi-Kerttula*, 154 Cal. App. 4th 1027, 1039 (2008). Second, the alleged subjective intentions of the pleader are immaterial and "'beside the point.'" *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quoting *Equilon Enterprises v. Consumer Cause, Inc.,* 29 Cal. 4th 53, 67 (2002)); *accord City of Cotati v. Cashman*, 29 Cal. 4th 69, 74 (2002); *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).

The objective, reasonable interpretations of a pleading are what "chill" free speech and petitioning activity. Thus, in mixed messages cases, where, as here, a cause of action—objectively and reasonably interpreted—is based on more than one wrongful act, it is enough that one of them constitutes protected activity. *See Old Republic Const. Program Group v. Boccardo Law Firm, Inc.,* 230 Cal. App. 4th 859, 862 (2014). Plaintiffs cannot deny reliance on one act and "frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one cause of action." *Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal. App. 4th 294, 308 (2001).

### 1.     Civ. Proc. Code § 416.25(e)(1)-(2)

Val-USA contends that the Harmony Parties have unreasonably interpreted Val-USA's causes of action as being based on two wrongful acts ("sham litigation" and the "July Correspondence").  *See* Opp. at 5.  Yet, in the next breath, Val-USA openly reiterates and "maintains that the instant lawsuit filing by Counter-Defendants is frivolous as to Counter-Plaintiff, being based solely upon false accusations by one individual . . . paid by Counter-Defendants" (Opp. at 8-9), even though the Court granted a preliminary injunction after Val-USA had a full and fair opportunity to cross-examine that individual, who the Court found credible.

The Harmony Parties' interpretation of the Counterclaim—that the causes of action therein are based on both alleged wrongful acts—is objectively reasonable for four reasons.  First, Val-USA incorporates both its allegations of sham litigation (including Paragraphs 9 to 14) and its allegations about the July Correspondence (including Paragraphs 15 to 21) into its causes of action.  *See* Counterclaim ¶¶ 25, 34.  Val-USA's pleading does not deny that it relies on both sets of allegations as part of the alleged tortious conduct, which is why they both were incorporated into each cause of action by reference.[7]  Val-USA expressly stated its intention to take discovery into its sham litigation allegations.  *Id.* ¶ 14 & n.1.

Second, Val-USA is relying upon its sham litigation allegations to pray for relief under its causes of action.  *See* Opp. at 9 (acknowledging alleged "right to seek the attorneys' fees due to [Val-USA] for the instant lawsuit filing").  In fact, those allegations form the only basis for Val-USA's prayer "[f]or attorneys' fees, costs, and expenses" for this action.  Counterclaim, Prayer ¶ 5.

Third, in addition to incorporating the sham litigation allegations into its causes of action, not denying that they form part of the Harmony Parties' tortious conduct, and expressly relying upon them to pray for relief, Val-USA's penultimate

---

[7]    It does not follow from Val USA's dropping of a claim under the Sherman Act that Val USA was no longer relying upon its allegations of sham litigation as a basis for liability under the causes of action into which they were incorporated.

paragraphs of the Counterclaim (¶¶ 23, 24) makes it clear that the sham litigation allegations are a critical part of the basis of liability. Those paragraphs plainly refer to "actions" plural; plainly describe one of them as the Harmony Parties' "prior knowledge" of the allegations in Paragraphs 9 to 11 before "maliciously accusing [Val-USA] of infringing Counter-Defendants' trademarks and trade dress"; and make clear that this allegation is a principal reason for Val-USA's alleged harm:

> 23. Counterclaimant has been damaged as a direct and proximate result of Counter-Defendants [sic] **actions** because Counterclaimant has been falsely and maliciously accused of infringing Counter-Defendants' purported trademarks and trade dress, despite Counter-Defendants' prior knowledge that the facts and prevailing evidence show otherwise.
>
> 24. Counter-Defendants' illegal **actions** amount to interference with Counterclaimant's legitimate business relationships.

Counterclaim ¶¶ 23-24 (emphasis added).

