**POLSINELLI LLP**
Todd M. Malynn (CA Bar No.181595)
Adam P. Daniels (CA Bar No. 296466)
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: 310.556.1801
Facsimile: 310.556.1802
Email:   tmalynn@polsinelli.com

Jose Mariano Castillo
Jose M. Castillo Law Offices
800 W. 6th Street, Suite 900
Los Angeles, CA  90017-2704
Telephone: 213.622.6555
Facsimile: 213.622.5781
Email:    Castillo@castillolaw.com

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC., and
NAIL ALLIANCE, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, NAIL ALLIANCE, LLC, a Delaware corporation,<br><br>                Plaintiffs,<br>        v.<br><br>ABC NAIL AND SPA PRODUCTS, a California business; et al.,<br><br>                Defendants. | Case No. 8:16-cv-00969-DOC-JEM<br><br>The Honorable David O. Carter<br><br>**NOTICE OF MOTION AND MOTION BY PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS DIRECT BEAUTY SUPPLY, LLC, BAO TOAN LE (AKA TOAN), RYAN DO (AKA JIMMY) AND MT BEAUTY SUPPLY PURSUANT TO FED. R. CIV. P. 55(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    April 17, 2017<br>Time:   8:30 a.m.<br>Ctrm:   9D<br>        411 W. Fourth Street<br>        Santa Ana, CA  92701 |

*Polsinelli LLP*
*2049 Century Park East, Suite 2300*
*Los Angeles, CA 90067*
*310.556.1801*

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, "Plaintiffs") will, and hereby do, move pursuant to Fed. R. Civ. P. 55(b)(2) for entry of a default judgment against Defendants Direct Beauty Supply, LLC, Bao Toan Le (aka "Toan"), Ryan Do (aka "Jimmy") and MT Beauty Supply (collectively, "Defendants"). Based on Defendants' failure to answer the First Amendment Complaint, which was duly served, Plaintiffs seek a judgment finding, declaring and adjudging that these Defendants have engaged in trademark infringement and counterfeiting in violation of the Lanham Act (15 U.S.C. §§ 1114, 1116(d)), as defined in the First Amended Complaint [Dkt. 25]; that these Defendants have engaged in false designation of origin, false descriptions, and unfair competition in violation of the Lanham Act (15 U.S.C. § 1125(a)), as defined in the First Amended Complaint [Dkt. 25]; that these Defendants have engaged in unfair competition in violation of California law (Bus. & Prof. Code § 17200), as defined in the First Amended Complaint [Dkt. 25]; that these Defendants have engaged in a civil conspiracy in violation of the Racketeer Influenced and Corrupt Organization (RICO) Act (18 U.S.C. §§ 1961 *et seq.*), as defined in the First Amended Complaint [Dkt. 25]; that these Defendants are liable to Plaintiffs in an amount adequate to compensate Plaintiffs for the trademark infringement, counterfeiting, false designation of origin, false descriptions, unfair competition, civil conspiracy, statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a)-(c), and 18 U.S.C. § 1964(c), and that these Defendants, and any agents, servants, employees, attorneys and other persons in active concert or participation with them, or any of them, be subject to the Court's preliminary injunction [Dkt. 78], hereinafter made permanent, and permanently enjoined from:

57550834.1

1.      From directly or indirectly manufacturing, purchasing, importing, advertising, promoting, offering to sell, selling, distributing, transferring, concealing, or otherwise disposing of any products bearing any of the GELISH® marks, the trade dress associated with the GELISH® goods or the design of the GELISH® bottle, or any confusingly similar mark or bottle, other than those actually manufactured or distributed by Plaintiffs;

2.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing any of the GELISH® marks, or any confusingly similar marks, trade dress or bottle design; or (ii) any evidence relating to the manufacture, purchasing, acquisition, importation, advertising, promotion, distribution, inventory, shipping, handling, sale, offer for sale, disposal or transfer of any products bearing any GELISH® mark or any confusingly similar mark or bottle design, including counterfeit GELISH brand foundation and top coat; and

3.      From knowingly instructing, aiding or abetting or conspiring with any other person or business entity in engaging in any of the activities referred to in paragraphs (1) through (2) above.

PLEASE FURTHER TAKE NOTICE that, pursuant to the Court's Order to advance prosecution for this matter [Dkt. 171] and Defendants' failure to answer the First Amendment Complaint, Plaintiffs respectfully submit that the conference of counsel contemplated by Local Rule 7-3 is inapplicable and/or excused.

This Motion is made and based on this Notice of Motion and Motion and attached Memorandum of Points and Authorities; the Defaults by the Clerk entered on January 31, 2017 [Dkt. 153, Dkt. 154 and Dkt. 162] and on March 3, 2017 [Dkt. 183]; the Declaration of Steven R. Malynn, Declaration of Todd M. Malynn, and Declaration of Adam Daniels attached hereto; the filings and records in this action, including the Court's Order Granting Plaintiffs' Motion for Preliminary Injunction

1    [Dkt. 78] and evidence of record cited therein and in support thereof; and all such

2    other matter as may be presented at the hearing on the Motion.

3    Date:  March 10, 2016                               POLSINELLI LLP

4

5                                                  By:  /s/ Todd M. Malynn

6                                                       Todd M. Malynn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

## <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF FACTS.......................................................................2

III.  ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE..................5

    A.   The Procedural Requirements Are Satisfied ................................6

    B.   The *Eitel* Factors Weigh in Favor of Default Judgment .............7

        1.   The Possibility of Prejudice to Plaintiffs .........................7

        2.   Plaintiffs' Complaint is Sufficient and Claims Meritorious ..........................................................................7

            (a)   Lanham Act Violations (Counts I and II) ..............8

            (b)   Unfair Competition Under California Law, Including Bus. & Prof. Code § 17200 (Count III and IV) ........................................................10

            (c)   RICO Conspiracy (Count V) ...............................10

        3.   What is at Stake in the Action.........................................11

        4.   The Possibility of a Dispute Concerning Material Facts...............................................................................13

        5.   Possibility of Excusable Neglect.....................................13

        6.   Strong Policy Favoring Decisions on the Merits ............13

    C.   Permanent Relief is Appropriate ................................................14

        1.   Injunctive Relief..............................................................14

            (a)   Irreparable Harm...................................................14

            (b)   Adequate Remedy at Law .....................................15

            (c)   Balance of Hardships ............................................16

            (d)   Public Interest .......................................................16

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

          **2.**      Statutory Damages ........................................................ 16

    **D.**     The Court has Personal Jurisdiction over Defendant ................ 18

          **1.**      Purposeful Availment ...................................................... 18

               **(a)**    Intentional Act......................................................... 19

               **(b)**    Expressly Aimed at the Forum State ................... 19

               **(c)**    Harm Likely To Be Suffered In Forum State ....... 21

          **2.**      Cause of Action Arises Out of Forum-Related Activities ...................................................................... 22

          **3.**      Reasonableness............................................................... 23

    **E.**     Attorneys' Fees............................................................................ 24

**IV.**   CONCLUSION ..................................................................................... 25

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

# <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Adv. Skin & Hair*,
858 F. Supp. 2d at 1090..................................................................22

*Aldabe v. Aldabe*,
616 F.2d 1089 (9th Cir. 1980)..........................................................6