Finally, Val-USA's allegations of malice, *see* Counterclaim ¶¶ 20, 23, which are predicated on Val-USA's sham litigation allegations, are relevant and, indeed, necessary (*see infra* section B(2)) to any imposition of liability based on Val-USA's claim for tortious interference. *See* Civ. Code § 47(c); *Taus v. Loftus,* 40 Cal. 4th 683, 721 (2007) (plaintiff bears burden of proving "actual malice" to overcome common interest privilege). The alleged facts supporting Val-USA's allegations of malice are Val-USA's allegations in Paragraph 11, repeated elsewhere, that the Harmony Parties had knowledge "prior to filing the instant lawsuit" that its private investigator was allegedly lying about Val-USA's counterfeiting activity.[8]

Contrary to Val-USA's contention, Val-USA's sham litigation allegations are not "merely background information," Opp. at 5, or "incidental" or "collateral" to Val-USA's claim of liability. *Id.* at 11 (citing *Martinez v. Metabolife Intl, Inc.*, 113

---

[8]   Whether it would otherwise be "malicious" to report results of a preliminary injunction hearing to parties interested in the proceeding (of course, that would not be malicious), is not the issue. That is not how the Counterclaim's allegations of malice are pled. Indeed, given the Court's granting of the preliminary injunction motion, Val USA's allegations of "prior knowledge" in Paragraph 23, which is a reference to its allegation of the Harmony Parties' alleged knowledge before filing the lawsuit in Paragraph 11, is essential to Val USA's claim of malice.

Cal. App. 4th 181,188 (2003)).[9]  Nor are Val-USA's causes of action based "solely" on the July Correspondence.  *Id.* at 5, 8-11.  Val-USA's Opposition just ignores the plain and unambiguous allegations in its Counterclaim that are incorporated into each cause of action and make clear that Val-USA's allegations of sham litigation are (1) one of the wrongful "actions" that forms the basis of the Harmony Parties' alleged liability, (2) the principal reason for any actionable harm, and (3) the only basis for Val-USA's prayer for attorneys' fees.

## 2.    Civ. Proc. Code § 416.25(e)(4)

Counterfeiting has been a matter of public interest since the founding of the Nation.  *See* James Madison, *Federalist #43.*  Val-USA's Opposition does not take up this issue or deny that a court's preliminary injunction ruling about counterfeiting activity—the subject matter of the July Correspondence—raises a public issue or issue of public interest.  *See* Opp. 11-18.  Nor does it attempt to distinguish the cases the Harmony Parties cited supporting why counterfeiting activity is a public issue or issue of public interest.  *See id;* Motion at 10 (discussing *GetFugu, Inc. v. Patton Boggs LLP,* 220 Cal. App. 4th 141, 151 (2013) and *Paradise Hills Associates v. Procel,* 235 Cal. App. 3d 1528, 1545 (1991)).

The conclusion that counterfeiting is a public issue or an issue of public interest is plainly seen in legislative materials underlying the Lanham Act, where it was made clear to Congress that counterfeiting is an issue of widespread public importance, where the evils extend far beyond the parties in any given dispute, and directly affect the consuming public and economy as a whole.  *See Prioritizing Resources and Organization for Intellectual Property Act of 2008*, 15 USC 8111,

---

[9]   The first protected act here ("sham litigation") is consistent with *Martinez*.  In *Martinez*, the plaintiff suffered a stroke after three years of taking Metabolife's Product, and brought product liability and breach of warranty claims.  *See* 113 Cal. App. 4th at 185.  The Court found that the labels and advertisements for Metabolife's products were "largely unrelated to and entirely distinct from the wrongful, injury-causing conduct by [Metabolife] on which Plaintiffs' claims are premised."  *Id.* at 188.  Here, the two alleged wrongful acts ("sham litigation" and the "July Correspondence") are entirely related and the wrongful, injury-causing event, as made clear in the Counterclaim (¶ 23), is the alleged sham litigation.