*Amini Innovation Corp. v. Cosmos Furniture, Ltd.*,
No. CV 08-7855, 2009 WL 806603 (C.D. Cal. Mar. 16, 2009) ........21

*Amini Innovation Corp. v. JS Imports, Inc*.,
497 F.Supp.2d 1093 (C.D. Cal. 2007)................................................21

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
768 F.Supp.2d 1049 (C.D. Cal. 2011)................................................6

*Bancroft & Masters*,
223 F.3d 1082 (9th Cir. 2000)............................................................20

*Breaking the Chain Foundation, Inc. v. Capitol Educational Support, Inc.*,
589 F.Supp.2d 25 (D. D.C. 2008) .......................................................6

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999)............................................................9

*Calder v. Jones*,
465 U.S. 783 (1984) ..........................................................18, 19, 20, 22

*Cartier v. Symbolix Inc.*,
544 F. Supp. 2d 316 (S.D.N.Y. 2008)................................................18

*Chanel, Inc. v. Doan*,
2007 WL 781976 (N.D. Cal. Mar. 13, 2007) .....................................17

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002)............................................................11

*Core-Vent Corp. v. Nobel Indus.*
AB, 11 F.3d 1482 (9th Cir.1993) ........................................................23

*Cosmos Jewelry Ltd. V. Po Sun Hon Co.*,
    470 F. Supp. 2d 1072 (C.D. Cal. 2006) ............................................................. 10

*CYBERsitter, LLC v. People's Republic of China*,
    805 F.Supp.2d 958 (C.D. Cal. 2011) ................................................................. 19

*Cytosport, Inc. v. Vital Pharmaceuticals, Inc.*,
    617 F. Supp. 2d 1051 (E.D. Cal. 2009) ............................................................. 15

*Danning v. Lavine*,
    572 F.2d 1386 (9th Cir.1978) .............................................................................. 8

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir.2002) ............................................................................ 20

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ........................................................................................... 14

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) .................................................. 6, 7, 8, 12, 13, 14

*Elektra Entertainment Group Inc. v. Crawford*,
    226 F.R.D. 388 (C.D. Cal. 2005) ......................................................................... 6

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
    741 F. Supp. 2d 1165 (C.D. Cal. 2010) ............................................................. 15

*Fitspot Ventures v. Bier*,
    2015 WL 5145513 (C.D. Cal. Sep. 1, 2015) ...................................................... 16

*Haisten v. Grass Valley Med. Reimbursement Fund*,
    784 F.2d 1392 (9th Cir.1986) ............................................................................ 20

*Herb Reed Enterprises v. Florida Entertainment Management, Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ........................................................................... 15

*iBASEt v. Exacore, LLC*,
    2014 WL 12576816 (C.D. Cal. Mar. 24, 2014) ................................................. 18

*Kloepping v. Fireman's Fund*,
    1996 WL 75314 (N.D. Cal. 1996) ................................................................ 8, 14

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) .......................................................................... 24, 25

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) ....................................................................... 22, 23

*Maxim Integrated Products, Inc. v. Quintana*,
654 F. Supp. 2d 1024 (N.D. Cal. 2009) ........................................................... 15

*Menken v. Emm*,
503 F.3d 1050 ................................................................................................... 20

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007)............................................. 14, 15, 16, 17

*Microsoft Corp. v. Evans*,
2007 WL 3034661 (E.D. Cal. Oct. 17, 2007) ..................................................... 17

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
131 F. Supp. 2d 458 (S.D.N.Y. 2001) ............................................................... 18

*Nielsen v. Moore*,
2016 WL 758237 (D. Ariz., 2016) ....................................................................... 7

*Oscar v. University Students Coop. Ass'n*,
965 F.2d 783 (9th Cir. 1992) (*en banc*)............................................................. 11

*Pacific Telesis v. International Telesis Comms.*,
994 F.2d 1364 (9th Cir.1993) ............................................................................... 9

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)...................................................................... 19, 21

*PepsiCo, Inc. v. California Security Cans*,
238 F.Supp.2d 1172 (C.D. Cal. 2002)................................................... 8, 12, 13, 14

*Phillip Morris USA, Inc. v. Shalabi*,
352 F. Supp. 2d 1067 (C.D. Cal. 2004)............................................................... 10

*Ploom, Inc. v. Iploom, LLC*,
2014 WL 1942218 (N.D. Cal. May 12, 2014) ................................................... 24

57550834.1

*Sara Lee Corp. v. Bags of New York, Inc.*,
   36 F. Supp. 2d 161 (S.D.N.Y. 1999) ..................................................................... 17

*Sebastian Int'l, Inc. v. Russolillo*,
   186 F. Supp. 2d 1055 (C.D. Cal. 2000) ................................................................. 11

*Seed Services, Inc. v. Winsor Grain, Inc.*,
   868 F. Supp. 2d 998 (E.D. Cal. 2012) ................................................................... 15

*Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC*,
   2014 WL 3728517 (N.D. Cal. July 28, 2014) ....................................................... 24

*Starbuzz Tobacco, Inc. v. Addison Specialty Servs., Inc.*,
   2015 WL 11251805 (S.D. Cal. July 29, 2015) ...................................................... 24

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) .................................................................................. 6

*Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.*,
   No. 91-1562 SVW (SX), 1991 WL 280844 .......................................................... 22

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .............................................................................................. 20

**Statutes**

15 U.S.C. §§ 1114, 1116(d) ....................................................................................... 1, 8

15 U.S.C. § 1114(a) ........................................................................................................ 8

15 U.S.C. § 1115 ............................................................................................................. 9

15 U.S.C. § 1116(a) and (d) ......................................................................................... 10

15 U.S.C. § 1117(a) ................................................................................................. 24, 25

15 U.S.C. § 1117(a)-(c) ............................................................................................... 24

15 U.S.C § 1117(c) ......................................................................................... 17, 24, 25

15 U.S.C. § 1125(a) ........................................................................................................ 8

15 U.S.C. § 1127 ............................................................................................................. 8

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

18 U.S.C. § 1961 *et seq* ......................................................................................... 1, 8, 11

18 U.S.C. §§ 1962(c) ................................................................................................. 11, 12

18 U.S.C. § 1964(c) ............................................................................................. 11, 24, 25

Bus. & Prof. Code § 17200 ................................................................................... 1, 8, 10

**Other Authorities**

C.D. Local Rule 5501 .................................................................................................... 5

Federal Rule of Civil Procedure 55(b) ..................................................................... 5, 14

Restatement of Torts, § 729, Cmt. (b) (1938) ............................................................... 9

Local Rule 55-1 ............................................................................................................ 7

Rule 54(c) ..................................................................................................................... 7

Rule 55(a) ..................................................................................................................... 7

Rule 55(b)(2) ............................................................................................................ 5, 6

57550834.1

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Hand & Nail Harmony, Inc. ("Harmony") and Nail Alliance, LLC ("Nail Alliance") (collectively, "Plaintiffs") respectfully submit this memorandum in support of their motion for entry of default judgments against Defendants Direct Beauty Supply, LLC ("Direct Beauty"), Bao Toan Le (aka "Toan"), Ryan Do (aka "Jimmy") and MT Beauty Supply ("MT Beauty") (collectively, "Defendants").