15 U.S.C. § 301(b)(1)(B); *ICE Report More than $1 Billion of Intellectual Property Rights Seizures,* U.S. Customs and Border Protection (April 15, 2016) ("**Counterfeit goods present health and safety hazards, threaten the U.S. economy and fund organizations involved in violent crime**.") (emphasis added);[10] *ICE HSI Report $1.2 Billion in Counterfeit Seizures in 2014*, U.S. Customs and Border Protection (April 2, 2015) ("**Counterfeiting is a crime of global proportions, and when property rights are violated, American jobs are lost, business profits are stolen and ultimately, consumers are cheated**.") (emphasis added);[11] *Observations on the Efforts to Quantify the Economic Effects of Counterfeit and Pirated Goods*, U.S. Government Accountability Office Report (April 12 2010) (discussing "[n]egative effects on U.S. industry").  Because of the widespread harmful effects counterfeiting has on the U.S. economy, not just the individual interests of the litigants, Congress gave it special treatment under the Lanham Act to help eradicate counterfeiting from the U.S. economy.  *See Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc*., No. CIV. A. 96-6961, 1999 WL 285883, at *2 (E.D. Pa. Apr. 26, 1999). ("Congress intended to recognize that counterfeiting, while a subsection of infringement, represents a greater evil than ordinary infringement, and thus allowed an alternative route to damages and a lesser degree of required notice.").

Val-USA attempts to side-step this public issue by raising two red-herrings.  First, Val-USA argues in circular fashion that the July Correspondence cannot form the basis of a special motion to strike because the communication is allegedly "false," and therefore does not warrant First Amendment protection.  *See* Opp. at 12 (citing *Kaskey v. Nike, Inc.* 27 Cal. 4th 939, 952 (2002) (*citing Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974))).  Of course, alleged defamatory or false

---

[10]  *See* Daniels Decl., Ex. 8; *see also* https://www.cbp.gov/newsroom/national-media-release/cbp-ice-report-more-1-billion-intellectual-property-rights-seizures.

[11]  *See* Daniels Decl., Ex. 9; *see also* https://www.cbp.gov/newsroom/national-media-release/cbp-ice-hsi-report-12-billion-counterfeit-seizures-2014.

statements made "in furtherance of [the speaker's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" are, by definition, subject to the Anti-SLAPP statute. By arguing the merits of the July Correspondence, Val-USA is just jumping ahead in the analysis and over the public issue in the correspondence.

Next, Val-USA erroneously argues that commercial speech is "not entitled to First Amendment protection" or "protection under the California's anti-SLAPP statue." Opp. at 14-15 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64-65 (1983), *Kaskey v. Nike, Inc.,* 27 Cal. 4th 939, 952 (2002) and *Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 50-51 (2003)). In *Bolger,* 463 U.S. at 64-65, and *Kaskey,* 27 Cal. 4th at 952, the courts did not hold that commercial speech is not entitled to First Amendment protection, and neither case dealt with the anti-SLAPP statute. Similarly, in *Nagel*, 109 Cal. App. 4th at 50-51, the court did not hold that commercial speech is not entitled to First Amendment protection; and with respect to the anti-SLAPP statute, the court simply held that the commercial speech at issue did not involve a matter of public interest. *Id.* at 47-48, 50.

Here, in contrast to *Nagel*, Val-USA acknowledges that the purpose of the speech was in connection with a public issue or matter of public interest. *See* Opp. at 15 (acknowledging that the July Correspondence was "in the interest of protecting their own business" from "'widespread negative publicity arising from *counterfeiting activity*.'") (citation omitted) (emphasis added). There is no evidence that the July Correspondence was "in the interest of interfering with Counter-Plaintiff's business." *Id.* There also is no allegation that the speech was "purely" commercial to advertise or sell a good or service or made during the delivery of any good or service.[12] Rather, the communication was with persons who had an ongoing contractual relationship with the Harmony Parties and who had

---

[12] There is certainly no evidence that LeChat Nail Care Products or any other competitor received, or would have naturally received, the July Correspondence from the Harmony Parties or any party acting on their behalf.

an interest in the Court's preliminary injunction ruling on the public and well known counterfeiting activity plaguing the nail business.