## I.     INTRODUCTION

This case concerns the violation of Plaintiffs' intellectual property rights by a sprawling ring of counterfeit activity across the United States targeting Plaintiffs' leading brand of GELISH® products.  Plaintiffs have asserted five counts against Defendants, including trademark infringement, counterfeiting, false designation of origin, false descriptions, and unfair competition under the Lanham Act (15 U.S.C. §§ 1114, 1116(d)), 1125(a)), unfair competition under California law (*e.g.,* Bus. & Prof. Code § 17200), and civil conspiracy in violation of the Racketeer Influenced and Corrupt Organization (RICO) Act (18 U.S.C. § 1961 *et seq*).

Plaintiffs filed the Complaint [Dkt. 1] on May 27, 2016 and First Amended Complaint ("FAC") [Dkt. 25] on June 17, 2016.[1]  Defendants were served with the FAC on June 22, 2017 [Dkt. 53, Dkt. 67, Dkt. 68 and Dkt. 179], making their responsive pleading due on or before July 13, 2016.  None of the Defendants answered or otherwise appeared in the action, even after receiving a copy of the Court's preliminary injunction and having settlement discussions with Plaintiff's counsel.  *See* Declaration of Adam Daniels ¶ 12, Ex. 4 ("Daniels Decl."); Malynn Decl. ¶ 4. Accordingly, Plaintiffs applied for entry of their defaults, which were

---

[1]    Because of an unsuccessful attempt to initially file the complaint electronically under seal, a Notice of Deficiencies was atomically issued and made public, revealing the names of each defendant under Case No. 8:16-cv-00964.  In less than two (2) hours, Plaintiffs' counsel received a telephone call from an attorney, Thomas Vu, purporting to represent one of the defendants.  *See* Exhibit ("Ex.") "2" to the Declaration of Todd M. Malynn ("Malynn Decl.").

entered [Dkt. 153, Dkt. 154, Dkt. 162, Dkt. 183].  Plaintiffs now move for a default judgment against Defendants.

## II.   STATEMENT OF FACTS

Plaintiffs' principal, Danny Haile, invented the first brush-on, soak-off gel polish, which he trademarked and called GELISH®.  GELISH has the benefits of both a traditional nail polish (vibrant colors and a brush on application and finish) and a hard gel (long lasting wear).  GELISH revolutionized the industry and remains the leading brand of gel polish.[2]  *See* FAC ¶¶ 59-60.

GELISH provided technicians a new product to sell as part of their service.  By frequenting salons, consumers could obtain a natural, nail-polish look *but in a long-lasting finish*, which substantially increased salon business.  Plaintiffs have sold millions of bottles of their gel polishes in the United States and throughout the world, and consumers recognize Plaintiffs' gel polishes by their distinctive trademarks and the trade dresses of their bottles.  *See* FAC ¶ 61.

Plaintiffs' GELISH brand is protected by multiple trademark registrations, including United States Trademark Registration Nos. 4,096,115 (GELISH standard character mark) and 3,857,946 (GELISH design plus words) for use in nail care preparations.  *See* FAC ¶ 62, Ex. 1.  The GELISH design, which includes a unique three-dimensional configuration and scrollwork pattern, is also protected by federal registrations (Nos. 4,473,557 and 4,473,558).  *See* FAC ¶ 63, Ex. 2.  Additionally, Plaintiffs distinguish their GELISH products with artistic and visually beautiful bottle designs/ornamentation ("GELISH Brand Bottle").  For example, Plaintiffs'

---

[2]   Prior to GELISH, consumers generally frequented salons on select occasions for pampering or professional treatment.  They did not need to go to a salon for nail polish, which they could effectively apply at home.  Also, because a nail-polish finish generally lasts only two to three days before it starts to chip and crack, it would be too expensive for most consumers to go to a salon just for nail polish.  This reality was an impediment to salon business because consumers generally prefer the natural wear and look of a nail polish over then-existing alternatives (acrylic or hard-gel finishes) provided by professional nail technicians.  FAC ¶ 60.

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

GELISH brand bottle has clean lines, distinctive scroll artwork on a white background and features the dominant GELISH marks, as illustrated in FIGURE 1 of the FAC.  These unique and inherently distinctive features of the GELISH brand bottle are protected as a trade dress under state and federal law.  *See* FAC ¶¶ 64-65.

As a result of Plaintiffs' commercial success and marketing efforts, Plaintiffs' trademarks, trade dress and bottle designs (collectively, the "GELISH marks") are widely known and famous within the industry.  *See* FAC ¶ 72.  The popularity of Plaintiffs' GELISH brand has made it a target of counterfeiters.

Plaintiffs label every bottle of GELISH with identification codes, which allows Plaintiffs to identify each bottle's origin, issue recalls if necessary, and ensure proper quality control and customer service, which are vital to maintaining a leading brand.  *See* FAC ¶¶ 78, 81; Declaration of Steve R. Malynn ("SRM Decl.") ¶ 21.  Plaintiffs' label expressly provide source and origin information to promote that GELISH products as "Made in USA," manufactured by "Hand & Nail Harmony," and originating from "Bea, CA."  FAC ¶¶ 83-84; SRM Decl. ¶ 22.  Counterfeiters, including Defendants, trade off the reputation and goodwill of GELISH, by passing off cheap, inferior quality goods from China, which present a health and safety risk to consumers.  *Id.* ¶¶ 80-82, 91.  They can easily distinguish or verify counterfeit from authentic GELISH goods by price, mistakes in labeling, or contacting authorized distributors, but instead they knowingly and intentionally misrepresent the nature and origin of counterfeit goods as coming from Harmony in Brea, CA, so as to profit from cheap, inferior product.  *Id.* ¶¶ 80-90.

Salon consumers and nail technicians that purchase such counterfeit products are intentionally led and likely to erroneously believe the products are authentic GELISH products, which causes ruinous consumer confusion and harm to Plaintiffs "due, not only to consumer confusion, but also to, *inter alia*, the cheap/poor quality of the counterfeit product, the lack of quality control and custom support thereof,

and the loss of control over Plaintiffs' GELISH marks and the goodwill and reputation of the products." *Id.* ¶ 92. Such irreparable harm was found by the Court and substantiated by Plaintiffs in connection with their motion for a preliminary injunction. *See* Court's Order Granting Plaintiffs' Motion for Preliminary Injunction [Dkt. 78]; Declaration of GariDawn Tingler [Dkt. 8] ("Tingler Decl."); Declaration of Jim Phan [Dkt. 9]; Supplemental Declaration of GariDawn Tingler [Dkt. 17]; Declaration of Sunil Sirdesai PhD. [Dkt. 18]; Declaration of Todd M. Malynn [Dkt. 19]. Indeed, during Plaintiffs' investigation, Plaintiffs "received a complaint from a nail technician who purchased 10 bottles of counterfeit GELISH foundation from MT Beauty Supply . . . at a deeply discounted price of $10.20 per bottle." Tingler Decl. ¶ 25, Ex. 4 [Dkt. 8], Daniels Decl. ¶ 13, Ex. 5. According to the nail technician, customers who received the counterfeit product were upset when it did not properly cure and subsequently fell off their fingertips – the counterfeit product was "so thin running" it came off when it was cleaned with alcohol. *Id.* When confronted, MT Beauty further refused to refund or even exchange the counterfeit product. *Id.* Moreover, Plaintiffs also discovered Direct Beauty sold counterfeit GELISH® brand product (at a deeply discounted price) to at least Defendant Hai Nguyen (now dismissed). Daniels Decl. ¶ 2, Ex. 1. In addition, Plaintiffs' private investigator discovered Defendant Bao Toan Le ("Toan") worked with Defendant Hai Nguyen to sell or otherwise distribute counterfeit GELISH® brand product out of Orange County, CA, including to other Defendants in this matter (e.g., at least Defendant Cali Beauty (now dismissed)) (*id.* ¶¶ 2, 5-8, Ex. 2); and further Defendant Ryan Do ("Jimmy") bought and sold thousands of counterfeit GELISH® brand products to individual and nail salons. *Id.* ¶¶ 10-12, Ex.4. The timing of Defendants' counterfeit activity corresponds to a loss in sales of over $2,000,000 by Plaintiffs over the same limited time period, no less than $100,000.00 of which is attributable to Defendants' counterfeiting activity, for

which Defendants' should be held joint and severally liable.  *See* FAC ¶¶ 103, 106, 117, 126, Prayer for Relief B & C; Tingler Decl. ¶ 39 [Dkt. 8].