Finally, Val-USA cites *Rivero v. American Federation of State, County & Mun. Employees, AFL-CIO,* 105 Cal. App. 4th 913 (2003) and a few other inapposite cases in an effort to argue the July Correspondence was not in connection with a public issue or matter of public interest—*without discussing counterfeiting or the Court's preliminary injunction ruling*—the subjects of the letter. But the single-page letter, entitled "GELISH Fights Back in *Counterfeit* Nail Polish Scheme," is plainly in response to the counterfeiting of the GELISH® brand and reports results of the preliminary injunction hearing to contractually interested parties as part of (a) the Harmony Parties' efforts "to stop *counterfeiting activity* involving GELISH® brand Foundation Gel Base and Top It Off Gel Top Coat," and (b) their ongoing *enforcement efforts* to monitor and police "the use of [their] intellectual property, including the GELISH Marks both in the United States and around the world." Counterclaim, Ex. B [Dkt. 109] (emphasis added).[13]

In sum, like (indeed, more so than) the communication about a perceived investment scam in *GetFugu, Inc.,* 220 Cal. App. 4th at 151, and the dissatisfaction of one consumer in *Paradise Hills Associates v. Procel,* 235 Cal. App. 3d at 1545, the Harmony Parties' communication reporting the Court's preliminary injunction ruling about the counterfeiting of GELISH brand products is in connection with a public issue or matter of public interest. Counterfeiting affects the entire U.S. economy, not just the substantial number of consumers who unwittingly purchased counterfeit products in this case, and is of great interest to the public in that it

---

[13]   Val USA, itself, proffers evidence of the public and news worthy nature of this Court's preliminary injunction ruling on a counterfeit issue. Val USA attaches as Exhibit "A" to the Zhen Decl. an article published in the October 2016 edition of Nail Pro Magazine—an article that was *not* mentioned in any meet and confer conference. Contrary to Ms. Zhen's speculation, there is no evidence that the Harmony Parties "published" or placed the article with the magazine (and they did not, *see* Reply Declaration of Steven R. Malynn ¶ 2). Industry press and media have long published articles about counterfeiting activity. *See id.* ¶ 3, Ex. A.

exposes them to unsafe goods and erodes public confidence in consumer goods, and it harms and impedes the free flow of commercial information about consumer products, which is vital to the economy and consumer choice.  For each of these reasons, Val-USA's causes of action arise from protected activity.

## B.     Val USA Cannot Establish a Probability of Success

Val-USA's Opposition acknowledges that, under the second prong of the Anti-SLAPP statute, it was required to "'demonstrate that [its pleading] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [it] is credited." Opp. at 20 (quoting *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1056 (2006)).  Neither Val-USA's Counterclaims nor its Opposition, however, establishes "that there is a probability that the plaintiff will prevail on the claim." Civ. Proc. Code § 425.16(b)(1).

### 1.     The Counterclaim Fails to State a Claim

Val-USA all but concedes that its Counterclaim fails to state a claim for tortious interference, which has six elements.[14]  Indeed, Val-USA acknowledges that even with respect to the purported facts it could gin up in response to the motion, which purported facts allegedly "correspond" to the conclusory allegations in the Counterclaim, they are not alleged in the Counterclaim.  *See* Opp. at 21-22.

The Counterclaim does not remotely satisfy Val-USA's pleading obligation, which requires "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 & n.3 (2007).  The Counterclaim pleads no facts—let alone facts that would "raise a right to relief above the speculative level" to the

---

[14]  To state a legally sufficient claim, as there is no allegation (or evidence) of any interference with any party with whom Val USA had a contractual relationship, Val USA was required to allege facts that, if accepted as true, would support a judgment that:   (1) Val USA and a third party were in an economic relationship that probability would have resulted in an economic benefit to Val USA; (2) the Harmony Parties knew of that relationship; (3) the Harmony Parties intended to disrupt that relationship; (4) the Harmony Parties engaged in an independently wrongful act outside the privilege of fair competition; (5) the relationship was disrupted; (6) Val USA was harmed; and (6) the Harmony Parties' conduct was a substantial factor in causing Val USA's harm.  *See* California Civil Jury Instruction § 2202 (Intentional Inference with Prospective Economic Relations).