**III.    ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE**

Federal Rule of Civil Procedure 55(b) allows for a court-ordered default judgment following entry of default by the clerk when a party has failed to plead or otherwise defend a case.  Pursuant to Rule 55(b)(2) and C.D. Local Rule 5501, the motion for default judgment shall set forth the following information:

(1)    When and against what party the default was entered;

(2)    The identification of the pleading to which default was entered;

(3)    Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(4)    That the Service members Civil Relief Act does not apply; and

(5)    That notice has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).

The entry of default does not automatically entitle Plaintiffs to a court-ordered judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Instead, the decision whether to enter a default judgment is within this Court's discretion.  *Id.*  The Ninth Circuit has enumerated the following factors for courts to consider when exercising discretion as to the entry of default judgment:  (1) The possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In general, once the clerk has entered default, all factual allegations in the complaint will be taken as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

57550834.1

917-18 (9th Cir. 1987).   However, if a plaintiff is seeking money damages, the plaintiff is to submit evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011).   Where a statute provides for injunctive relief, the Court has the discretion to grant injunctive relief in a default judgment. *See Elektra Entertainment Group Inc. v. Crawford,* 226 F.R.D. 388, 393-94 (C.D. Cal. 2005) (default judgment permanently enjoining violations of Copyright Act); *Breaking the Chain Foundation, Inc. v. Capitol Educational Support, Inc.*, 589 F.Supp.2d 25, 30 (D. D.C. 2008) (default judgment permanently enjoining violations of Lanham Act).

While personal jurisdiction is an affirmative defense that can be waived, there is a split of authority as to whether a court should raise jurisdiction *sua sponte* on a motion for entry of default judgment.   6 Judge William W. Schwarzer *et al.,* Civil Procedure Before Trial ¶ 6:108.7, p. 6-29 (The Rutter Group 2016) ("There is a split of authority whether the court has a *sua sponte* duty to raise [a] defective in personam jurisdiction (since it can be waived if not properly raised"). As set forth below, the court has personal jurisdiction over these Defendants.

### A.   The Procedural Requirements Are Satisfied.

On January 27, 2017 and March 2, 2017, Plaintiffs filed Requests to Enter Default by Clerk Pursuant to Rule 55(a) [Dkt. 127, Dkt. 128, Dkt. 137, Dkt. 181]. In accordance with Local Rule 55-1, Plaintiffs submitted the requested declaration [Dkt. 127-1, Dkt. 128-1, Dkt. 137-1, Dkt. 181-1], which Plaintiffs incorporate here. The Clerk entered defaults on January 31, 2017 [Dkt. 153, Dkt. 154, Dkt. 162] and on March 2, 2017 [Dkt. 183].   Rule 54(c) is satisfied because Plaintiffs do not seek relief that differs in kind from, or exceeds, what is demanded in the FAC.

### B.    The *Eitel* Factors Weigh in Favor of Default Judgment.

Each of the *Eitel* factors weighs in favor of entry of a default judgment.  In applying the *Eitel* factors, the Court accepts the factual allegations of the complaint as true, but may require further evidence relating to the amount of damages or relief sought.  *Nielsen v. Moore*, 2016 WL 758237 *3 (D. Ariz., 2016).

### 1.    The Possibility of Prejudice to Plaintiffs

Given Defendants' refusal to participate in this proceeding and settle with Plaintiffs, there is a substantial likelihood of severe prejudice to Plaintiffs absent a default judgment.  There is no question that Defendants, been served with the FAC, having received a copy of the preliminary injunction, having interacted with Plaintiffs and their private investigator, and having refused to engage or otherwise participate in this litigation and/or settlement, have no intention of appearing or responding, and therefore, if Plaintiffs do not receive a default judgment, they will have no recourse against Defendants.  As such, this factor weighs heavily in favor of granting this motion.  *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

### 2.    Plaintiffs' Complaint is Sufficient and Claims Meritorious

The next two *Eitel* factors, the merits of Plaintiffs' claims and the sufficiency of the Complaint, require that a plaintiff "state a claim on which the [plaintiff] may recover."  *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).  Here, Plaintiffs have asserted five counts against Defendants, including trademark infringement, counterfeiting, false designation of origin, false descriptions, and unfair competition under the Lanham Act (15 U.S.C. §§ 1114, 1116(d)), 1125(a)), unfair competition under California law (*e.g.,* Bus. & Prof. Code § 17200), and violations of the Racketeer Influenced and Corrupt Organization (RICO) Act (18 U.S.C. §§ 1961 *et seq.*)  The factual allegations, accepted as true, establish Plaintiffs' claims.

### (a)  Lanham Act Violations (Counts I and II)

Plaintiffs' First and Second Causes of Action seek damages and injunctive relief for trademark infringement and counterfeiting in violation of the Lanham Act (15 U.S.C. §§ 1114, 1116(d)) and false designation of origin, false descriptions, and unfair competition in violation of the Lanham Act (15 U.S.C. § 1125(a)).  FAC ¶¶ 96-106, 107-118.  The intent of the Lanham Act is "to prevent fraud and deception . . . in commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks." 15 U.S.C. § 1127. The Lanham Act expressly proscribes "use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . on which such use is likely to cause confusion, or to cause mistake." 15 U.S.C. § 1114(a).  To establish a trademark infringement claim, Plaintiffs must demonstrate that Defendants are using a trademark that is confusingly similar to Plaintiffs' valid, protectable trademark.  *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

Here, Plaintiffs established the GELISH marks are registered on the United States Principle Register (*see* FAC, Exs. 1-2), thus constituting *prima facia* evidence of the validity of the mark.  15 U.S.C. § 1115. FAC ¶ 59.  Moreover, the counterfeit product solicited by and purchased from Defendants incorporates spurious marks identical with or substantially indistinguishable from the GELISH marks.  *Id.* ¶ 78-80.  In addition, the counterfeit brand product falsely indicates "Hand & Nail Harmony" and "Brea, CA" as the source and origin, directed at and injuring Plaintiffs in California.  FAC ¶¶ 42-43, 83-84.