"plausible" level, *Ashcroft v. Iqbal,* 556 U.S. 662, 679-80 (2009)—that (1) the Harmony Parties had knowledge of and intended to disrupt any business relationship of Val-USA; (2) that Val-USA has suffered *any* interference with *any* business relation *as a result of* the alleged wrongful actions; and (3) filing a lawsuit against Val-USA and reporting the results of a preliminary injunction ruling to parties with whom they have a contractual relationship and that have interest in the proceeding constitutes conduct outside the privilege of fair competition.

Courts routinely dismiss conclusory claims of tortious inference under *Twombly* and *Iqbal*. *See e.g., Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers,* No. CV 12-8676 PA PLAX, 2013 WL 2151478, at *8-9 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015) (dismissing tortious interference claims for failing to allege facts plausibly suggesting an intent to breach or disrupt any existing contracts or prospective relationships, and for failing to allege any specific resultant disruption to contractual or economic relations.); *Infuturia Glob. Ltd. v. Sequus Pharm., Inc*., 414 F. App'x 61, 62 (9th Cir. 2011) (affirming dismissal of tortious interference claim because "Infuturia failed to allege damages stemming from Sequus's conduct, which is one of the required elements of a tortious interference claim under California law.").

The Counterclaim also fails to state a claim for unfair competition, which Val-USA acknowledges is based on the same conclusory allegations. *See* Opp. at 26-27. Indeed, in addition to failing to state a claim for tortious interference (re-labeled as an "unlawful," "fraudulent" or "unfair" act or practice) under the Unfair Competition Law ("UCL"), Val-USA has alleged no facts that, if accepted as true, would establish that Val-USA has suffered economic injury, so as to satisfy UCL standing—an issue ignored in the Opposition. *See* Opp. at 27-28; *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320,, 326-328 (2011) (Cal. Bus. & Prof. Code § 17204 requires a plaintiff to "demonstrate some form of economic injury.").

Val USA merely includes conclusory statements that reference other conclusory statements. *See* Counterclaim ¶¶ 30-33.[15] None of the statements demonstrate any form of an "economic injury" required by Cal. Bus. & Prof. Code § 17204. Val USA also fails to allege facts that the purported misconduct was an immediate cause of any economic injury as required to state a UCL claim. *See Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 228 (2013) (citing *Kwikset*, 51 Cal. 4th at 326 ("To satisfy these requirements at the pleading stage a plaintiff must allege facts showing that he or she suffered an economic injury *caused by* the alleged violation.")). Finally, while Val-USA's Opposition cites *Camacho v. Automobile Club of Southern California,* 142 Cal. App. 4th 1394 (2006), it does not even attempt to explain how that case would be relevant to its pleading or how Val USA would have standing to assert any claim under *Camacho*. Accordingly, Val USA has failed to state a claim of tortious interference or unfair competition.

## 2.     Val-USA's Proffered Evidence Would Not Support A Judgement—Let Alone Liability For Damages.

Val-USA's Counterclaim should also be stricken because the proffered Declaration of Iris Zhen does not remotely satisfy the evidentiary requirements of the Federal Rules of Evidence,[16] let alone substantiate "that there is a probability that the plaintiff will prevail on the claim." Civ. Proc. Code § 425.16(b)(1). Ms. Zhen mostly repeats conclusory allegations in the Counterclaim, as to which she has no personal knowledge or supporting evidence. It is well settled that "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g*

---

[15] *See* Counterclaim ¶ 30 ("As a result [of the July Correspondence] the relationship was disrupted and Counterclaimant was harmed"); *id.* ¶ 31("Counter-Defendants' wrongful conduct was a substantial factor in causing harm to Counterclaimant"); *id.* ¶ 32 ("As a direct and proximate result of Counter-Defendants' conduct, Counterclaimant has been and will to continue to be injured in its business and property"); *id.* ¶ 33 ("Counter-Defendants unlawful conduct will continue unless enjoined and Counterclaimant has no adequate remedy . . . .").

[16] *See* Objections to the Declaration of Iris Zhen.

*Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002) (affirming that court properly disregarded declaration that included facts beyond declarant's personal knowledge and that did not indicate how she knew facts to be true).

There obviously is no evidentiary support for Val-USA's sham litigation allegations.  The Court has already vetted the Harmony Parties' reports from their private investigator and Declarations submitted by Mr. Jim Phan that supported the filing of this lawsuit and formed the basis of his testimony, which the Court found credible and sufficient to grant the injunction against Val-USA.  There is zero evidence that Mr. Phan is lying (rather than allegedly being mistaken about what he witnessed and reported under oath)—let alone that the Harmony Parties' "knew" he was "lying" before they filed this lawsuit and relied upon his testimony.

With respect to the one identified "business associate" (LeChat Nail Care Products) as to which Val-USA contends it had a relationship that probably would have resulted in an economic benefit to Val USA but for the July Correspondence, *see* Opp. at 22, Val-USA's showing falls woefully short.  Val-USA manipulated and cut off the date and half of the email exchange between Mr. Tseng and Mr. Luu, and therefore this document is unreliable.  Yet, even from what the Court can see of the email exchange, it directly contradicts Val-USA's new proffered theory of its pleading—that it is claiming that only the July Correspondence interfered with this business relation—as this email does not mention the letter, likely post-dates the letter, and regardless, declines any relationship with Val-USA in light of Nail Harmony's lawsuit against Val-USA.  *See* Zhen Decl., Ex. C.

Moreover, even if the undated portion of the email from Mr. Luu was considered evidence of interference, there is no evidence that the Harmony Parties knew of and intended to disrupt that relationship.  No declaration from Mr. Luu was submitted.  And the email exchange with him and Mr. Tseng is cut off.

There also is no evidence that would overcome either the litigation privilege, Civ. Code § 47(b), which defeats any alleged liability for the alleged "sham litigation," or the common interest privilege, *id.* § 47(b), which absent a showing of malice, defeats any liability for the Harmony Parties' communications with contracting parties interested in the Court's preliminary injunction ruling. As to the later privilege, the Harmony Parties have established that they only reported the results of the preliminary injunction hearing to interested parties. *See* Declaration of Steve R. Malynn ¶ 15. There is no evidence that the Harmony Parties submitted the July Correspondence to anyone else, including any magazine. *See* Reply Declaration of Steven R. Malynn ¶ 2. Therefore, because there is no evidence supporting Val-USA's allegations of malice (*i.e.*, that the Harmony Parties "knew" that their private investigator was "lying" before they filed the lawsuit), Val-USA has no probability of establishing liability for this reason as well. *See Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.,* 525 F.3d 822, 827 (2008) (affirming summary judgment on issue of malice); *Murray v. Bailey,* 613 F. Supp. 1276, 1284 (1985) ("Summary judgment [on malice under qualified privilege] is proper once the court determines that the privilege does in fact exist.").

### C.   An Award of Attorneys' Fees is Appropriate

The Harmony Parties respectfully request that the Court award attorney's fees in an amount to be demonstrated following the submission of evidence after the ruling on the Motion. Attached to the Declaration of Todd M. Malynn is a summary of the costs and attorneys' fees incurred to date in connection with the Harmony Parties' response to the Counterclaim.

### III.   **CONCLUSION**

For the foregoing reasons, the Court should grant the Harmony Parties' motion, strike Val USA's First Amended Counterclaim and each cause of action therein, stay discovery until a ruling on the motion, and award the Harmony Parties their costs and attorney's fees incurred in connection with the counterclaim.

1   Dated:  November 28, 2016                    Respectfully submitted,

2

3                                                **POLSINELLI LLP**

4                                                /s/Todd M. Malynn

5                                    By:   Todd M. Malynn, Esq.
                                           Adam P. Daniels, Esq.
6                                          *Attorneys for Plaintiffs*
                                           HAND & NAIL HARMONY, INC.,
7                                          NAIL ALLIANCE, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

55343554.1

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 28, 2016, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.   The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice of this document by electronic means.

Dated:  November 28, 2016                    POLSINELLI, LLP


                                  By:  /s/AJ Cruickshank
                                       AJ Cruickshank