Defendants' counterfeiting activities creates a presumption of bad faith. FAC ¶¶ 98, 100, 115.  It has long been established that if an infringer "adopts his designation with the intent of deriving benefit from the reputation of the trade-mark

57550834.1

or trade name, its intent may be sufficient to justify the inference that there are confusing similarities." *Pacific Telesis v. International Telesis Comms*., 994 F.2d 1364, 1369 (9th Cir.1993) (quoting Restatement of Torts, § 729, Cmt. (b) (1938)). An inference of confusion may be found when a mark is adopted with the intent to deceive the public. *See Gallo*, 967 F.2d at 1293 (citing *Sleekcraft*, 599 F.2d at 354). In a case of obvious copying, it is appropriate to presume that Defendants intended to cause confusion and benefit from Plaintiffs' reputation, to the detriment of Plaintiffs, which is the case here. FAC ¶ 115. Defendants' knowledge and willful misconduct is factually established. *See id*. ¶ 86, 97-98, 108.

"By misappropriating and using the GELISH marks, Defendants misrepresent and falsely describe to the general public the origin and source of the counterfeit product and create a likelihood of confusion by the ultimate consumer as to both the source and sponsorship of the counterfeit product." *Id*. ¶ 109. "Moreover, the counterfeit product is generally of inferior quality, lacks the same quality control and customer support as authentic GELISH products, and the sale thereof will damage and dilute the goodwill of Plaintiffs and the GELISH brand, as well as the reputation [Plaintiffs] have developed in connection with the sale of genuine GELISH goods." *Id*. ¶ 110. Defendants' counterfeit activities create "the express and implied misrepresentation that the counterfeit product was created, authorized, approved and/or supported by Plaintiffs." *Id*. ¶ 111.

"Plaintiffs have been damaged, including lost profits, according to proof at trial, but in an amount of no less than one hundred thousand dollars." *Id*. ¶ 103; *see also id*. ¶ 117. "Defendants' acts . . . have caused, and if not enjoined will continue to cause, irreparable and continuing harm to Plaintiffs' trademark and trade dress rights, business, reputation and goodwill." FAC ¶ 113; *see also id*. ¶ 123. "Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and

(d) and the equitable powers of this Court, Defendants will persist in their activities and continue to cause Plaintiffs irreparable harm." *Id.*¶ 102; *see also id.* ¶ 125.

### (b) Unfair Competition Under California Law, Including Bus. & Prof. Code § 17200 (Count III and IV)

Plaintiffs' Third and Fourth Causes of Action seek relief for unfair competition (passing off) under California law and under all three prongs of California's Unfair Competition Law ("UCL"). *See* FAC ¶¶ 120, 128. It is settled that a violation of the Lanham Act for trademark infringement or unfair competition constitutes an unfair or deceptive act or practice. *See Cosmos Jewelry Ltd. V. Po Sun Hon Co.,* 470 F. Supp. 2d 1072, 1087 (C.D. Cal. 2006); *Phillip Morris USA, Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004).

Again, Defendants' wrongful, intentional and willful misconduct is factually established. *See* FAC ¶¶ 119-122. Moreover, "Defendants' wrongful conduct has cause[d] Plaintiffs to suffer a loss of money or property within the meaning of the [UCL]" as well as irreparable harm. *Id.* ¶¶ 123, 129-130. "Plaintiffs are suffering irreparable harm due, not only to consumer confusion, but also to, *inter alia,* the cheap/poor quality of the counterfeit product, the lack of quality control and custom support thereof, and the loss of control over Plaintiffs' GELISH marks and the goodwill and reputation of the products." *Id.* ¶ 92. "Plaintiffs have no adequate remedy at law. Unless . . . restrained and enjoined . . . , Defendants will persist in their activities" causing further irreparable harm. *Id.* ¶¶ 124-125, 131-132.

### (c) RICO Conspiracy (Count V)

Plaintiffs' Fifth Cause of Action seeks relief for violations of the Racketeer Influenced and Corrupt Organization (RICO) Act (18 U.S.C. §§ 1961 *et seq.*). *See* FAC ¶¶ 45, 52, 134-156. Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." To prevail on a civil

57550834.1

RICO claim, a plaintiff must prove the defendant engaged in (1) conduct, through the commission of predicate criminal acts, (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property.  18 U.S.C. §§ 1962(c); *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002).  "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest."  *Oscar v. University Students Coop. Ass'n,* 965 F.2d 783, 785 (9th Cir. 1992) (*en banc*).

This Court has held passing off counterfeit products as genuine sufficient to constitute a predicate criminal act as part of a scheme to defraud consumers. *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1065 (C.D. Cal. 2000). Moreover, "intent to defraud" need not be plead specifically.  *Id.*  Here, the elements of RICO have been alleged and established.  FAC, ¶¶ 87, 134-147.

"Plaintiffs have been injured in their businesses and property by reason of Defendants' violations of 18 U.S.C. § 1962(c).  The injuries to Plaintiff caused by reason of the violations of 18 U.S.C. § 1962(c) include . . . damage to the value of Plaintiffs' intellectual property and other assets, lost sales, and direct expenses from Plaintiffs' efforts to stop the sale of counterfeit GELISH brand products. . . . Further, these injuries to Plaintiff were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962(c) . . . . Furthermore, each new sale of counterfeit GELISH brand products, and each new commission of one of the predicate acts identified above, causes new injuries to Plaintiffs." *Id.*¶ 153.

### 3.    What is at Stake in the Action

Under the fourth *Eitel* factor, the Court must consider the amount of money or other relief at stake in relation to the seriousness of Defendants' conduct. *PepsiCo, Inc. v. Cal. Security Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel,* 782 F.2d at 1471–72.  Here, Plaintiffs seek both statutory damages

---

and injunctive relief to prevent Defendants from causing similar harm in the future. This *Eitel* factor weighs in favor of default judgment because a failure to enter a default judgment would provide Plaintiffs with no remedy as to (1) the losses they suffered as a result of Defendants' willful counterfeiting, and (2) the irreparable harm due, not only to ruinous consumer confusion, but also to the cheap, poor quality and potentially hazardous products, the lack of quality control and custom support, and the loss of control over Plaintiffs' GELISH marks and the goodwill and reputation of their products, which are a direct result of Defendants' trademark infringement, counterfeiting activities, false designation of origin, false descriptions, unfair competition, and civil conspiracy.  FAC ¶¶ 5, 91-92, 100-102, 113, 123, 130.

Plaintiffs suffered over $2,000,000 in loss sales during the period where the subject counterfeiting activity was rampant, and seek "no less than $100,000" based on Defendants' counterfeiting activity, for which they should be held joint and severally liable.  While it is unclear how long the subject counterfeit activity was ongoing before discovered by Plaintiffs, Defendants actively engaged in counterfeit activity by offering to sell, selling, and/or otherwise distributing counterfeit GELISH® brand product.  Tingler Decl. ¶ 25, Ex. 4 [Dkt. 8], *see* Daniels Decl. ¶¶ 2-11, Exs. 1-3, 5.

Moreover, during the pendency of this action, U.S. Customs has notified Plaintiffs' counsel of more than three separate shipments of counterfeit product coming in from China that was seized and, at Plaintiffs' direction, destroyed by U.S. Customs at the airport.  *See* Malynn Decl. ¶ 2, Ex. 1.  Given Defendants' refusal to settle with Plaintiffs and become part of the solution, there is both a substantial amount of damages and a substantial risk of future harm at stake.

### 4. The Possibility of a Dispute Concerning Material Facts

This factor weighs in favor of entering a default judgment. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo, Inc.*, 238 F.Supp. 2d at 1177. As to the relief requested, the Court has already found that Plaintiffs have suffered and/or are likely to continue to suffered irreparable harm. *See* Order Granting Plaintiffs' Motion for Preliminary Injunction [Dkt. 78]. As to damages, Plaintiffs are seeking statutory damages, which fall within this Court's discretion. Defendants' default and refusal to participate in this proceeding prevents the discovery of the full extent of the harm caused by Defendants beyond what has already been uncovered. Accordingly, on the merits of Plaintiffs' claims, this case does not present and there is no reason to find a genuine dispute of material facts to preclude the granting of this motion.

### 5. Possibility of Excusable Neglect

The next *Eitel* factor considers the possibility that the failure to answer was due to excusable neglect. Here that risk is non-existent. Defendants have made an informed choice not to respond. After Plaintiffs served the FAC on Defendants, Plaintiffs sent them the preliminary injunction via FedEx and/or had settlements talks with them. Daniels Decl. ¶ 12, Ex. 4, Malynn Decl. ¶ 4. Defendants refused any follow-up communications and failed to file an Answer with the Court. As such, this *Eitel* factor also weighs in favor of granting the Motion.

### 6. Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F.Supp. 2d 1177. "Moreover, Defendants failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *Id.* Thus, termination of a case before hearing the merits is allowed whenever a defendant

fails to defend an action.  "[T]he preference to decide cases on the merits does not preclude a court from granting default judgment."  *Id.* (*citing Kloepping*, 1996 WL 75314, at *3).   Accordingly, this *Eitel* factor is at worst neutral and does not preclude entry of a default judgment against Defendants.

## C.   Permanent Relief is Appropriate.

### 1.   Injunctive Relief

Plaintiffs seek injunctive relief to prevent Defendants from continuing to cause irreparable harm to Plaintiffs' brand, reputation, and goodwill.  Thus, the Court must determine whether Plaintiffs have demonstrated "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### (a)   Irreparable Harm

"The concept of irreparable harm, unfortunately does not lend itself to definition."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007).  Courts often view irreparable harm that is "suffered when the injury cannot be adequately atoned for in money, or when the district court cannot remedy the injury following a final determination on the merits."  *Id.* In counterfeit cases, where defendants have usurped the mark of another to deceive consumers into buying their product or service, a finding of likely irreparable harm is unavoidable.[3]  "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners.  Thus, if another person

---

[3]   *See* Declaration of Sunil Sirdesai ¶ 4 [Dkt. 18] ("counterfeit nail products (a) do not duplicate the formulas of leading brands; (b) there are no assurances that they are subject to the same quality controls; and (c) whether a particular batch of counterfeit goods is of low or high quality is immaterial, as the brand owner has no control over the quality of the product or use of its trademark.").

infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control.  A trademark owner's loss of the ability to control its mark, thus, creates the potential for damage to its reputation." *Cytosport, Inc. v. Vital Pharmaceuticals, Inc.,* 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009); *Seed Services, Inc. v. Winsor Grain, Inc.,* 868 F. Supp. 2d 998, 1005 (E.D. Cal. 2012); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC,* 741 F. Supp. 2d 1165, 1182-83 (C.D. Cal. 2010); *Maxim Integrated Products, Inc. v. Quintana,* 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009).

Defendants' proliferation of cheap, low-quality counterfeit products, not only eviscerates Plaintiffs' ability to control their GELISH marks, but grossly impacts Plaintiffs' reputation and goodwill, resulting in a likelihood of irreparable harm. Indeed, the widespread proliferation of counterfeit products imported from China in seven reported states (California, Georgia, Nevada, Nebraska, Missouri, South Carolina, Florida and Texas), which has largely contributed to a substantial and unexpected first quarter loss of sales, evidences the "loss of control over business reputation," the very function of a trademark.  *See Herb Reed Enterprises v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); *Fitspot Ventures v. Bier,* 2015 WL 5145513, at *4 (C.D. Cal. Sep. 1, 2015).  Based on the evidence of record, the Court already reached this conclusion.  *See* Order Granting Plaintiffs' Motion for Preliminary Injunction [Dkt. 78].

### (b)  Adequate Remedy at Law

The requisite analysis for this prong significantly overlaps with the first prong.  *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1219.  As with the irreparable injury, Defendants' refusal to participate in this process adequately demonstrates that Plaintiffs will continue to have no adequate remedy at law to address the very likely continued infringement, counterfeiting, false descriptions and designations of origin, unfair competition, and civil conspiracy in violation of

the Lanham Act and the Racketeer Influenced and Corrupt Organization (RICO) Act, let alone the continued confusion as to the source and origin of the GELISH goods and Defendants' association with Plaintiffs; and continued harm to Plaintiffs' reputation and goodwill for the reasons discussed above.  Furthermore, requiring Plaintiffs to continuously pursue a "multiplicity of suits" against Defendants would, itself, constitute an inadequate remedy at law.  *Id.* at 1220.

### (c)    Balance of Hardships

The Court must also consider the hardships that might afflict the parties by the granting or denial of a permanent injunction.  Giving Defendants a pass to engage in counterfeiting and continued infringement on Plaintiffs' GELISH marks will cause a significant hardship to Plaintiffs.  In contrast, Defendants cannot demonstrate that they will suffer any undue hardship by being required to stop their wrongful and illegal conduct.  As such, this factor weighs heavily in favor of granting an injunction as part of the default judgment.

### (d)    Public Interest

The public interest will be served by a permanent injunction because it will (a) protect consumers, (b) protect intellectual property from increased threats of infringement, and (c) protect the stability of contracts, which, in turn, incentivizes the creation of original works.  *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1222.  As such, the injunction should be issued.

### 2.    Statutory Damages

Plaintiffs seek "no less than $100,000" in statutory damages pursuant to 15 U.S.C. § 1117(c).  *See Microsoft Corp. v. Evans,* 2007 WL 3034661, at *8 (E.D. Cal. Oct. 17, 2007) (approving $100,000 award in like circumstances).  Damage inquiries under Section 1117(c) look to both compensatory (*e.g.,* actual losses and trademark value) and punitive (*e.g.,* deterrence of other infringers and willful

57550834.1

behavior) considerations.  *See Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.

Supp. 2d 161, 165 (S.D.N.Y. 1999).  Section 1117(c) provides, in relevant part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $ 1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

With only "as the court considers just" as guidance, courts have looked to

statutory damages awarded under a similar section of the U.S. copyright law.

*Chanel, Inc. v. Doan,* 2007 WL 781976, at *5 (N.D. Cal. Mar. 13, 2007); *Microsoft

Corp. v. Evans,* WL 3034461, at *7 (E.D. Cal. Oct. 17, 2007).  In particular, for

trademark statutory damages calculations, courts have applied the following

copyright factors:  (1) "the expenses saved and the profits reaped;" (2) "the

revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent

effect on others besides the defendant;" (5) "whether the defendant's conduct was

innocent or willful;" (6) "whether a defendant has cooperated in providing

particular records from which to assess the value of the infringing material

produced;" and (7) "the potential for discouraging the defendant." *iBASEt v.

Exacore, LLC,* 2014 WL 12576816, at *4 (C.D. Cal. Mar. 24, 2014) (citing *Cartier

v. Symbolix Inc.,* 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008) and *Nat'l Football

League v. PrimeTime 24 Joint Venture,* 131 F. Supp. 2d 458 (S.D.N.Y. 2001)).

Considering these factors, more than the minimum statutory damages should

be awarded in this case.  Plaintiffs' GELISH marks are extremely valuable.  SRM

Decl. ¶ 9.  They mark a sea-change in how salons did business, revolutionizing the

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

industry.  *Id ¶ 6.*  They are famous and the most recognized gel polish trademark among professionals in the industry.  *Id ¶ 9.*  By trading off Plaintiffs' GELISH marks, Defendants saved substantial expenses in creating demand for their inferior products and diverted substantial profits to themselves.  *Id ¶ 18.*  Plaintiffs' unexpectedly lost $2,000,000 in the early portion of 2016, when the counterfeiting activity went unchecked.  Tingler Decl. ¶ 39 [Dkt. 8].  Defendants' conduct was willful as evidenced by, *inter alia,* Defendants' proliferation of inferior counterfeit product, efforts to sell thousands bottles of counterfeit product to Plaintiffs' private investigator and/or other Defendants, and their refusal to participate in this proceeding, including to turn over and/or destroy any bottles of counterfeit product. Moreover, and as significant, absent an award of substantial damages, future counterfeiters will be encouraged not to settle or participate in litigation; in contrast, those that did the right thing would be discouraged not to in the future. Accordingly, Plaintiffs pray for statutory damages of no less than $100,000.

### D.    The Court has Personal Jurisdiction over Defendant.

Were the Court to take up the issue, the Court should find that it has personal jurisdiction over Defendants under *Calder v. Jones*, 465 U.S. 783 (1984) in accordance with the Ninth Circuit's three-part test enunciated in *Schwarzenegger* v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).  The discussion focuses on Defendants Direct Beauty, Jimmy and MT Beauty, because Defendant Toan, upon information and belief, is a resident of California.  FAC ¶ 30.

### 1.    Purposeful Availment

"The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger King*, 471 U.S. at 475).  The phrase "purposeful availment" includes both purposeful availment and purposeful direction, which are

distinct concepts. *Schwarzenegger,* 374 F.3d at 802. While a purposeful availment analysis is used in suits sounding in contract, a purposeful direction analysis is used in suits sounding in tort or similar misconduct. *Id.* When no conduct by the defendant "within" the forum state is at issue, the Ninth Circuit evaluates purposeful direction using the three-part "*Calder*-effects" test. *Id.* at 803. Under this test, "the defendant allegedly must have (i) committed an intentional act, (ii) expressly aimed at the forum state, (iii) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (internal quotation marks omitted). There is no requirement that the defendant have any physical contacts with the forum. *See Schwarzenegger*, 374 F.3d at 802.

### (a)    Intentional Act

An intentional act for purposes of the *Calder* effects test only requires the intent to perform an actual, physical act in the real world, regardless of any intent to accomplish a result or consequence of that act. *CYBERsitter, LLC v. People's Republic of China,* 805 F.Supp.2d 958, 969 (C.D. Cal. 2011). Here, the FAC adequately alleges and there is no question that Defendants committed intentional acts of selling counterfeit products, including offers to sell and actual sales to nail technicians or salons, Defendants Hai Nguyen, and Plaintiffs' private investigator. Tingler Decl. ¶ 25, Ex. 4 [Dkt. 8], Daniels Decl. ¶¶ 2-11, Exs. 1-3, 5.

### (b)    Expressly Aimed at the Forum State

The second prong of the test requires more than "'untargeted negligence' that merely happened to cause harm to [a plaintiff]." *Schwarzenegger* 374 F.3d at 807. The requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

of the forum state.'"  *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir.2007 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002).[4]

The Ninth Circuit has consistently held that "the express aiming requirement of *Calder* [is] 'satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'"  *Id.* (quoting *Bancroft & Masters*, 223 F.3d at 1087).  Indeed, the Supreme Court in *Calder* held that defendants' actions were "expressly aimed at California" because defendants wrote and edited an article "that they knew would have a potentially devastating impact upon [plaintiff]" and "they knew the brunt of that injury would be felt by [plaintiff] in the State in which she lives and works and in which the National Enquirer has its largest circulation."  *Calder*, 465 U.S. at 789-90.  Under those circumstances, the Supreme Court held that defendants must "reasonably anticipate being haled into court there."  *Id.*at 790, (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see, e.g., Bancroft & Masters*, 223 F.3d at 1087 (concluding that defendant had expressly aimed at plaintiff in California by sending a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business).[5]

---

[4] As the Ninth Circuit has recognized, "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  *Dole Food Co.*, 303 F.3d at 1111 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.1986); *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis.").  While courts have "struggled somewhat with *Calder's* import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction," the Ninth Circuit has concluded that when "something more" occurs in the form of "express aiming at the forum state," personal jurisdiction is properly found.  *Yahoo! Inc*, 379 F.3d at 1124 (quoting *Bancroft & Masters*, 223 F.3d at 1087).

[5] The *Calder*-effect test is routinely applied in cases involving the infringement of intellectual property, particularly where, as here, the defendant does not deny knowledge that the plaintiff resides in California, where the brunt of the harm is felt.  *See Panavision*, 141 F.3d at 1322 & n. 2 (affirming jurisdiction where defendants engaged in copyright infringement with knowledge of plaintiff's

---

20

57550834.1

Here, it is self-evident that Defendants' counterfeiting activity, including the purchase/sale of counterfeit GELISH brand product, "was directly aimed at causing harm to Harmony in California because [Defendants knew] that genuine GELISH brand products are manufactured by Harmony in California, and because each bottle of the counterfeit product expressly mimics Harmony's labeling, which indicates that the product is manufactured by 'Hand & Nail Harmony' in 'Brea, CA.'" FAC ¶¶ 83-84. Moreover, as discussed, Plaintiff's private investigator contacted Defendants about counterfeit GELISH products, and they offered to sell thousands of bottles to him in California. Daniels Decl. ¶ 6, 11. By participating in the counterfeit activity, including putting into the stream of commerce product that falsely states it is manufactured by Harmony in Brea, CA and interacting with a potential buyer in California, it was more than foreseeable that Defendants would get sued in a California for the harm suffered by Harmony in California. *See* FAC ¶ 51. The second prong of the *Calder*-test is satisfied.

### (c)   Harm Likely To Be Suffered In Forum State

To satisfy the final prong of the *Calder*-test, Plaintiffs only have to show "a jurisdictionally sufficient amount of harm"; but "the 'brunt' of the harm need not [in fact] be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1207. "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the

---

residency, where they "should reasonably anticipate being haled into court," holding that the "brunt of the harm" suffered by plaintiff from the intellectual property theft "was in the state where [plaintiff] maintained its principal place of business"); *accord Amini Innovation Corp. v. JS Imports, Inc.*, 497 F.Supp.2d 1093, 1105 (C.D. Cal. 2007) ("Following *Columbia Pictures* and *Panavision*, numerous courts within the Ninth Circuit have found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an out-of-state defendant, alleging that the defendant engaged in infringing activities knowing that plaintiff was located in the forum."); *Amini Innovation Corp. v. Cosmos Furniture, Ltd.*, No. CV 08-7855, 2009 WL 806603, at *3 (C.D. Cal. Mar. 16, 2009) (holding that, based on plaintiff's allegations of willful copyright and design patent infringement, defendant satisfied the *Calder*-effects test because defendant "[did] not deny that it knew that [plaintiff] [was] located in and operates out of this judicial district" and "kn[ew] the brunt of the harm would be suffered in California").

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

forum." *Brayton*, 606 F.3d at 1131.  This element is easily satisfied here because it was plainly foreseeable that Defendants' counterfeiting activity would cause harm in California, where authentic product is manufactured and sold by Harmony, and Defendants' counterfeiting activity, which involved untold thousands of bottles (at deeply discounted prices) easily satisfies the jurisdictional amount, without more.

In short, under *Calder*, Defendants' counterfeiting activity was not "'untargeted negligence' that merely happened to cause harm" to parties in California.  *See Schwarzenegger*, 374 F.3d at 807.  Therefore, Defendants may be properly called to answer in a California court.

### 2.    Cause of Action Arises Out of Forum-Related Activities

The second element of due process for purposes of specific jurisdiction also is satisfied.  "A lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum." *Adv. Skin & Hair*, 858 F. Supp. 2d at 1090.  The Ninth Circuit applies a "but for" test to this second prong.  *See Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.*, No. 91-1562 SVW (SX), 1991 WL 280844, at *4 (C.D. Cal. July 29, 1991; *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 899 (9th Cir. 2002) (finding that the Ninth Circuit's "but for" test was satisfied in an action for trademark infringement and defamation because there would be no cause of action but for defendants' conduct purposefully directed toward California).

Here, there is a direct nexus between the purposeful direction of Defendants' counterfeiting activity (*i.e.,* purchase and sales of counterfeit product, which falsely states that it is made by Harmony in Brea, CA, and offer to sell counterfeit product to a California-based party) and Plaintiffs' causes of action.  But for Plaintiffs' highly popular GELISH® brand products, which Defendants knew were manufactured in Brea, California, and but for Defendants counterfeiting activity

directed at injuring Harmony in California, there would be no cause of action in the First Amended Complaint against Defendants.

### 3.    Reasonableness

Because the first two elements for specific jurisdiction have been satisfied, the burden would shift to Defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).   "The exercise of jurisdiction is reasonable if it comports with traditional notions of fair play and substantial justice." *Rio Props*., 284 F.3d at 1021.   On a motion by Defendants, the Court would consider seven factors in making this determination: (1) the extent of a defendant's purposeful direction; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Id.*(citing *Core-Vent Corp. v. Nobel Indus.* AB, 11 F.3d 1482, 1487-88 (9th Cir.1993)).   "As no single factor is dispositive, a court [would] balance all seven [were a defendant to make a showing on them]." *Id.*

Here, none of Defendants answered or otherwise appeared in the action, including after receiving a copy of the Court's preliminary injunction and/or having settlement discussions.  Daniels Decl. ¶ 12, Ex. 4; Malynn Decl. ¶ 4.  California has a substantial interest in protecting California manufacturers like Harmony from tortious activity in California and elsewhere.  It is far more efficient to have one lawsuit over the same set of counterfeiting activity than fifty lawsuits simply because the counterfeit product has been found in multiple states.  There is no alternative forum where all the participating counterfeiters can be sued.  Accordingly, it is more than reasonable to enter a default judgment.

### E.     Attorneys' Fees

Finally, Plaintiffs seek an award of attorneys' fees under both 18 U.S.C. § 1964(c) and 15 U.S.C. § 1117(a).  While an award of "reasonable attorney's fees" is a matter of right under 18 U.S.C. § 1964(c), the Ninth Circuit has not yet ruled as to whether attorney's fees are recoverable under 15 U.S.C. § 1117(a)-(c) where, as here, the plaintiff elects to seek statutory damages.  "[T]he Ninth Circuit has not reached the issue of whether 'an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final sentence of § 1117(a).'  The Second Circuit has considered this issue and held that 'an award of attorney's fees is available under section 1117(a) in 'exceptional' cases even for those plaintiffs who opt to receive statutory damages under section 1117(c).'  *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 111 (2d Cir. 2012).  Other district courts in this Circuit have found the Second Circuit's reasoning persuasive.  *See Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC*, 2014 WL 3728517, at *1 (N.D. Cal. July 28, 2014) (holding election to receive statutory damages under Lanham Act does not preclude award of attorney's fees); *Ploom, Inc. v. Iploom, LLC*, 2014 WL 1942218, at *8 (N.D. Cal. May 12, 2014) (same)."  *Starbuzz Tobacco, Inc. v. Addison Specialty Servs., Inc*., 2015 WL 11251805, at *5 (S.D. Cal. July 29, 2015).  Plaintiffs submit that the Court should find "the reasoning in *Louis Vuitton* to be persuasive, and [hold] that an election of statutory damages under 15 U.S.C. § 1117(c) does not preclude an award of attorneys' fees under 15 U.S.C. § 1117(a)."  *Id.*  Accordingly, if the Court were to award attorney's fees under 18 U.S.C. § 1964(c) or under 15 U.S.C. § 1117(a), because Defendants' counterfeiting activity presents an exceptional case, Plaintiffs' request the inclusion of an award of attorneys' fees in the default judgment, and an opportunity to prove up the amount of the award.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs pray for entry of a default judgment awarding (a) no less than $100,000 in statutory damages, (b) permanent injunctive relief as noticed—converting the preliminary injunction, and (c) reasonable attorney's fees according to proof.

Dated:  March 10, 2017                    **POLSINELLI LLP**


                                                          */s/ Todd M. Malynn*
                                          By:   Todd M. Malynn, Esq.

                                                *Attorneys for Plaintiffs*
                                                HAND & NAIL HARMONY, INC.,
                                                NAIL ALLIANCE, LLC

57550834.1

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 10, 2017, the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Central District of California, using the Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice of this document by electronic means.

Dated:  March 10, 2017                                          POLSINELLI, LLC


                                                          By:  /s/AJ Cruickshank
                                                                AJ Cruickshank

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

**PROOF OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. My business address is Polsinelli, LLP, .2049 Century Park East, Suite 2900, Los Angeles, CA 90067.

On March 10, 2017 served the document(s) described as:

**NOTICE OF MOTION AND MOTION BY PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS DIRECT BEAUTY SUPPLY, LLC, BAO TOAN LE (AKA TOAN), RYAN DO (AKA JIMMY) AND MT BEAUTY SUPPLY PURSUANT TO FED. R. CIV. P. 55(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on parties in this action by placing a true copy thereof enclosed in sealed envelope addressed as follows:

SEE ATTACHED LIST

☒    MAIL: I am readily familiar with this business's practice for collecting and processing correspondence for mailing. Following our ordinary business practices, the document is placed for collection and mailing on the same day that is deposited with the United States Postal Service in a sealed envelope with postage fully prepaid. I am aware that upon motion of a party served, service shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.

☐    BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I hereby declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on March 10, 2017 at Los Angeles, California.

| AJ Cruickshank | |
| --- | --- |
| Print Name | Signature |

**SERVICE LIST**

27

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1

1

2  Ryan Do
   5108 Pipestone Pass Street
3  Las Vegas, NV  89101

4
   MT Beauty Supply
5  3245 B Wade Blvd.
   Taylors, SC  29687
6

7  Bao Toan Le
   8251 Lampson Ave.
8  Garden Grove, CA  92841

9
   Direct Beauty Supply, LLC
10 James N. Volpe, Agent for Service
   12211 S. Eastern Ave., Suite 160
11 Henderson, NV  89052

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:16-cv-00969-DOC-JEM

57550834.1